**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**N.R., a minor, by J.R. and A.R.,
his natural guardians,**

      **Plaintiff,**

**v.**　　　　　　　　　　**Case No.: 3:18-cv-02208**

**THE SCHOOL BOARD OF
OKALOOSA COUNTY,
FLORIDA, MARY BETH
JACKSON, STACIE SMITH,
ARDEN FARLEY, ALAN
LAMBERT, JON WILLIAMS,
ROY FRAZIER, JEAN HENNION,
and DOES 1-30,**

      **Defendants.**
_____

## COMPLAINT

Plaintiff, N.R., a minor, by J.R. and A.R., his natural guardians, sues Defendants, THE SCHOOL BOARD OF OKALOOSA COUNTY, FLORIDA, MARY BETH JACKSON, STACIE SMITH, ARDEN FARLEY, ALAN LAMBERT, JON WILLIAMS, ROY FRAZIER, JEAN HENNION, and DOES 1-30, and alleges:

## NATURE OF THE ACTION

1.    This is an action brought to redress the deprivation, under color of policy, regulation, official decision, custom, or usage, of rights secured to

Plaintiff by 42 U.S.C. § 1983 arising under the Fourth and Fourteenth Amendments to the United States Constitution, and the Constitution of the State of Florida, Article I, §§ 2 and 12, as well as for state law claims, and for such other relief as the Court deems just and proper.

## JURISDICTION

2.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331, 1343 because Plaintiff's claims arise under the civil rights laws of the United States and 28 U.S.C. § 1367 because all other claims are so related as to form the same case or controversy.

3.     This is an action involving claims which are, individually, in excess of Seventy Five Thousand Dollars ($75,000.00), exclusive of interests and costs.

4.     This Court has personal jurisdiction over the parties to this action because Plaintiff subjects himself to this Court's jurisdiction and because the Defendants committed the civil rights violations and tortious acts at issue herein in this state.

## VENUE

5.     Venue of this action is properly in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving

rise to the claims occurred within the judicial district of this Court, and Defendants are subject to the Court's personal jurisdiction with respect to this civil action.

## PARTIES

6.     The undersigned counsel has kept the identity of the Plaintiff confidential by referring to initials, rather than putting their names on the public record.  The full identities of N.R., J.R. and A.R., are well known to these Defendants.

7.     At all times material hereto, Plaintiff, N.R., a minor child, and J.R. and A.R., his natural guardians, have been residents of Santa Rosa County, Florida.

8.     At all times material hereto, N.R. was a minor child diagnosed with autism spectrum disorder, he was non-verbal and he was an exceptional special education ("ESE") student entrusted to the care of Defendant THE SCHOOL BOARD OF OKALOOSA COUNTY, FLORIDA, ("School Board" or "OCSB") and other named Defendants at Silver Sands School ("Silver Sands").

9.     Defendant, OCSB is a governmental body corporate, organized under the Laws of Florida, the governing body of the Okaloosa County School

District and responsible for the control, operation, organization, management, administration, and supervision of schools in Okaloosa County, Florida.

10.    At all times material hereto, OCSB was a recipient of federal financial assistance by virtue of its receipt of funds from the United States Department of Education.

11.    The School District of Okaloosa County, Florida ("School District" or "OCSD"), is a governmental entity, organized under the Laws of Florida, and is part of the state system of public education including all public school, classes, courses of instruction and all services and activities which are under the School District officials' direction and directly related to education in the district. OCSD is identified for reference purposes only and is not a named Defendant in this action.

12.    Silver Sands School ("Silver Sands") is a public school located in Okaloosa County, Florida at 349 Holmes Boulevard, NW, Fort Walton Beach, Florida 32548 and is a school within the school system of the school district. Silver Sands is identified for reference purposes only and is not a named Defendant in this action.

13.    Kenwood Elementary School ("Kenwood") is a public school located in Okaloosa County, Florida at 15 Eagle Street, NE, Fort Walton

Beach, Florida 32547 and is a school within the school system of the school district. Kenwood is identified for reference purposes only and is not a named Defendant in this action.

14.    At all times material hereto, OCSB's responsibilities included, but were not limited to: establishing, implementing and/or enforcing policies and procedures for public schools within Okaloosa County, Florida, including Silver Sands and Kenwood; training, supervising and/or disciplining its employees, including administrators, investigators, principals, assistant principals, instructors, teachers, and/or aides; implementing policies, customs, and/or practices that prohibited said employees from violating the constitutional and civil rights of its students; and training, supervising and/or disciplining its employees to ensure the welfare and safety of all students enrolled in public schools within Okaloosa County, Florida, including Silver Sands and Kenwood.

15.    Larry Ashley, in his official capacity as Sheriff of Okaloosa County, Florida, ("Sheriff's Office" or "OCSO"), is the duly elected Sheriff of Okaloosa County, Florida, and in that capacity operates and maintains the Okaloosa County Sheriff's Office. OCSO is identified for reference purposes only and is not a named Defendant in this action.

16.    Defendant, MARY BETH JACKSON ("JACKSON"), is a resident of Okaloosa County, Florida, *sui juris*, and at all times material hereto, was employed by the school district as the superintendent of schools and was the Chief Executive Officer of the school system, tasked with establishing, implementing and enforcing the policies and procedures set forth by the SCHOOL BOARD.

17.    At all times material hereto, JACKSON was acting under the color of state law within the course and scope of her employment on behalf of the school district  and her responsibilities included, but were not limited to: establishing, implementing, and/or enforcing school district policies and procedures; establishing, implementing and/or ensuring policies and procedures that provided every student an equal opportunity to learn; hiring, firing, evaluating, supervising and/or disciplining OCSD employees, including but not limited to, administrators, investigators, principals, assistant principals, instructors, and/or aides; and training, supervising and/or disciplining OCSD employees to ensure the welfare and safety of all students enrolled in public schools within Okaloosa County, Florida, including Silver Sands and Kenwood. By virtue of her employment with the school district

JACKSON was, at all times material hereto, a "mandatory reporter" of child abuse as contemplated by Chapter 39, Florida Statutes, *et seq.*

18.    Defendant, STACIE SMITH ("SMITH"), is a resident of Okaloosa County, Florida, *sui juris*, and at all times material hereto, was employed by the school district as the assistant superintendent of human resources. On or about January 31, 2018, SMITH resigned from her employment at OCSD.

19.    At all times material hereto, SMITH was acting under the color of state law within the course and scope of her employment on behalf of the school district and her responsibilities included, but were not limited to: advising the superintendent and SCHOOL BOARD on matters relating to working conditions and employee discipline; establishing, implementing and enforcing personnel policies and procedures; establishing, implementing and enforcing policies and procedures for recruiting, interviewing, selecting and placing employees, overseeing and ensuring the quality and equity of employee investigations, documenting, preserving and maintaining personnel files of OCSD employees; and ensuring the welfare and safety of all students enrolled in public schools within Okaloosa County, Florida, including Silver Sands and Kenwood. By virtue of her employment with the school district

SMITH was, at all times material hereto, a "mandatory reporter" of child abuse as contemplated by Chapter 39, Florida Statutes, *et seq.*

20.    Defendant, ARDEN FARLEY ("FARLEY") is a resident of Okaloosa County, Florida, *sui juris*, and at all times material hereto, was employed by the school district as an Investigator.

21.    At all times material hereto, FARLEY was acting under the color of state law within the course and scope of his employment on behalf of the school district and his responsibilities included, but were not limited to: establishing, implementing and/or enforcing policies and procedures regarding the training and/or supervision of employees; conducting internal investigations of employees to ensure adherence to applicable laws, rules, regulations, policies, procedures, and professional ethical standards; and ensuring the welfare and safety of all students enrolled in public schools within Okaloosa County, Florida, including Silver Sands and Kenwood. By virtue of his employment with the school district FARELY was, at all times material hereto, a "mandatory reporter" of child abuse as contemplated by Chapter 39, Florida Statutes, *et seq.*

22.    Defendant, ALAN LAMBERT ("LAMBERT") is a resident of Okaloosa County, Florida, *sui juris*, and at times material hereto, was

employed by the school district as the principal at Silver Sands. Midway through the 2015-2016 school year, LAMBERT retired.

23.    At all times material hereto, LAMBERT was acting under the color of state law within the course and scope of his employment on behalf of the school district and Silver Sands, and his responsibilities included, but were not limited to: the administration of Silver Sands, including establishing, implementing, and/or enforcing policies and procedures to ensure a safe learning environment and the protection of rights of all students enrolled at Silver Sands, including their welfare and safety; abiding by, and facilitating adherence to, applicable laws, rules, regulations, policies, procedures, and professional ethical standards; establishing, implementing and/or enforcing principles of professional conduct; and hiring, firing, evaluating, supervising and/or disciplining OCSD employees at Silver Sands. By virtue of his employment with the school district LAMBERT was, at all times material hereto, a "mandatory reporter" of child abuse as contemplated by Chapter 39, Florida Statutes, *et seq.*

24.    Defendant, JON WILLIAMS ("WILLIAMS") is a resident of Okaloosa County, Florida, *sui juris*, and at times material hereto, was employed by the school district as the principal at Silver Sands. WILLIAMS

9

became the principal at Silver Sands midway through the 2015-2016 school year.

25.    At all times material hereto, WILLIAMS was acting under the color of state law within the course and scope of his employment on behalf of the school district and Silver Sands, and his responsibilities included, but were not limited to: the administration of Silver Sands, including establishing, implementing, and/or enforcing policies and procedures to ensure a safe learning environment and the protection of rights of all students enrolled at Silver Sands; abiding by, and facilitating adherence to, applicable laws, rules, regulations, policies, procedures, and professional ethical standards; establishing, implementing and/or enforcing principles of professional conduct; and hiring, firing, evaluating, supervising and/or disciplining employees at Silver Sands. By virtue of his employment with the school district WILLIAMS was, at all times material hereto, a "mandatory reporter" of child abuse as contemplated by Chapter 39, Florida Statutes, *et seq.*

26.    Defendant, ROY FRAZIER ("FRAZIER"), is a resident of Okaloosa County, Florida, *sui juris*, and at times material hereto, was employed by the school district as a special education instructor at Silver Sands. FRAZIER retired in June 2017.

10

27.    At all times material hereto, FRAZIER was acting under the color of state law within the course and scope of his employment on behalf of the school district and Silver Sands, and was empowered by the State of Florida to instruct, supervise, discipline, assist, and protect all students in his custody, care and/or control, including N.R. By virtue of his employment with the school district FRAZIER was, at all times material hereto, a "mandatory reporter" of child abuse as contemplated by Chapter 39, Florida Statutes, *et seq.*

28.    Defendant, JEAN HENNION ("HENNION"), is a resident of Okaloosa County Florida, *sui juris*, and at times material hereto, was employed by the school district as a special education paraprofessional at Silver Sands. HENNION retired from OCSD in or about July 2018.

29.    At all times material hereto, HENNION was acting under the color of state law within the course and scope of her employment on behalf of the school district and Silver Sands, and was empowered by the State of Florida to instruct, supervise, discipline, assist, and protect all students in her custody, care and/or control, including N.R. By virtue of her employment with the school district HENNION was, at all times material hereto, a "mandatory

11

reporter" of child abuse as contemplated by Chapter 39, Florida Statutes, *et seq.*

30.    The true identities and capacities of defendants sued as DOES 1-30 are unknown to Plaintiff and therefore Plaintiff prays leave to amend his complaint to allege the true identities and capacities when they are ascertained.

31.    All Defendants named herein, except for OCSB and OCSO are being sued in their individual capacity.

## CONDITIONS PRECEDENT

32.    Plaintiff has satisfied all conditions precedent to bringing this action, including providing notice of these claims as required by Fla. Stat. § 768.28.

## STATEMENT OF THE ULTIMATE FACTS

33.    Plaintiff N.R. was born on September 9, 2001, the son of J.R. and A.R., his natural guardians. At all times material hereto, N.R. had been diagnosed with autism spectrum disorder and he was non-verbal.

34.    In or about March 2014, following his family's relocation from North Carolina to Florida, N.R. began attending Silver Sands. As a result of his disability, N.R. was eligible for and received ESE services, and was

assigned by OCSD to the special education classroom of FRAZIER, an ESE instructor.

35.    FRAZIER remained N.R.'s instructor at Silver Sands until he retired from teaching in June 2017, following the events described more fully herein.

36.    At all times material hereto, N.R. was on an Individual Education Plan ("IEP") at Silver Sands designed to meet his individual needs. N.R.'s IEP included, but was not limited to, his strengths, the effect of his disability on his progress/performance in general education, and a priority scale for his educational needs.

37.    In his IEP dated April 2014, N.R.'s strengths included, but were not limited to, "following one step directions" and "identifying time to the hour." A description of how N.R.'s disability would affect his progress included, but was not limited to, "[N.R.] is unaware of dangerous situations and requires close teacher/adult proximity to ensure his safety," and "[N.R.] demonstrates significant deficits in social skills, communication, self-regulatory behavior, and independent functioning." N.R.'s prioritized educational needs included, but were not limited to, "appropriately communicating his needs and wants," "[N.R.] needs continuous prompting to

initiate, maintain and/or complete activities with hand over hand assistance," and "due to communication deficits and low cognitive ability, N.R. requires continuous minoring, weekly health check will be conducted to ensure N.R.'s continued well-being in the school setting."

38.    In or about April 2014, N.R. underwent a functional behavior assessment ("FBA") to identify recurrent concerning behavior (including hitting, scratching, pinching, biting), exhibited by N.R. as a result of his disability and profound developmental delays.

39.    At the same time, April 2014, a behavior intervention plan ("BIP") that was created for N.R. at his previous school in North Carolina, was amended by OCSD personnel. N.R.'s BIP outlined the steps a special education instructor (FRAZIER) should take if N.R. displayed concerning behavior.

40.    Per N.R.'s FBA, if N.R. exhibited the concerning behavior FRAZIER was directed to teach N.R. acceptable behavior, thereby allowing him to remain in a classroom setting.

41.    Specifically, if N.R. exhibited concerning behavior, FRAZIER was directed to introduce replacement behavior (including showing N.R. pictures of new activities and then assisting N.R. to complete said activities)

14

and then reward N.R. for doing so with positive reinforcement (such as food, toys, attention and verbal praise).

42.     Under no circumstances was N.R. to be physically or verbally abused, unlawfully restrained, or secluded, in violation of the objectives set forth in his FBA, IEP, and/or his constitutional and civil rights.

### Abuse, Restraint, and Seclusion of Non-verbal, Disabled ESE Students at Silver Sands

43.     At all times material hereto, all Defendants occupied a special custodial relationship with ESE students at Silver Sands, including N.R., as a result of their disabilities. All Defendants had an affirmative duty to ensure that said students were provided with, and received, a safe, quality education, free from excessive physical or verbal abuse, unlawful restraint, and seclusion.

44.     While he was an ESE student at Silver Sands, N.R.'s parents never consented to him being physically or verbally abused, unlawfully restrained, or secluded against his will. Notwithstanding, and unbeknownst to N.R.'s family from whom all Defendants actively concealed this information, N.R. was repeatedly physically and verbally abused, improperly and/or excessively restrained, and secluded against his will throughout his entire enrollment as an ESE student in FRAZIER's classroom.

15

45.    FRAZIER physically and verbally abused non-verbal, disabled ESE students, including N.R., on a regular basis during their enrollment at Silver Sands.

46.    On numerous occasions during the 2014-2015 and 2015-2016 school years FRAZIER pushed, slapped, punched and/or kicked non-verbal, disabled ESE students, including N.R., resulting in injuries to them.

47.    On numerous occasions during the 2015-2016 school year FRAZIER threw shoes at non-verbal, disabled ESE students, including N.R., while the students sat innocently on a couch because he found it funny when the students were hit by the shoes.

48.    In December 2015, FRAZIER struck a non-verbal, disabled ESE student with a closed fist so hard in his chest that it echoed across the hallway and caused red marks and bruising to appear on said student's body.

49.    On numerous occasions during the 2014-2015 and 2015-2016 school years FRAZIER and HENNION unlawfully restrained non-verbal, disabled ESE students, including N.R., by strapping them to a stationary exercise bike for hours as a means of punishment. On at least one such occasion, N.R. was injured when the exercise bike tipped over and fell on top of him.

50.    On at least one occasion during the 2015-2016 school year FRAZIER improperly used a calming sack (a multisensory therapy tool for providing calming/organizing deep pressure input, and for developing motor planning, spatial, and body awareness) by tying the sack over the student's head, causing the student to panic and undress himself, and otherwise embarrassing said student.

51.    During the 2014-2015 and 2015-2016 school years FRAZIER frequently pinched and flicked non-verbal, disabled ESE students, including N.R., so hard the students cried. During at least one conversation with an OCSD aide at Silver Sands, FRAZIER correlated his pinching and flicking of non-verbal, disabled ESE students with shock techniques allegedly endorsed for use on dogs by the famous canine behaviorist, Cesar Millan. FRAZIER indicated such techniques were intended to redirect the students' attention by inflicting pain on them.

52.    On numerous occasions during the 2015-2016 school year FRAZIER unlawfully restrained non-verbal, disabled ESE students by picking them up by their arms and legs and swinging them in the air. On at least one occasion, FRAZIER picked up a non-verbal, disabled ESE student

by the hands and legs and dropped him to the floor resulting in said student striking his head and suffering injuries.

53.    On numerous occasions during the 2015-2016 school year FRAZIER unlawfully restrained and secluded non-verbal, disabled ESE students, including N.R., by confining the students in a cardboard box for hours so Frazier would not be bothered by the students.

54.    During the 2015-2016 school year FRAZIER frequently secluded a non-verbal, disabled ESE student in a small, dark room so FRAZIER would not be bothered by the student.

55.    On multiple occasions during the 2015-2016 school year FRAZIER unlawfully restrained and secluded non-verbal, disabled ESE students, including N.R., by locking the students in a hot transport van when FRAZIER would inexcusably leave school field trips and take the students to yard sales or his home for his own personal benefit.

56.    On at least one occasion during the 2015-2016 school year FRAZIER brought a BB gun to his classroom, placing non-verbal, disabled ESE students, including N.R., in immediate danger of suffering serious bodily injury.

57.    On numerous occasions during the 2015-2016 school year FRAZIER brought items he purchased at yard sales into his classroom and directed a classroom aide to repair the items, thus taking the aide's attention away from FRAZIER's unlawful abuse, restraint and seclusion of non-verbal, disabled ESE students, including N.R.

58.    On numerous occasions during the 2015-2016 school year, FRAZIER deprived non-verbal, disabled ESE students, including N.R., of their food because said students were allegedly not behaving.  FRAZIER was observed by OCSD employees at Silver Sands throwing away non-verbal, disabled ESE students' lunchtime meals, including N.R.'s, consuming their food, and/or taking their food home for himself. In doing so, FRAZIER denied the students, including N.R., nourishment and forced them to spend the remainder of the school day hungry.

59.    On multiple occasions during the 2015-2016 school year FRAZIER verbally abused N.R. by making sexually explicit, crude, and vulgar comments about his mother, A.R., in front of N.R. FRAZIER's comments included telling a story of how one day A.R. came to pick N.R. up from school (according to FRAZIER, A.R.'s top was see-through and she must have just come from the beach because she had sand on her neck and

arm) and FRAZIER "just wanted to lick the sand right off of her body." FRAZIER's comments were made for the sole purpose of embarrassing, provoking, and upsetting N.R.

60.    During the 2015-2016 school year FRAZIER and HENNION routinely verbally abused non-verbal, disabled ESE students, including N.R., by calling them inappropriate names. FRAZIER and HENNION routinely called a student's father a "douche bag" in front of the student. FRAZIER and HENNION's comments were made for the sole purpose of embarrassing, provoking, and upsetting said students, including N.R.

61.    During the entire duration of FRAZIER'S physical and verbal abuse, restraint and seclusion of non-verbal, disabled ESE students, including N.R., FRAZIER falsified said students' test data to make it appear as though the students' functionality in the classroom was improving, when in fact it was regressing. This falsification was part of a longstanding custom, policy and/or practice within OCSD of concealing abuse of non-verbal, disabled ESE students, including N.R.

62.    FRAZIER physically and verbally abused, restrained and secluded disabled, non-verbal ESE students at Silver Sands, including N.R., because they were vulnerable, defenseless children and he knew they were

unable to report the abuse, advocate for themselves, or otherwise confront him for such conduct.

63.    FRAZIER targeted non-verbal, disabled ESE students as opposed to students who were verbal enough to report his abuse to other OCSD employees, aides and teachers.

64.    FRAZIER's inappropriate and/or excessive abuse, restraint and seclusion of non-verbal, disabled ESE students, including N.R., served no legitimate governmental interest.

65.    FRAZIER's conduct, as alleged above, was rampant and widespread and was witnessed by, and/or reported to, numerous OCSB, OCSD and/or OCSO employees.

66.    Defendants OCSB, JACKSON, SMITH, FARLEY, LAMBERT, WILLIAMS, and HENNION were on notice of said widespread conduct and had knowledge of the abuse upon non-verbal, disabled ESE students, including N.R., by FRAZIER and knew of the need to stop said conduct and failed to intervene in, or otherwise properly report, the same. Instead, Defendants OCSB, JACKSON, SMITH, FARLEY, LAMBERT, WILLIAMS, and HENNION allowed the conduct to continue for a significant period of time resulting in further and continued inappropriate and/or

excessive abuse, restraint and seclusion of non-verbal, disabled ESE students, including N.R., as more specifically alleged in paragraphs 44-65.

### *Abuse, Restraint, and Seclusion of Non-verbal, Disabled ESE Students at Kenwood*

67.    Throughout the 2014-2015 and 2015-2016 school years, Mrs. Marlynn Stillions ("Stillions"), a teacher's union representative, OCSD employee and ESE instructor at Kenwood, subjected non-verbal, disabled ESE students in her classroom to perpetual, pervasive physical and verbal abuse, unlawful restraint and seclusion.

68.    On numerous occasions during the 2015-2016 school year, Stillions grabbed and pinched students' faces and bodies causing red marks and bruising to those areas, and otherwise injuring said students. On at least one occasion, Stillions indicated to an OCSD employee at Kenwood that grabbing and pinching students was how she relieved stress.

69.    On numerous occasions during the 2014-2015 and 2015-2016 school years Stillions was observed by OCSD employees at Kenwood placing a "wand" wrapped in fabric and soaked in a vinegar mixture into the mouth of non-verbal, disabled ESE students as well as rubbing it on their lips, as a disciplinary tactic to get the students to behave.

70.    On numerous occasions during the 2014-2015 and 2015-2016 school years, Stillions instructed teacher's assistants at Kenwood to, and did herself, spray non-verbal, disabled ESE students in the face and in their mouths with a bottle of vinegar as a disciplinary tactic to get the students to behave.

71.    On numerous occasions during the 2014-2015 and 2015-2016 school years, Stillions was observed by OCSD employees at Kenwood using her foot to push or kick a non-verbal, disabled ESE student down the aisle of the cafeteria while the student was laying on the floor visibly upset and crying.

72.    During the 2015-2016 school year Stillions was observed by an OCSD employee at Kenwood forcefully kneeing a non-verbal, disabled ESE student in his head and body approximately four times in a row as a disciplinary measure in order to get the student to sit down. Stillions used such physical force that the student's head snapped back each time she struck him.

73.    In or about October or November 2015, Stillions was observed by an OCSD employee at Kenwood waiting for a non-verbal, disabled ESE student to enter the cafeteria and when he did she stuck out her foot purposely tripping the student causing him to fall face down on the floor and otherwise injuring him.

74.    On numerous occasions during the 2014-2015 and 2015-2016 school years Stillions was observed by OCSD employees at Kenwood angrily screaming and yelling at non-verbal, disabled ESE students as a form of discipline.

75.    During the 2015-2016 school year Stillions called in a "code yellow" (distress call) on a walkie-talkie because she had allowed a non-verbal, disabled ESE student to escape from the classroom. An OCSD employee at Kenwood heard the call, ran to the window and witnessed Stillions violently shoving the student to the ground, resulting in injury to the student. Stillions then falsely reported over the walkie-talkie that the student had attacked her, a lie that was confirmed by the employee who witnessed Stillions' unprovoked abuse of the student.

76.    In or about May 2016, Stillions stuck her finger in a non-verbal, disabled ESE student's mouth while slamming the student's head into the wall as a form of discipline.

77.    In or about February 2016, Stillions restrained non-verbal, disabled ESE students improperly, excessively and against their will, including but not limited to, grabbing a student by the waistband of his pants

24

and the back collar of his shirt, carrying him into the cafeteria and forcefully throwing him on the floor.

78.    On numerous occasions during the 2015-2016 school year, Stillions was observed by OCSD employees at Kenwood throwing away non-verbal, disabled ESE students' lunchtime meals because said students were allegedly not behaving, thereby denying them nourishment and forcing the students to spend the remainder of the school day hungry.

79.    On numerous occasions during the 2015-2016 school year Stillions was observed by OCSD employees at Kenwood punishing students by making them throw their food away and making students carry their own lunch trays when they were physically unable to do so (because of a mental or physical disability, or otherwise).

80.    On numerous occasions during the 2015-2016 school year Stillions was observed by OCSD employees at Kenwood refusing to give non-verbal, disabled ESE students portions of their breakfast for the sole purpose of provoking and upsetting said students.

81.    On numerous occasions during the 2015-2016 school year Stillions deprived non-verbal, disabled ESE students of their food, consumed their food, and/or took their food home for herself, thereby denying said ESE

students nourishment and forcing them to spend the remainder of the school day hungry.

82.    On numerous occasions during the 2015-2016 school year Stillions was observed by an OCSD employee at Kenwood secluding non-verbal, disabled ESE students in a basket, putting a bean bag on or near their genital area and then stepping on top of the bean bag with her foot against the students' will, causing them pain.

83.    Like FRAZIER, Stillions physically and verbally abused, restrained and secluded disabled, non-verbal ESE students at Kenwood because they were vulnerable, defenseless children and she knew they were unable to report the abuse, advocate for themselves, or otherwise confront her for such conduct.

84.    Like FRAZIER, Stillions targeted non-verbal, disabled ESE students as opposed to students who were verbal enough to report her abuse to other OCSD employees, aides and teachers.

85.    Stillions' inappropriate and/or excessive abuse, restraint and seclusion of non-verbal, disabled ESE students served no legitimate governmental interest.

86.    Stillions' conduct, as alleged above, was rampant and widespread and was witnessed by, and/or reported to, numerous OCSB, OCSD and/or OCSO employees.

87.    Defendants OCSB, JACKSON, SMITH, and FARLEY, as well as OCSO, were on notice of said widespread conduct and had knowledge of the abuse upon non-verbal, disabled ESE students by Stillions and knew of the need to stop said conduct and failed to intervene, or otherwise properly report, the same. Instead, Defendants OCSB, OCSO, JACKSON, SMITH, and FARLEY allowed the conduct to continue for a significant period of time resulting in further and continued inappropriate and/or excessive abuse, restraint and seclusion of non-verbal, disabled ESE students, as more specifically alleged in paragraphs 67-86.

### *The Policy and Practice of Abuse, Restraint and*
### *Seclusion of Non-verbal, Disabled ESE students within OCSD*

88.    Throughout the years of rampant physical and verbal abuse, unlawful restraint and seclusion of non-verbal, disabled ESE students within OCSD, including N.R., as more specifically detailed in paragraphs 44-86, said conduct went unreported as required by Chapter 39, Florida Statutes, by OCSB, OCSD and/or OCSO employees, including but not limited to JACKSON, SMITH, FARLEY, LAMBERT, WILLIAMS, and HENNION all

27

of whom had knowledge of, and a duty to report the same, and/or was reported but intentionally and unlawfully concealed by OCSB, OCSD and/or OCSO and JACKSON, SMITH, FARLEY, LAMBERT, WILLIAMS, and HENNION to perpetuate a district-wide cover up of constitutional violations against said students, and save their own careers.

89.    Specifically, on multiple occasions during the fall semester of the 2015-2016 school year, Silver Sands employees reported to LAMBERT that they had witnessed FRAZIER physically and verbally abusing non-verbal, disabled ESE students, including N.R. LAMBERT allegedly reassured the reporting employees that he would talk with FRAZIER. However, LAMBERT failed to intervene, report the conduct, and/or notify the students' parents. Instead, his response was a lie intended to make the reporting employees believe that the matter was being taking care of when, in fact, it was being concealed.

90.    In fact, on at least one occasion LAMBERT's response to a Silver Sands employee who reported FRAZIER's abuse of non-verbal, disabled ESE students, including N.R., to him, was to inform the employee that he (LAMBERT) only had one year left until retirement and thus, he

instructed the employee not to ruin that time by further reporting the abuse and forcing him to deal with the consequences of such a report.

91.    Throughout the multi-year pattern of FRAZIER's abuse of non-verbal, disabled ESE students at Silver Sands, including N.R., LAMBERT had opportunities to correct said conduct but instead he concealed it, as described more fully herein.

92.    During this same time period, the 2015-2016 school year, teachers' aides at Kenwood reported Stillions' abuse of non-verbal, disabled ESE students, described in paragraphs 67-86, to OCSB, OCSD, and OCSO employees, including but not limited to Angelyn Vaughan (former principal at Kenwood), Joan Pickard (principal at Kenwood), Dwayne Vasiloff (former OCSO deputy/school resource officer at Kenwood), FARLEY, JACKSON, and SMITH, but no action was taken by said administration to protect the safety and welfare of said students.

93.    On February 16, 2016 and February 18, 2016, WILLIAMS, FARLEY, JACKSON, and SMITH, received written notification by aides in FRAZIER's classroom of FRAZIER's ongoing abuses, including that FRAZIER: pinched, hit, kicked and inappropriately touched students; threw shoes at students; swung a child with muscular dystrophy and dropped him on

the ground; brought a BB gun to school; and would lie about taking non-verbal, disabled ESE students on field trips when in fact he was taking said students to garage sales and would leave the students locked in the school transport van while he shopped for items to sell for his own monetary benefit. Defendants, FARLEY, JACKSON, SMITH, and WILLIAMS all failed to make a mandatory report to the Florida Department of Children and Families ("DCF") Abuse Hotline as required by Chapter 39, Florida Statutes, or notify the parents of the affected students.

94. On February 24, 2016, FARLEY submitted an internal "Investigative Summary" documenting allegations of ethical violations against FRAZIER ("Frazier Report") to the OCSD Human Resource division. In his findings, FARLEY confirmed seven out of seven allegations of ethical violations against FRAZIER, including wrongful physical contact with ESE students.

95. Within the Frazier Report, FARLEY made four recommendations, two of which were directed at FRAZIER, individually, including that FRAZIER receive disciplinary actions and that FRAZIER be evaluated to assess whether an environment of disabled students is where he should work.

96.    On March 5, 2016, the Frazier Report was sent to SMITH, JACKSON, school district attorney Jeffrey McInnis, and WILLIAMS.

97.    On March 16, 2016, SMITH (who had previously documented in an email to FRAZIER the seriousness of the allegations against FRAZIER and acknowledged a need for FRAZIER's students to be protected from him), sent a letter to JACKSON merely recommending that FRAZIER receive a three day suspension for not following student BIP's and not documenting accurate travel locations when he took students on "field trips," as described more fully in paragraph 55. SMITH and JACKSON intentionally concealed the other sustained abuse allegations and constitutional violations by FRAZIER, which included the documented physical abuse of non-verbal, disabled ESE students in his classroom.

98.    On March 17, 2016, JACKSON authored and signed two letters: one addressed to FRAZIER and a second addressed to OCSB, recommending FRAZIER's three day suspension.

99.    OCSD, JACKSON, SMITH and WILLIAMS allowed FRAZIER to forego serving his three day suspension immediately or even on consecutive days. Rather, FRAZIER chose, and said Defendants authorized him, to serve his suspension on the following convenient days: Friday, April 29, 2016,

Monday, May 16, 2016, and Tuesday, May 31, 2016 (OSCD was closed on Monday, May 30, 2016 in observation of Memorial Day).

100.    In April 2016, prior to FRAZIER's first day of suspension, an aide in FRAZIER's classroom spoke to JACKSON and SMITH on the phone and questioned why nothing was being done about FRAZIER and why he was being left in the same classroom with the same non-verbal, disabled ESE students that he had been abusing. However, OCSB, JACKSON, SMITH, and other OCSD administrators, including WILLIAMS, disregarded the aide's inquiry and allowed FRAZIER to remain in the same classroom through the end of the 2015-2016 school year (the last day of school for students was not until June 2, 2016), during which time the constitutional violations against non-verbal, disabled ESE students, including N.R., continued as previously described herein.

101.    Defendants failed to properly report said abuse, adequately discipline or evaluate FRAZIER, or otherwise appropriately respond to the constitutional violations against non-verbal, disabled ESE students at Silver Sands.

102. Instead, OCSD administrators, including LAMBERT and WILLIAMS, retaliated against the aides for reporting the unconstitutional

conduct including, but not limited to, separating them from their assigned students, moving them to different classrooms, and changing one aide's assigned *lunch* hour to 9:15 a.m. OCSD's response was intended to punish those who reported said conduct and to prevent them from witnessing and/or reporting future child abuse within OCSD, so as to further conceal the existence thereof.

103.    On February 17, 2016, the day after one of FRAZIER's aide's reported FRAZIER's physical and verbal abuse, restraint and seclusion of non-verbal ESE students, including N.R., to FARLEY, as described in paragraph 94, HENNION threatened the aide by telling him "you are not safe."

104.    During the course of the rampant and widespread abuse of non-verbal, disabled ESE students within OCSD, aides were instructed by OCSD administration to only reply "today was a good day," if asked by the parents and/or caretakers of said students how the school day went. This instruction was part of a longstanding custom, policy and/or practice within OCSD of concealing abuse of non-verbal, disabled ESE students, including N.R.

105.    This longstanding custom, policy and/or practice within OCSD was particularly detrimental to non-verbal, disabled ESE students, including

N.R., whose IEP's prioritized health and well-being. Specifically, the length and nature of the school day forces parents of non-verbal, disabled ESE students, including N.R., to depend on accurate reporting from teachers and aides in monitoring said students' significant behavioral issues and general well-being, as described in paragraph 37.

106.   On at least one occasion during the 2015-2016 school year, OCSD administration intentionally made a false report of child abuse to DCF to conceal actual abuse within the OCSD and protect FRAZIER. Specifically, when OCSD administration made the report, they purposely named a wrong child so that DCF would not investigate the child victim, a non-verbal, disabled ESE student whom FRAZIER had punched in the chest, as described in paragraph 48.

107.   Shortly after Defendants, including but not limited to, OCSB, JACKSON, SMITH, and FARLEY were made aware of FRAZIER's abuse of non-verbal, disabled ESE students at Silver Sands, said Defendants were contacted regarding the abuse by Stillions at Kenwood.

108.   On April 26, 2016, an email was sent from Vaughan to the OCSD Human Resources department regarding alleged Code of Ethics violations

made by several OCSD employees who had seen Stillions acting abusively to non-verbal, disabled ESE students at Kenwood.

109.   On April 27, 2016, FARLEY commenced an investigation into said ethics violations and improper student interactions/procedures by Stillions against non-verbal, disabled ESE students at Kenwood. JACKSON, SMITH, Vaughan, Pickard, and Ms. Melody Sommer (OCSD's program director for the ESE department), were aware of FARLEY's investigation.

110.   During his investigation FARLEY interviewed approximately twenty (20) OCSD employees who expressed grave concerns about Stillions' behavior with children and recounted the history, dating back to the 2014-2015 school year, of Stillions' consistent physical and verbal abuse, restraint and seclusion of non-verbal, disabled ESE students.

111.   During the interview phase of FARLEY's investigation OCSD administrators, including but not limited to FARLEY, made Kenwood employees agree that they would not discuss said investigation, including their knowledge of STILLIONS' physical and verbal abuse, restraint and seclusion of non-verbal, disabled ESE students at Kenwood. This directive by OCSD administration was intended to intimidate Kenwood employees and further

conceal the multi-year pattern of abuse against non-verbal, disabled ESE students within OCSD, as described herein.

112.   On or about June 17, 2016, FARLEY issued an "Investigative Summary Report" ("Stillions Report") outlining the details and findings of his investigation into Stillions, including multiple confirmed allegations of child abuse. FARLEY addressed the Stillions Report to SMITH and Pickard.

113.   Despite confirming multiple allegations of child abuse by Stillions against Kenwood non-verbal, disabled ESE students, FARLEY failed to make a mandatory report to the DCF Abuse Hotline in violation of Chapter 39, Florida Statutes, or notify the parents of the affected students.

114.   Following their receipt of the Stillions Report neither SMITH nor Pickard made a mandatory report to the DCF Abuse Hotline in violation of Chapter 39, Florida Statutes.

115.   On or about July 18, 2016, SMITH sent an email to Pickard, JACKSON and FARLEY requesting that, in light of the Stillions events, OCSD employees receive child abuse/neglect training during the 2016-2017 school year. In her email, SMITH acknowledged a failure within the OCSD to emphasize and/or enforce the mandatory requirement to report child abuse/neglect.

116.   Despite actual knowledge of physical abuse to non-verbal, disabled ESE students enrolled in OCSD schools, Pickard, JACKSON, SMITH and FARLEY failed to intervene in said abuse, or report the same, to DCF.

117.   On or about July 18, 2016, Pickard sent a reply email to SMITH, JACKSON and FARLEY, expressing that the failure of OCSD employees to report child abuse/neglect was due to employees not knowing what/when to report and employees fearing retaliation by teacher's union representatives if they did report child abuse/neglect.

118.   In fact, during the FRAZIER investigation, an administrative assistant at Silver Sands acknowledged that OCSD employees, including aides, were instructed by OCSD administration to report abuse allegations to the principal of the school. This instruction was made pursuant to a policy, custom and/or practice within OCSD of concealing the abuse of non-verbal, disabled ESE students, and intentionally circumventing the mandatory reporting requirements established in Chapter 39, Florida Statutes.

119.   On or about August 1, 2016, SMITH dismissed the case against Stillions criticizing the timeliness of FARLEY's investigation and determining that the Stillions Report would not be included in, and would not

be considered an official part of, Stillions' personnel record. SMITH's decisions were made pursuant to a policy, custom and/or practice within OCSD of concealing the abuse of disabled students and failing to protect said students from unlawful and unconstitutional treatment.

120. Within the Stillions Report, FARLEY made seven recommendations, five of which were directed at Stillions, individually, including a recommendation that Stillions receive disciplinary actions. Stillions failed to complete any of the recommendations directed at her. Notwithstanding, OCSB, JACKSON, SMITH, FARLEY, and Sommer, offered and/or approved Stillions' transfer to a paid position as an ESE instructor at Silver Sands to start the 2016-2017 school year, where STILLIONS was placed in a classroom with even more severely disabled students.

121. Defendants, OCSB, JACKSON, SMITH, FARLEY, and Sommer, failed to intervene or take any actions that would prevent the ongoing abuse and constitutional violations by Stillions of non-verbal, disabled ESE students and, in fact, perpetuated said abuse and constitutional violations by placing Stillions into another classroom at a different school, where her prior abuse of non-verbal, disabled ESE students was concealed

from aides, staff and other teachers by OCSB and OCSD administrators, with knowledge thereof.

122.   Like Stillions, HENNION was continuously employed by OCSB and was allowed to continue working with non-verbal, disabled ESE students despite previous findings by OCSB that she unlawfully restrained a child in the classroom by duct-tapping the student to a desk.

123.   From in or about February 2016 through in or about April 2017, Defendants OCSB, JACKSON, SMITH, FARLEY, LAMBERT, WILLIAMS, and HENNION as well Vaughan, Pickard, Sommer and Vasiloff failed to communicate, correspond, or in any way inform the parents of the non-verbal, disabled ESE students FRAZIER and Stillions had abused of OCSD's investigations and findings into FRAZIER and Stillions, including confirmed allegations that non-verbal, disabled ESE students had been physically and verbally abused, unlawfully restrained and/or secluded by FRAZIER and Stillions on a regular basis since 2014.

124.   During the 2015-2016 and 2016-2017 school year, Vasiloff was approached by DCF investigators regarding alleged child abuse, including evidence of injuries, of non-verbal, disabled ESE students at Kenwood.

125.   Notwithstanding said allegations, Vasiloff intentionally refused and failed to participate in, author reports of abuse of non-verbal, disabled ESE students at Kenwood, or conduct the required investigations into the allegations of abuse and constitutional violations.  From 2015 through 2017, DCF was called at least 50 times for investigative visits to Kenwood regarding student abuse. Vasiloff failed to even generate a report in the vast majority of said cases.

126.   On at least one occasion, Vasiloff's reaction after reviewing a DCF intake report containing allegations of child abuse against a disabled student at Kenwood was to accuse the child abuse victim of being a "little liar."

127.   On June 28, 2017, OCSO issued a Disciplinary Notification / Action Form against Vasiloff finding that he failed to adhere to OCSO policy by "grossly neglecting" his duties as to joint child abuse investigations at Kenwood Elementary, and of "wanton indifference" towards said investigations.

128.   Similarly, on at least one occasion during the course of the DCF and criminal investigations described in paragraph 137, a deputy with OCSO instructed parents of a non-verbal, disabled ESE student not to pursue

prosecution of FRAZIER for his verbal and physical abuse, unlawful restraint and seclusion of their son while he was enrolled in FRAZIER's class. This instruction was part of a longstanding custom, policy and/or practice within OCSO and OCSD to conceal abuse of non-verbal, disabled ESE students, including N.R.

129.    In or about the beginning of May 2017, during a casual conversation between a parent of a non-verbal, disabled ESE student at Kenwood ("parent") and a Kenwood instructor, Stillions' name populated. The instructor exclaimed her distaste for Stillions in light of OCSD's investigation into Stillions and the "findings" of said investigation, including findings pertaining to said parents' child.  Shocked and confused, the parent inquired further at which time the instructor suggested that the parent obtain a copy of the Stillions Report.

130.    The parent immediately contacted Pickard, then principal of Kenwood, asking to view Stillions' personnel file and Pickard referred the parent to OCSD's human resources ("HR") office. Upon contacting HR, the parent was told that the file would be available for review the following day.

131.    The following day the parent arrived at OCSD's HR office and reviewed Stillions' personnel file which did not contain the Stillions Report.

The parent inquired into the whereabouts of said report and was told by HR personnel that it did not exist.

132.   On or about Friday, May 12, 2017, the parent escalated his request for the Stillions Report to JACKSON's office but was told that the Stillions Report was unavailable.

133.   OCSB and OCSD employees, including but not limited to FARLEY, Pickard, SMITH and JACKSON met and agreed to suppress the Stillions Report in an attempt to conceal the confirmed allegations therein from ever being known, as part of a longstanding custom, policy and/or practice within OCSD of concealing abuse of non-verbal, disabled ESE students.

134.   Finally, on May 15, 2017, approximately two weeks after the parent's initial request, the parent received a (redacted) copy of the Stillions Report outlining the longstanding abuse allegations of non-verbal, disabled ESE students at Kenwood, as described in paragraphs 67-86.

135.   On May 30, 2017, an administrative complaint alleging five separate violations of Florida Statutes and the Florida Administrative Code, was filed against FRAZIER by the Florida Commissioner of Education as a result of his physical and verbal abuse, restraint and seclusion of non-verbal,

disabled ESE students, including N.R., at Silver Sands. Notwithstanding, OCSD honored FRAZIER upon his retirement from OCSD in June 2017 and he was awarded full state retirement benefits.

136.    On June 29, 2017, in response to the administrative complaint, the Education Practices Commission of the State of Florida permanently revoked FRAZIER's education certificate.

137.    Stillions remained a paid ESE teacher at Silver Sands for the entire 2016-2017 school year.  Following the release of the Stillions Report to the parent, the abuse of non-verbal, disabled ESE students within the OCSD system was publicized and numerous DCF investigations and criminal investigations were launched. To date Defendants, FARLEY, SMITH, Vaughan, and Stillions, have been arrested and charged as a result of said investigations.

138.    On September 11, 2018, Defendant FARLEY entered a plea to multiple counts of felony failure to report suspected child abuse, in violation of 39.205, Florida Statutes.

139.    On October 13, 2018, a jury found Stillions guilty of multiple counts of felony child abuse, in violation of 827.03, Florida Statutes.

**COUNT I**
**UNREASONABLE SEIZURE**
**VIOLATION OF 42 U.S.C. § 1983 AGAINST**
**THE SCHOOL BOARD OF OKALOOSA COUNTY, FLORIDA**

140.   Plaintiff incorporates by reference paragraphs 1-139.

141.   This count is brought pursuant to Title 42 U.S.C. § 1983.

142.   This is a civil rights action for money damages arising from the
Defendant's deprivation, under color of state law, of Plaintiff's constitutional
civil rights.

143.   Plaintiff has constitutional rights under the Fourth Amendment
to be free from unreasonable seizures and to be secure in his person, and under
the Fourteenth Amendment to have his due process liberty interests protected.

144.   Defendant violated N.R.'s constitutional rights by:

a.     Failing to establish, implement or enforce policies and/or
procedures within the OCSD, so as to allow a custom, policy or practice
to exist wherein OCSD employees, including administrators,
investigators, principals, assistant principals, instructors, and/or aides
violated the constitutional and civil rights of students, including N.R.;

b.     Failing to establish, implement or enforce policies and/or
procedures within the OCSD regarding training, supervising and/or
disciplining OCSD employees including, administrators, investigators,

44

principals, assistant principals, instructors, and/or aides in the reporting of child abuse, so as to allow OCSD employees to violate the constitutional and civil rights of students, including N.R.;

c.    Failing to adequately and appropriately respond to reports of child abuse within the OCSD, including at Silver Sands, so as to allow unreasonable constitutional and civil rights violations against students, including N.R.;

d.    Failing to adequately train and/or supervise OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides to identify and properly report unreasonable seizures of students, so as to allow unreasonable constitutional and civil rights violations against students, including N.R.;

e.    Overlooking, ignoring, and/or disregarding rampant child abuse within the OCSD so as to allow a custom, policy and/or practice to exist wherein OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides violated the constitutional and civil rights of students, including N.R;

f.    Cultivating a culture and atmosphere of intimidation

45

within the OCSD wherein OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides feared stopping, assisting with, or reporting constitutional and civil rights violations of students, including N.R.; and/or

g.   Authorizing, encouraging or instructing OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides not to stop, assist with, or report constitutional and civil rights violations of students, including N.R.

145.   Defendant's failure to intervene and correct the unreasonable constitutional violations against OCSD students rose to the level of a longstanding custom, policy or practice of the Defendant to allow said students, including N.R., to be unlawfully seized against their will.

146.   Defendant permitted and tolerated a historical pattern and practice of unlawful physical restraint of vulnerable and defenseless children, such as N.R., which was objectively unreasonable under the totality of the circumstances and in light of the Defendant's custodial and tutelary responsibility over the children entrusted to its care, including N.R.

147.   Defendant's policy, custom and/or practice of tacitly authorizing, or remaining indifferent to, violations against Plaintiff's right to personal

security and freedom of movement was the direct and foreseeable cause of

Plaintiff's damages, pain and suffering, loss of enjoyment of life, emotional

damages up to and including post-traumatic stress disorder, loss of earning

potential, and/or past and future medical expenses. Additionally, the conduct

of Defendant is sufficient to render it liable for the conduct and answering for

punitive damages.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages,

to include punitive damages, against this Defendant and further demands

interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, and such

other relief as the Court deems appropriate.

## COUNT II
### EXCESSIVE USE OF FORCE
### VIOLATION OF 42 U.S.C. § 1983 AGAINST
### THE SCHOOL BOARD OF OKALOOSA COUNTY, FLORIDA

148.   Plaintiff incorporates by reference paragraphs 1-139.

149.   This count is brought pursuant to Title 42 U.S.C. § 1983.

150.   This is a civil rights action for money damages arising from the

Defendant's deprivation, under color of state law, of Plaintiff's constitutional

civil rights and his Fourteenth Amendment due process liberty interest.

151.   Plaintiff's Fourteenth Amendment due process liberty interest

includes his right to be free from unnecessary and unreasonable force or

intentional, reckless or deliberately indifferent or oppressive conduct that causes emotional or psychological harm.

152. Defendant violated N.R.'s constitutional right by:

a. Failing to establish, implement or enforce policies and/or procedures within the OCSD, so as to allow a custom, policy or practice to exist wherein OCSD employees, including administrators, investigators, principals, assistant principals, instructors, and/or aides deliberately violated the constitutional and civil rights of students, including N.R.;

b. Failing to establish, implement or enforce policies and/or procedures within the OCSD regarding training, supervising and/or disciplining OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides in the reporting of child abuse, so as to allow OCSD employees to deliberately violate the constitutional and civil rights of students, including N.R.;

c. Failing to adequately and appropriately respond to reports of child abuse within the OCSD, including at Silver Sands, so as to allow deliberate constitutional and civil rights violations against students, including N.R.;

d.      Failing to adequately train and/or supervise OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides to identify and properly report instances of excessive use of force so as to allow deliberate constitutional and civil rights violations against students, including N.R.;

e.      Overlooking, ignoring, and/or disregarding rampant child abuse within the OCSD so as to allow a custom, policy and/or practice to exist wherein OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides deliberately violated the constitutional and civil rights of students, including N.R.;

f.      Cultivating a culture and atmosphere of intimidation within the OCSD wherein OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides feared stopping, assisting with, or reporting constitutional and civil rights violations of its students, including N.R.; and/or

g.      Authorizing, encouraging or instructing OCSD employees including, administrators, investigators, principals, assistant principals,

instructors, and/or aides not to stop, assist with, or report constitutional and civil rights violations of students, including N.R.

153.    Defendant had actual or constructive knowledge of, and tacitly authorized, or was deliberately indifferent to, conduct that posed a foreseeable, pervasive and unreasonable risk of serious bodily injury to students, including N.R.

154.    Defendant's failure to correct the arbitrary and egregious constitutional and civil rights violations against students, including N.R., rose to the level of a longstanding custom, policy or practice of the Defendant to tolerate or ignore injuries inflicted on students, including N.R., by tacitly authorizing, or being deliberately indifferent to, the unconstitutional conduct which Defendant had actual or constructive knowledge was occurring within its classrooms.

155.    Defendant's failure to establish, implement or enforce policies or practices within the OCSD for properly documenting and reporting constitutional violations against students rose to the level of a custom, policy and/or practice of the Defendant to hide, or turn a blind eye to, constitutional violations against said students, including those violations inflicted upon N.R.

156. Defendant was deliberately indifferent to, permitted and/or tolerated a historical pattern and practice of intentional physical and verbal abuse, excessive uses of force and psychological harm against vulnerable and defenseless children, such as N.R., which was unjustifiable by any governmental interest as well as shocking to the conscience.

157. Defendant's policy, custom, and/or practice of violating Plaintiff's Fourteenth Amendment rights, including Plaintiff's welfare, and the Defendant's deliberate indifference to the imminent risk of harm Plaintiff faced as a result of said violations was the direct and foreseeable cause of Plaintiff's damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses. Additionally, the conduct of Defendant is sufficient to render it liable for the conduct and answering for punitive damages.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against this Defendant and further demands interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, and such other relief as the Court deems appropriate.

## COUNT III
## EQUAL PROTECTION
## VIOLATION OF 42 U.S.C. § 1983 AGAINST
## THE SCHOOL BOARD OF OKALOOSA COUNTY, FLORIDA

158.   Plaintiff incorporates by reference paragraphs 1-139.

159.   This count is brought pursuant to Title 42 U.S.C. § 1983.

160.   This is a civil rights action for money damages arising from the Defendant's deprivation, under color of state law, of Plaintiff's right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and Article I, Section II of the Florida Constitution.

161.   The Federal Education for All Handicapped Children Act ("EAHCA"), 20 U.S.C. § 1400, et seq., and the regulations promulgated thereunder, provide that to receive federal assistance, the State must demonstrate that it has in effect a policy that assures all handicapped children the right to a public education free of physical or verbal abuse, unlawful restraint or seclusion.

162.   Plaintiff is, and at all times material hereto was, a member of an identifiable class of non-verbal, disabled ESE students and was subjected to disparate treatment by Defendant.

163.   Plaintiff and other members of the identifiable class of non-verbal, disabled ESE students were intentionally treated differently than other

verbal and/or non-disabled students because of their disabilities and because they were vulnerable, defenseless children, lacking an ability to speak out against, report, or otherwise stop the physical and verbal abuse, unlawful restraint and seclusion against them.

164.    Defendant violated N.R.'s constitutional right by:

a.    Failing to establish, implement or enforce policies and/or procedures within the OCSD, so as to allow a custom, policy or practice that allowed OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides to violate the constitutional and civil rights of students, including N.R.;

b.    Failing to establish, implement or enforce policies and/or procedures within the OCSD regarding training, supervising and/or disciplining OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides in the reporting of child abuse, so as to allow OCSD employees to violate the constitutional and civil rights of students, including N.R.;

c.    Failing to adequately and appropriately respond to reports of child abuse within the OCSD, including at Silver Sands, so as to allow constitutional and civil rights violations against students,

including N.R.;

d.    Failing to adequately train and/or supervise OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides to identify and properly report instances of disparate treatment so as to allow constitutional and civil rights violations against students, including N.R.;

e.    Overlooking, ignoring, and/or disregarding rampant child abuse against non-verbal disabled students within the OCSD so as to allow a custom, policy and/or practice to exist wherein OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides violated the constitutional and civil rights of students, including N.R.;

f.    Cultivating a culture and atmosphere of intimidation within the OCSD wherein OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides feared stopping, assisting with, or reporting constitutional and civil rights violations of students, including N.R.; and/or

g.    Authorizing, encouraging or instructing OCSD employees including, administrators, investigators, principals, assistant principals,

instructors, and/or aides not to stop, assist with, or report constitutional and civil rights violations of students, including N.R.

165.   Defendant's failure to correct the disparate treatment of non-verbal, disabled ESE students, including N.R., rose to the level of a longstanding custom, policy or practice of the Defendant to tolerate or ignore the same, by tacitly authorizing, or being deliberately indifferent to, the unconstitutional conduct which Defendant had actual or constructive knowledge was occurring within its classrooms.

166.   Defendant's failure to establish, implement or enforce policies and/or practices within the OCSD that allowed for the equal treatment of students rose to the level of a custom, policy and/or practice of the Defendant to hide, or turn a blind eye to, constitutional violations against said non-verbal, disabled ESE students, including those violations inflicted upon N.R.

167.   Defendant was deliberately indifferent to, permitted and/or tolerated a historical pattern and practice of disparate treatment of non-verbal, disabled ESE students, such as N.R., which was unjustifiable by any governmental interest as well as shocking to the conscience.

168.    Defendant's disparate treatment of Plaintiff and other members of the identifiable class served no legitimate governmental purpose and there exists no rational basis for the difference in treatment.

169.    Defendant's policy, custom and/or practice of violating Plaintiff's right to equal protection under the laws was the direct and foreseeable cause of Plaintiff's damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses. Additionally, the conduct of Defendant is sufficient to render it liable for the conduct and answering for punitive damages.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against this Defendant and further demands interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, and such other relief as the Court deems appropriate.

## COUNT IV
### CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
### VIOLATION OF 42 U.S.C. §§ 1983, 1985 AGAINST
### THE SCHOOL BOARD OF OKALOOSA COUNTY, FLORIDA

170.    Plaintiff incorporates by reference paragraphs 1-139.

171.    This count is brought pursuant to Title 42 U.S.C. §§ 1983, 1985(3).

172.   This is a civil rights action for money damages arising from the Defendant's conspiracy, under color of state law, to interfere with Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution, as described more fully herein.

173.   Defendant conspired with OCSD employees, including administrators, investigators, principals, assistant principals, instructors, teachers, and/or aides as well as the OCSO, and others to deprive Plaintiff of his constitutional and civil rights as specifically detailed in the Statement of Ultimate Facts, *supra*, and Counts I, II and III, *supra*.

174.   Defendant reached a mutual understanding, agreement and/or plan to   deprive Plaintiff of his constitutional and civil rights in that it conspired to cover up violations of Plaintiff's Fourth and Fourteenth Amendment rights by engaging in overt acts to further the conspiracy, and protect the personal careers of OCSD employees, including but not limited to:

a.      Intentionally failing to adequately and appropriately respond to reports of child abuse within the OCSD, including at Kenwood and Silver Sands, so as to allow constitutional and civil rights violations against students, including N.R.;

b.      Overlooking, ignoring, disregarding, and/or inadequately

remedying rampant child abuse within the OCSD so as to allow OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides to violate the constitutional and civil rights of students, including N.R.;

     c.    Cultivating a culture and atmosphere of intimidation within the OCSD wherein OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides feared stopping, assisting with, or reporting constitutional and civil rights violations of students, including N.R.;

     d.    Authorizing, encouraging or instructing OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides, and/or OCSO employees, not to stop, assist with, or report constitutional and civil rights violations of students, including N.R.;

     e.    Improperly and/or inadequately investigating allegations of child abuse within the OCSD so as to allow allegations and instances of child abuse to be concealed;

     f.    Improperly recording, maintaining, storing and/or documenting allegations and/or reports of child abuse within the OCSD

so as to cover up, conceal or otherwise prevent from being known, constitutional and civil rights violations of students, including N.R.;

175.   Defendant's conspiracy rose to the level of a longstanding custom, policy or practice of the Defendant to tolerate or ignore constitutional and civil rights violations against students, including N.R., by tacitly authorizing, or being deliberately indifferent to, the unconstitutional conduct described herein which Defendant had actual or constructive knowledge was occurring within its classrooms.

176.   Defendant's failure to establish, implement or enforce policies and/or practices within the OCSD so as to allow for a conspiracy to tolerate and conceal constitutional and civil rights violations against students rose to the level of a custom, policy and/or practice of the Defendant to hide, or turn a blind eye to, said violations, including those inflicted upon N.R.

177.   Defendant's failure to take adequate and appropriate action in response to constitutional and civil rights violations against students, such as N.R., including excessive physical and verbal abuse, unnecessary and unlawful restraint, seclusion, and disparate treatment of the laws, allowed and perpetuated said violations to continue against non-verbal, disabled ESE students.

178. Defendant conspired to permit and/or tolerate a multi-year pattern and practice of constitutional and civil rights violations against students, such as N.R., which was unjustifiable by any governmental interest as well as shocking to the conscience.

179. Defendant's policy, custom and/or practice of conspiring to interfere with and/or violate Plaintiff's Fourth Amendment right to be free from unreasonable seizures, Fourteenth Amendment right to be free from unnecessary and unreasonable force and right to equal protection of the laws, was the direct and foreseeable cause of Plaintiff's damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses. Additionally, the conduct of Defendant is sufficient to render it liable for the conduct and answering for punitive damages.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against this Defendant and further demands interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, and such other relief as the Court deems appropriate.

**COUNT V**
**UNREASONABLE SEIZURE**
**VIOLATION OF 42 U.S.C. § 1983 AGAINST**
**MARY BETH JACKSON, STACIE SMITH, ARDEN FARLEY,**
**ALAN LAMBERT and JON WILLIAMS**

180.    Plaintiff incorporates by reference paragraphs 1-139.

181.    This count is brought pursuant to Title 42 U.S.C. § 1983.

182.    This is a civil rights action for money damages arising from the Defendants' deprivation, under color of state law, of Plaintiff's constitutional civil rights and his Fourteenth Amendment due process liberty interest.

183.    Plaintiff's Fourteenth Amendment due process liberty interest includes his right to be free from unnecessary and unreasonable force or intentional, reckless or deliberately indifferent or oppressive conduct that causes emotional or psychological harm.

184.    At all times material hereto, Defendants, JACKSON, SMITH, FARLEY, LAMBERT and WILLIAMS served in their individual, supervisory capacities within the OCSD.

185.    Defendants demonstrated recklessness and/or deliberate indifference to N.R.'s constitutional right by:

        a.      Failing to adequately and appropriately respond, or respond at all, to reports of child abuse within the OCSD, including at

61

Kenwood, so as to allow unreasonable constitutional and civil rights violations against students, including N.R.;

b.      Overlooking, ignoring, failing to intervene and/or disregarding rampant child abuse within the OCSD so as to allow OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides to violate the constitutional and civil rights of students, including N.R.;

c.      Cultivating a culture and atmosphere of intimidation within the OCSD wherein OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides feared stopping, assisting with, or reporting constitutional and civil rights violations of students, including N.R.;

d.      Authorizing, encouraging or instructing OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides not to stop, assist with, or report constitutional and civil rights violations of students, including N.R.; and/or

e.      Establishing, implementing or enforcing policies and/or procedures within the OCSD, so as to allow a custom, policy or practice that resulted in deliberate indifference to the constitutional and civil

rights of students, including N.R.

186.  In behaving or undertaking the actions and/or omissions described above, Defendants were not acting within the scope of their discretionary authority.

187.  In addition, Defendants' conduct violated clearly established statutory and/or Constitutional rights which were known to them at the time of their unlawful behavior.

188.  A causal connection exists between the acts and omissions of Defendants in their individual, supervisory capacities and the constitutional and civil rights violations against N.R., as described more fully herein.

189.  Defendants' failure to intervene, prevent or discontinue the unreasonable constitutional violations against students, including N.R., despite their ability to do so by exercise of their authority, rose to the level of deliberate indifference and resulted in students, including N.R., being unlawfully seized against their will.

190.  Defendants were put on notice of, failed to correct, intervene and/or were deliberately indifferent to a history of widespread abuse, including but not limited to the abuses of FRAZIER and Stillions including

their physical restraint of vulnerable and defenseless children, such as N.R., occurring within the OCSD.

191.    Defendants' response, or lack thereof, to obvious and known constitutional violations against students, was objectively unreasonable under the totality of the circumstances and in light of the Defendants' custodial and tutelary responsibility over the students entrusted to their care, including N.R.

192.    Defendants' customs and/or policies resulted in deliberate indifference to N.R.'s clearly established rights under the Fourth and Fourteenth Amendments, of which reasonable people in Defendants' position knew or should have known.

193.    Defendants directed OCSD employees and others who were subordinate to Defendants to act unlawfully, as described more fully herein, and in doing so were deliberately indifferent to the constitutional and civil rights of students, including N.R.

194.    Defendants' failure to correct constitutional and civil rights violations against Plaintiff despite their knowledge of, and responsibility to, correct the same, and/or Defendants' customs, policies and/or directives which resulted in deliberate indifference to Plaintiff's constitutional protections, were the direct and foreseeable cause of Plaintiff's damages, pain

and suffering, loss of enjoyment of life, emotional damages up to and including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses. Additionally, the conduct of Defendants is sufficient to render them liable for the conduct and answering for punitive damages.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against these Defendants and further demands interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, and such other relief as the Court deems appropriate.

### COUNT VI
### EXCESSIVE USE OF FORCE
### VIOLATION OF 42 U.S.C. § 1983 AGAINST
### MARY BETH JACKSON, STACIE SMITH, ARDEN FARLEY,
### ALAN LAMBERT and JON WILLIAMS

195.    Plaintiff incorporates by reference paragraphs 1-139.

196.    This count is brought pursuant to Title 42 U.S.C. § 1983.

197.    This is a civil rights action for money damages arising from the Defendants' deprivation, under color of state law, of Plaintiff's constitutional civil rights and his Fourteenth Amendment due process liberty interest.

198.    Plaintiff's Fourteenth Amendment due process liberty interest includes his right to be free from unnecessary and unreasonable force or

intentional, reckless or deliberately indifferent or oppressive conduct that causes emotional or psychological harm.

199.   At all times material hereto, Defendants, JACKSON, SMITH, FARLEY, LAMBERT and WILLIAMS served in their individual, supervisory capacities within the OCSD.

200.   Defendants demonstrated recklessness and/or deliberate indifference to N.R.'s constitutional right by:

    a.    Failing to adequately and appropriately respond, or respond at all, to reports of child abuse within the OCSD, including at Silver Sands, so as to allow unreasonable constitutional and civil rights violations against students, including N.R.;

    b.    Overlooking, ignoring, failing to intervene and/or disregarding rampant child abuse within the OCSD so as to allow OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides to violate the constitutional and civil rights of students, including N.R.;

    c.    Cultivating a culture and atmosphere of intimidation within the OCSD wherein OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides

feared stopping, assisting with, or reporting constitutional and civil rights violations of students, including N.R.;

       d.      Authorizing, encouraging or instructing OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides not to stop, assist with, or report constitutional and civil rights violations of students, including N.R.; and/or

       e.      Establishing, implementing or enforcing policies and/or procedures within the OCSD, so as to allow a custom, policy or practice that resulted in deliberate indifference to the constitutional and civil rights of students, including N.R.

201.  In behaving or undertaking the actions and/or omissions described above, Defendants were not acting within the scope of their discretionary authority.

202.  In addition, Defendants' conduct violated clearly established statutory and/or Constitutional rights which were known to them at the time of their unlawful behavior.

203.  A causal connection exists between the acts and omissions of Defendants in their individual, supervisory capacities and the constitutional and civil rights violations against N.R., as described more fully herein.

204.    Defendants' failure to prevent or discontinue and/or intervene in the unreasonable constitutional violations against students, including N.R., despite their ability to do so by exercise of their authority, rose to the level of deliberate indifference and resulted in students, including N.R., being subjected to unreasonable excessive uses of force and oppressive conduct.

205.    Defendants were put on notice of, failed to correct or intervene, and/or were deliberately indifferent to a history of widespread abuse, including conduct that posed a foreseeable, pervasive and unreasonable risk of serious bodily injury to vulnerable and defenseless children, such as N.R., occurring within the OCSD.

206.    Defendants' failure to correct or intervene in the arbitrary and egregious constitutional and civil rights violations against students, including N.R., rose to the level of deliberate indifference by Defendants to tolerate, ignore, or turn a blind eye to, injury being inflicted on students, including N.R.

207. Defendants' customs and/or policies resulted in deliberate indifference to N.R.'s clearly established rights under the Fourteenth Amendment, of which reasonable people in Defendants' position knew or should have known.

208.   Defendants directed OCSD employees and others who were subordinate to Defendants to act unlawfully, as described more fully herein, and in doing so were deliberately indifferent to the constitutional and civil rights of students, including N.R.

209.   Defendants' deliberate indifference to N.R.'s constitutional and civil rights was unjustifiable by any governmental interest as well as shocking to the conscience.

210.   Defendants were deliberately indifferent to violations of N.R.'s clearly established rights under the Fourteenth Amendment, of which reasonable people in Defendants position knew or should have known, by having knowledge of, and failing to correct, unjustifiable and excessive uses of physical force against N.R., and otherwise causing unreasonable physical, emotional and/or psychological harm to N.R.

211.   Defendants' failure to correct constitutional and civil rights violations against Plaintiff despite their knowledge of, and responsibility to, correct the same, and/or Defendants' customs, policies and/or directives which resulted in deliberate indifference to Plaintiff's constitutional protections, were the direct and foreseeable cause of Plaintiff's damages, pain and suffering, loss of enjoyment of life, emotional damages up to and

including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses. Additionally, the conduct of Defendants is sufficient to render them liable for the conduct and answering for punitive damages.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against these Defendants and further demands interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, and such other relief as the Court deems appropriate.

**COUNT VII**
**EQUAL PROTECTION**
**VIOLATION OF 42 U.S.C. § 1983 AGAINST**
**MARY BETH JACKSON, STACIE SMITH, ARDEN FARLEY,**
**ALAN LAMBERT and JON WILLIAMS**

212.   Plaintiff incorporates by reference paragraphs 1-139.

213.   This count is brought pursuant to Title 42 U.S.C. § 1983.

214.   This is a civil rights action for money damages arising from the Defendants' deprivation, under color of state law, of Plaintiff's right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and Article I, Section II of the Florida Constitution.

70

215.   At all times material hereto, Defendants, JACKSON, SMITH, FARLEY, LAMBERT and WILLIAMS served in their individual, supervisory capacities within OCSD.

216.   The Federal Education for All Handicapped Children Act ("EAHCA"), 20 U.S.C. § 1400, et seq., and the regulations promulgated thereunder, provide that to receive federal assistance, the State must demonstrate that it has in effect a policy that assures all handicapped children the right to a public education free of physical or verbal abuse, unlawful restraint or seclusion.

217.   Plaintiff is, and at all times material hereto was, a member of an identifiable class of non-verbal disabled students, and was subjected to disparate treatment by Defendants.

218.   Plaintiff and other members of the identifiable class of non-verbal, disabled students were intentionally treated differently than other verbal and/or non-disabled students because of their disabilities and because they were vulnerable, defenseless children, lacking an ability to speak out against, report, or otherwise stop the physical and verbal abuse, unlawful restraint and seclusion against them.

219.    Defendants    demonstrated    recklessness    and/or    deliberate indifference to N.R.'s constitutional right by:

a.    Failing    to    adequately    and    appropriately    respond,    or respond at all, to reports of child abuse within the OCSD, including at Silver Sands, so as to allow unreasonable constitutional and civil rights violations against students, including N.R.;

b.    Overlooking, ignoring, and/or disregarding rampant child abuse    within    the    OCSD    so    as    to    allow    OCSD    employees    including, administrators,    investigators,    principals,    assistant    principals, instructors, and/or aides to violate the Constitutional and civil rights of its students, including N.R.;

c.    Cultivating    a    culture    and    atmosphere    of    intimidation within the OCSD wherein OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides feared    stopping,    assisting    with,    or    reporting    constitutional    and    civil rights violations of its students, including N.R.;

d.    Authorizing, encouraging or instructing OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides not to stop, assist with, or report constitutional

and civil rights violations of its students, including N.R.; and/or

    e.    Establishing, implementing or enforcing policies and/or procedures within the OCSD, so as to allow a custom, policy or practice that resulted in deliberate indifference to the constitutional and civil rights of students, including N.R.

220.  In behaving or undertaking the actions and/or omissions described above, Defendants were not acting within the scope of their discretionary authority.

221.  In addition, Defendants' conduct violated clearly established statutory and/or Constitutional rights which were known to them at the time of their unlawful behavior.

222.  A causal connection exists between the acts and omissions of Defendants in their individual, supervisory capacities and the constitutional and civil rights violations against N.R., as described more fully herein.

223.  Defendants' failure to prevent or discontinue the unreasonable constitutional violations against non-verbal, disabled ESE students, including N.R., despite their ability to do so by exercise of their authority, rose to the level of deliberate indifference and resulted in students, including N.R., being treated differently than other verbal and/or non-disabled students.

224.   Defendants were put on notice of, failed to correct, and/or were deliberately indifferent to a history of widespread abuse against non-verbal disabled students, such as N.R., occurring within the OCSD.

225.   Defendants were deliberately indifferent to violations of N.R.'s clearly established rights under the Fourteenth Amendment, of which reasonable people in Defendants position knew or should have known, by having knowledge of, and failing to correct, disparate treatment against N.R.

226.   Defendants' customs and/or policies resulted in deliberate indifference to N.R.'s clearly established rights under the equal protection clause of the Fourteenth Amendment, of which reasonable people in Defendants' positions knew or should have known.

227.   Defendants directed OCSD employees and others who were subordinate to Defendants to act unlawfully, as described more fully herein, and in doing so were deliberately indifferent to the constitutional and civil rights of non-verbal, disabled ESE students, including N.R.

228.   Defendants' disparate treatment of Plaintiff and other members of the identifiable class served no legitimate governmental purpose and there exists no rational basis for the difference in treatment.

229.   Defendants' failure to correct constitutional and civil rights violations against Plaintiff despite their knowledge of, and responsibility to, correct the same, and/or Defendants' customs, policies and/or directives which resulted in deliberate indifference to Plaintiff's constitutional protections, were the direct and foreseeable cause of Plaintiff's damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses. Additionally, the conduct of Defendants is sufficient to render them liable for the conduct and answering for punitive damages.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against these Defendants and further demands interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, and such other relief as the Court deems appropriate.

### COUNT VIII
### CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS VIOLATION OF 42 U.S.C. §§ 1983, 1985 AGAINST MARY BETH JACKSON, STACIE SMITH, ARDEN FARLEY, ALAN LAMBERT, JON WILLIAMS and JEAN HENNION

230.   Plaintiff incorporates by reference paragraphs 1-139.

231.   This count is brought pursuant to Title 42 U.S.C. §§ 1983, 1985(3).

232.   This is a civil rights action for money damages arising from the Defendants' conspiracy, under color of state law, to interfere with Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution, as described more fully herein.

233.   Defendants conspired with each other and other OCSD employees, including administrators, investigators, principals, assistant principals, instructors, teachers, and/or aides, as well as other members of OCSO, and others to deprive Plaintiff of his constitutional and civil rights as specifically detailed in the Statement of Ultimate Facts, *supra*, and Counts I, II and III, *supra*.

234.   Defendants reached a mutual understanding, agreement and/or plan to  deprive Plaintiff of his constitutional and civil rights in that they conspired to cover up violations of Plaintiff's Fourth and Fourteenth Amendment rights by engaging in overt acts to further the conspiracy, including but not limited to:

   a.   Intentionally failing to adequately and appropriately respond to reports of child abuse within the OCSD, including at Silver

Sands, so as to allow constitutional and civil rights violations against students, including N.R.;

b.      Overlooking, ignoring, disregarding, and/or inadequately remedying rampant child abuse within the OCSD so as to allow OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides to violate the constitutional and civil rights of students, including N.R.;

c.      Cultivating a culture and atmosphere of intimidation within the OCSD wherein OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides feared stopping, assisting with, or reporting constitutional and civil rights violations of students, including N.R.;

d.      Authorizing, encouraging or instructing OCSD employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides not to stop, assist with, or report constitutional and civil rights violations of students, including N.R.;

e.      Establishing, implementing or enforcing policies and/or procedures within the OCSD, so as to allow a custom, policy or practice

that resulted in deliberate indifference to the constitutional and civil rights of students, including N.R.;

f.      Improperly and/or inadequately investigating allegations of child abuse within the OCSD so as to allow allegations and instances of child abuse to be concealed;

g.      Improperly recording, maintaining, storing and/or documenting allegations and/or reports of child abuse within the OCSD so as to cover up, conceal or otherwise prevent from being known, constitutional and civil rights violations of students, including N.R.;

235.    In behaving or undertaking the actions and/or omissions described above, Defendants were not acting within the scope of their discretionary authority.

236.    In addition, Defendants' conduct violated clearly established statutory and/or Constitutional rights which were known to them at the time of their unlawful behavior.

237.    A causal connection exists between the acts and omissions of Defendants and the constitutional and civil rights violations against N.R., as described more fully herein.

238. After being put on notice of widespread student abuse within the OCSD, Defendants conspired to tolerate, allow, and/or conceal said abuse instead of intervening and correcting it.

239. Defendants' conspiracy to tolerate, allow, and/or conceal unreasonable constitutional violations against students, including N.R., despite their ability to stop said violations by exercise of their authority, rose to the level of deliberate indifference and resulted in students, including N.R., being physically and verbally abused, unlawfully restrained, secluded against their will, and treated differently under the laws, as described more fully herein.

240. Defendants' customs and/or policies resulted in deliberate indifference to N.R.'s clearly established rights under the Fourth Amendment and Fourteenth Amendments, of which reasonable people in Defendants' position knew or should have known.

241. Defendants directed OCSD employees and others who were subordinate to Defendants to act unlawfully in furtherance of their conspiracy, as described more fully herein, and in doing so were deliberately indifferent to the constitutional and civil rights of students, including N.R.

242.  Defendants' failure to take adequate and appropriate action in response to constitutional and civil rights violations against students, such as N.R., including excessive physical and verbal abuse, unnecessary and unlawful restraint, seclusion, and disparate treatment of the laws of laws, allowed said violations to continue.

243.  Defendants' deliberate indifference in conspiring to conceal violations against Plaintiff's Fourth Amendment right to be free from unreasonable seizures, Fourteenth Amendment right to be free from unnecessary and unreasonable force and right to equal protection of the laws, was the direct and foreseeable cause of Plaintiff's damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses. Additionally, the conduct of Defendants is sufficient to render them liable for the conduct and answering for punitive damages.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against these Defendants and further demands interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, and such other relief as the Court deems appropriate.

**COUNT IX**
**UNREASONABLE SEIZURE**
**VIOLATION OF 42 U.S.C. § 1983 AGAINST**
**ROY FRAZIER**

244.  Plaintiff incorporates by reference paragraphs 1-66, 89, 93-95, 103.

245.  This count is brought pursuant to Title 42 U.S.C. § 1983.

246.  This is a civil rights action for money damages arising from the Defendant's deprivation, under color of state law, of Plaintiff's constitutional civil rights.

247.  Plaintiff has a constitutional right under the Fourth and Fourteenth Amendments to be free from unreasonable seizures and to be secure in his person and to maintain his bodily integrity against unreasonable seizures and to be secure in his person, as well as to have his due process interests protected.

248.  Defendant violated N.R.'s clearly established rights under the Fourth and Fourteenth Amendments, of which reasonable people in Defendant's position knew or should have known, by unjustifiably and unreasonably infringing on N.R.'s personal security and his freedom of movement, and otherwise violating his due process interests.

249.  Defendant's conduct in physically seizing N.R., by strapping N.R. to an exercise bike so he could not move, locking N.R. in a hot transport van, and secluding N.R. in a cardboard box for hours, was objectively unreasonable under the totality of the circumstances and in light of the Defendant's custodial and tutelary responsibility over N.R., an ESE student entrusted to his care.

250.  Defendant acted intentionally, with malice, in applying excessive and unnecessary physical force to restrain N.R.'s freedom of movement and seclude him, acts which deprived N.R. of the educational objectives he was trying to achieve.

251. Defendant's unreasonable and unjustified seizure of N.R. directly violated Plaintiff's right to personal security and freedom of movement and was the direct and foreseeable cause of Plaintiff's damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses. Additionally, the conduct of Defendant is sufficient to render him liable for the conduct and answering for punitive damages.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against this Defendant and further demands interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, and such other relief as the Court deems appropriate.

**COUNT X**
**EXCESSIVE USE OF FORCE**
**VIOLATION OF 42 U.S.C. § 1983 AGAINST**
**ROY FRAZIER**

252.   Plaintiff incorporates by reference paragraphs 1-66, 89, 93-95, 103.

253.   This count is brought pursuant to Title 42 U.S.C. § 1983.

254.   This is a civil rights action for money damages arising from the Defendant's deprivation, under color of state law, of Plaintiff's constitutional civil rights and his Fourteenth Amendment due process liberty interest.

255.   Plaintiff's Fourteenth Amendment due process liberty interest includes his right to be free from unnecessary and unreasonable force or intentional, reckless or deliberately indifferent or oppressive conduct that causes emotional or psychological harm.

256.   Defendant demonstrated recklessness and/or deliberate indifference to N.R.'s constitutional rights by violently intruding into N.R.'s personal privacy and bodily security.

257.   Defendant's actions, including but not limited to, routinely pinching and flicking N.R.'s face and body, throwing shoes at N.R. while he sat innocently on the couch, strapping N.R. to an exercise bike and allowing N.R. to tip over while strapped into the bike, and antagonizing N.R. by making sexual inappropriate comments about N.R.'s own mother in his presence, were so brutal, demeaning and harmful to N.R. as to violate his Fourteenth Amendment rights.

258.   The force Defendant applied to R.R. on a consistent basis over the course of several years was unjustifiable by any governmental interest, was disproportionate to any need presented, was inspired by malice or sadism, and thus amounted to a brutal and inhumane abuse of his power as N.R.'s instructor.

259.   Defendant's deliberate indifference toward N.R. posed a foreseeable, pervasive, and unreasonable risk of serious bodily injury to N.R. and, did in fact, injure N.R.

260.   Defendant's arbitrary and egregious physical and verbal abuse and restraint of N.R. is particularly shocking to the conscience in light of N.R.'s disabilities, vulnerabilities, and otherwise being a defenseless child.

261.    Defendant's deliberate indifference to Plaintiff's welfare and to the imminent risk of harm Plaintiff faced as a result of Defendant's use of excessive force was the direct and foreseeable cause of Plaintiff's damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses. Additionally, the conduct of Defendant is sufficient to render him liable for the conduct and answering for punitive damages.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against this Defendant and further demands interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, and such other relief as the Court deems appropriate.

**COUNT XI**
**DISCRIMINATION IN VIOLATION OF THE**
**AMERICANS WITH DISABILITIES ACT AGAINST**
**THE SCHOOL BOARD OF OKALOOSA COUNTY, FLORIDA**

262.    Plaintiff incorporates by reference paragraphs 1-139.

263.    This count is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12132, et seq.

264.    At all times material hereto, N.R. was a "qualified individual with a disability," as defined by 42 USC § 12132(2).

85

265.   At all times material hereto, Defendant was a "public entity," as defined by 42 USC § 12132(1).

266.   Pursuant to 42 USC § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.

267.   Defendant failed in its responsibility to ensure that educational services are provided on an equal basis to children with disabilities, such as N.R., and free of hostility toward their disability.

268.   Defendant tolerated or ignored physical and verbal abuse, restraint and seclusion of its students, including N.R., who were purposely targeted because they were disabled, vulnerable, defenseless and unable to communicate the violations against them.

269.   Defendant's acts and omissions subjected students, including N.R., to a hostile educational environment and deprived said students of the benefit of an education, on the basis of their disability.

270.   As a direct and proximate cause of Defendant's failure to comply with its responsibility under the Americans with Disabilities Act, Plaintiff has suffered damages, pain and suffering, loss of enjoyment of life, emotional

damages up to and including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against this Defendant and further demands interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 794a(2)(b), and such other relief as the Court deems appropriate.

## COUNT XII
## VIOLATION OF § 504 OF THE REHABILITATION ACT OF 1973 AGAINST
## THE SCHOOL BOARD OF OAKLOOSA COUNTY, FLORIDA

271.    Plaintiff incorporates by reference paragraphs 1-139.

272.    This count is brought pursuant to § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504").

273.    Section 504 and the regulations promulgated thereunder prohibit discrimination against persons with disabilities and the exclusion from, participation in, or denial from the benefits of, or being subjected to discrimination under, any program or activity receiving federal financial assistance.

274.    At all times material hereto, Defendant was a recipient of federal financial assistance and used federal financial assistance to fund the operations, construction and/or maintenance of the specific public facilities

87

described herein, including Kenwood, and the activities that take place therein.

275.   By its actions or inactions in denying equal access to educational services and by subjecting Plaintiff to a hostile educational environment, Defendant violated Plaintiff's rights under §  504 and the regulations promulgated thereunder.

276.   As a direct and proximate cause of Defendant's failure to comply with its responsibilities under §  504 and the regulations promulgated thereunder, Plaintiff has suffered damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against this Defendant and further demands interest, costs, and attorney's fees, pursuant to § 794a(2)(b), and such other relief as the Court deems appropriate.

**COUNT XIII**
**VIOLATION OF RIGHTS PURSUANT TO FLA. STAT. § 393.13**
**AGAINST**
**THE SCHOOL BOARD OF OKALOOSA COUNTY, FLORIDA and**
**ROY FRAZIER**

277.    Plaintiff incorporates by reference paragraphs 1-66, 89, 93-95, 103.

278.    This count is brought pursuant to § 393.13(5), Florida Statutes, for violation of the rights of a developmentally disabled person.

279.    At all times material hereto, N.R. was developmentally disabled by virtue of his autism.

280.    At all times material hereto, Defendants owed a duty to N.R. to recognize, comply with, protect, and take reasonable steps to ensure the rights and privileges of the developmentally disabled, including N.R., as set forth in §393.13(3), Florida Statutes, including, but not limited to, the following:

a.    The right to dignity, privacy, and humane care, including the right to be free from abuse, including neglect and exploitation;

b.    The right to receive services, within available sources, which protect the personal liberty of the individual and which are provided in the least restrictive conditions necessary to achieve the purpose of the treatment;

89

c.    The right to participate in an appropriate program of quality education and training services, within available resources, regardless of chronological age or degree of disability; and/or

d.    The right to be free from harm, including unnecessary physical, chemical or mechanical restraint, isolation, excessive medication, abuse or neglect.

281.   Defendants breached the aforementioned duties and violated the aforementioned rights of N.R., by virtue of the conduct described herein, particularly Defendants failed to ensure that N.R. received a quality education free from abuse, neglect, unnecessary restraint, and/or isolation while enrolled at Silver Sands.

282.   Defendants failed to act in good faith and with due care to ensure that N.R.'s rights as a developmentally disabled person were not violated or infringed upon due to negligence, misfeasance, nonfeasance, or malfeasance.

283.   As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiff has suffered damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against these Defendants and further demands interest, costs, and such other relief as the Court deems appropriate.

## COUNT XIV
## NEGLIGENT HIRING, TRAINING, RETENTION AND/OR SUPERVISION AGAINST
## THE SCHOOL BOARD OF OKALOOSA COUNTY, FLORIDA

284. Plaintiff incorporates by reference paragraphs 1-66, 89, 93-95, 103.

285. This count is brought pursuant to the common law of the State of Florida.

286. Defendant is responsible for hiring, training, instructing, supervising, retaining and/or disciplining OCSD employees, including but not limited to administrators, principals, assistant principals, instructors, and/or aides including FRAZIER, HENNION, and other OCSD employees, who were at all times material hereto, acting within the scope of their employment with OCSD.

287. Defendant was negligent in the hiring, training, instruction, supervision, discipline and/or retention of FRAZIER, HENNION, and other OCSD employees.

288.    During the 2015-2016 school year, and/or before, FRAZIER and/or HENNION subjected disabled students, including N.R., to improper and/or excessive physical and verbal abuse, restraint and seclusion, as described more fully herein.

289.    FRAZIER and HENNION's conduct was known, or should have been known, by Defendant and other OCSD employees who either failed to report said conduct or concealed said conduct.

290.    As a result, Defendant was aware, or should have been aware, of FRAZIER and HENNION's unfitness for continuing employment.

291.    Defendant owed a duty to N.R. with regard to:

        a.    adequately and appropriately screening their employees, including FRAZIER and HENNION, for employment;

        b.    adequately and appropriately training/supervising their employees, including FRAZIER and HENNION, in their provision of custodial and tutelary services;

        c.    adequately and appropriately training their employees and/or agents in identifying, documenting, and/or reporting child abuse;

        d.    adequately and appropriately disciplining their employees, including FRAZIER and HENNION; and/or

e.       ensuring that students, including N.R., were not physically or verbally abused, unlawfully restrained or secluded by their employees and/or agents, including FRAZIER and HENNION.

292.    Defendant breached the aforementioned duties, by virtue of its conduct described more fully herein, by:

a.       failing to adequately and appropriately screen their employees, including FRAZIER and HENNION, for employment;

b.       failing to adequately and appropriately train their employees, including FRAZIER and HENNION, in their provision of custodial and tutelary services;

c.       failing to adequately and appropriately train their employees in identifying, documenting, and/or reporting child abuse;

d.       failing to adequately and appropriately supervise their employees, including FRAZIER and HENNION, in their provision of custodial and tutelary services;

e.       failing to adequately and appropriately discipline their employees, including FRAZIER and HENNION; and/or

f.      failing to ensure that students, including N.R., were not physically or verbally abused, unlawfully restrained or secluded by their employees and/or agents, including FRAZIER and HENNION.

293.    As a direct and proximate result of the aforementioned acts and omissions of Defendant, Plaintiff has suffered damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against this Defendant and further demands interest, costs, and such other relief as the Court deems appropriate.

## COUNT XV
## RESPONDEAT SUPERIOR AGAINST
## THE SCHOOL BOARD OF OKALOOSA COUNTY, FLORIDA

294.    Plaintiff incorporates by reference paragraphs 1-66, 89, 93-95, 103.

295.    This count is brought pursuant to the common law of the State of Florida.

296.    As a school instructor and aide, respectively, Defendants FRAZIER and HENNION had custodial and tutelary responsibilities over the

students entrusted to their care, including N.R., and as such owed a duty to N.R. to exercise reasonable care in their supervision of N.R. so as to protect him from unlawful abuse, restraint and seclusion.

297.    Defendants    FRAZIER    and    HENNION    breached    their aforementioned duty to N.R., and deviated from the applicable standards of care, by subjecting N.R. to excessive physical and verbal abuse, restraint and seclusion, as described more fully herein.

298.    At all times material to the allegations herein, Defendants FRAZIER and HENNION were employed as an instructor and aide, respectively, with the OCSD and were acting in the course and scope of their employment.

299.    Defendant OCSB is vicariously liable for the negligent acts of Defendants FRAZIER and HENNION, under the doctrine of respondeat superior.

300.    As a direct and proximate result of the aforementioned negligent acts of Defendant, Plaintiff has suffered damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against this Defendant and further demands interest, costs, and such other relief as the Court deems appropriate.

## COUNT XVI
## NEGLIGENCE AGAINST
## ROY FRAZIER and JEAN HENNION

301.  Plaintiff incorporates by reference paragraphs 1-66, 89, 93-95, 103.

302.  This count is brought pursuant to the common law of the State of Florida.

303.  As an ESE instructor, and ESE aide, respectively, Defendants FRAZIER and HENNION had custodial and tutelary responsibilities over the students entrusted to their care, including N.R., and as such owed a duty to N.R. to exercise reasonable care in their supervision of N.R. so as to protect him from unlawful abuse, restraint and seclusion.

304.  Defendants breached their aforementioned duty to N.R., and deviated from the applicable standards of care, by subjecting N.R. to excessive physical and verbal abuse, restraint and seclusion as described more fully herein.

305.   As a direct and proximate result of the aforementioned negligent acts of Defendants, Plaintiff has suffered damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against these Defendants and further demands interest, costs, and such other relief as the Court deems appropriate.

**COUNT XVII**
**BATTERY AGAINST**
**ROY FRAZIER and HENNION**

306.   Plaintiff incorporates by reference paragraphs 1-66, 89, 93-95, 103.

307.   This count is brought pursuant to the common law of the State of Florida.

308.   FRAZIER and HENNION intentionally caused harmful or offensive contact with N.R., against his will, and without consent or authorization by law or exceeding the force to which they were privileged to use.

309.   As a direct and proximate result of the aforementioned acts by FRAZIER and HENNION, Plaintiff has suffered damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including post-traumatic stress disorder, loss of earning potential, and/or past and future medical expenses.

WHEREFORE, Plaintiff demands trial by jury, judgment for damages, to include punitive damages, against these Defendants and further demands interest, costs, and such other relief as the Court deems appropriate.

Dated: November 5, 2018.

Respectfully Submitted,

By: */s/ Ryan P. Molaghan*
Ryan P. Molaghan, FBN 119780
Ryan B. Hobbs, FBN 044179
John M. Leace, FBN 172626
Talley Kaleko, FBN 487155
**BROOKS LEBOEUF BENNETT**
**   FOSTER & GWARTNEY, P.A.**
909 East Park Avenue
Tallahassee, Florida 32301
850-222-2000 / 850-222-9757
RyanM@tallahasseeattorneys.com
Rhobbs@tallahasseeattorneys.com
John@tallahasseeattorneys.com
Talley@tallahasseeattorneys.com
Jeanetta@tallahasseeattorneys.com

*Attorneys for Plaintiffs*

98