# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

N.R., a minor, by J.R. and A.R.,
his natural guardians,

      Plaintiff,                      Case No.: 3:18-CV-02208

v.

THE SCHOOL BOARD OF
OKALOOSA COUNTY,
FLORIDA, MARY BETH
JACKSON, STACIE SMITH,
ARDEN FARLEY, ALAN
LAMBERT, JON WILLIAMS,
ROY FRAZIER, JEAN HENNION,
and DOES 1-30,

      Defendants.

_____/

## SCHOOL BOARD OF OKALOOSA COUNTY, FLORIDA'S MOTION TO DISMISS COMPLAINT, MOTION FOR JUDGMENT ON THE PLEADINGS, AND INCORPORATED MEMORANDUM OF LAW

Defendant, **SCHOOL BOARD OF OKALOOSA COUNTY, FLORIDA** ("School Board"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c), and N.D. Loc. R. 7.1, respectfully moves to dismiss or, in the alternative, moves for judgment on the pleadings with respect to Counts I, II, III, IV, XI, XII, XIII, XIV, and XV of the

Complaint. (Doc. 1).

## **BACKGROUND**

1.      On November 5, 2018, Plaintiff filed a 17-count, 98-page Complaint against numerous entities and individuals, including the School Board, alleging violations of Federal and Florida law. (Doc. 1).

2.      The Complaint contains the following claims against the School Board:

> Count I – Unreasonable Seizure in Violation of 42 U.S.C. §1983;
>
> Count II – Excessive Use of Force in Violation of 42 U.S.C. §1983;
>
> Count III – Equal Protection in Violation of 42 U.S.C. §1983;
>
> Count IV – Conspiracy to Interfere with Civil Rights in Violation of 42 U.S.C. §§1983 and 1985;
>
> Count XI – Discrimination in Violation of the Americans with Disabilities Act;
>
> Count XII – Discrimination in Violation of Section 504 of the Rehabilitation Act of 1973;
>
> Count XIII – Violation of the Rights of a Developmentally Disabled Person in Violation of F.S. §393.13(5);
>
> Count XIV – Negligent Hiring, Training, Retention and/or Supervision in Violation of the Common Law of the State of Florida; and
>
> Count XV – Respondent Superior in Violation of the Common Law of

2

the State of Florida.[1]

3.      As more fully set forth in the Memorandum of Law below, Plaintiff's claims against the School Board fail as a matter of law and should be dismissed with prejudice or, alternatively, judgment on the pleadings should be granted for the following reasons:

a.      *Monell* prohibits Plaintiff from pursuing his claims under 42 U.S.C. § 1983 (*See* § II(A));

b.      The intra-corporate conspiracy doctrine bars Plaintiff's civil rights conspiracy claim (*See* § II(B));

c.      Plaintiff's FAPE-based claims have not been administratively exhausted pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq. (*See* § II(C));

d.      Sovereign immunity has not been waived with respect to Plaintiff's claim under Section 391.13, Florida Statutes (*See* § II(D));

e.      Sovereign immunity bars Plaintiff's negligent training claim and

---

[1] The claims against the School Board in the instant action are the same as those set forth in *N.P. v. The School Board of Okaloosa County, et.al*, Case No. 3:18-cv-00453-MCR-CJK and *C.H. v. The School Board of Okaloosa County, et.al*, Case No. 3:18-cv-02128-MCR-CJK. Consequently, the School Board has adopted the same legal positions in all actions. Since the instant action is in front of a separate Judge, the undersigned has elected to lay out the legal arguments in their entirety for the sake of judicial convenience.

there are insufficient allegations to support his negligent hiring and retention claims (*See* § II(E));

      f.    Sovereign immunity bars Plaintiff's respondeat superior claim (*See* § II(F));

      g.    Plaintiff's punitive damages demands are inappropriate and barred as a matter of law (*See* § II(G)); and

      h.    Sovereign immunity prohibits Plaintiff's demands for prejudgment interest (*See* § II(H)).

**WHEREFORE**, Defendant, the School Board of Okaloosa County, Florida, respectfully requests entry of an Order dismissing Counts I, II, III, IV, XI, XII, XIII, XIV, and XV of the Complaint with prejudice or, alternatively, that judgment on the pleadings be granted with respect to these Counts, together with an award of attorney's fees, costs, and such other and further relief this Court deems just and proper.

## MEMORANDUM OF LAW

**I.    Standards Applicable to Motions to Dismiss and for Judgment on Pleadings Motion to Dismiss Standard**

Because this Court is familiar with the standards of review governing this Motion, they are not restated herein.

## II.     Argument and Authority

### A.     Counts I, II and III – Plaintiff's § 1983 Claims are Subject to Dismissal Because the Complaint Does Not Contain Sufficient Factual Allegations to Plausibly Suggest the School Board is Subject to Liability under Monell

As this Court is well aware, while § 1983 provides a forum for addressing the deprivation of constitutional rights, "it is not itself a source of substantive rights," but instead merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 at n.3 (1979). Thus, at a most basic level:

> [t]o state a claim for relief in an action brought under §1983, [a plaintiff] must establish that [he or she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.

*American Mfr. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

A local governmental entity such as the School Board is a "person" for the purposes of § 1983 liability, and therefore it may properly be a party in a § 1983 action. *Monell v. Dept. of Social Serv. of the City of New York*, 436 U.S. 658, 691 (1978). However, the School Board is not vicariously liable under Section 1983 for the alleged constitutional violations of its employees. *Id*. at 690-91; *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991)

("Consequently, plaintiff cannot rely on a *respondeat superior* theory to hold a municipality liable for individual actions of its officers.").

In *Monell*, the United States Supreme Court conducted a detailed analysis of the legislative history of § 1983.  The Court found that there was no constitutional impediment to municipal liability; <u>provided</u>, <u>however</u>, that municipal liability under § 1983 could not be imposed based upon respondeat superior. In so holding, the Court found:

> Local governing bodies, therefore, can be sued, directly under §1983 for monetary, declaratory, or injunctive relief where…the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers…. Congress did not intend municipalities to be held liable <u>unless action pursuant to official municipal policy of some nature caused</u> the constitutional tort…. <u>We conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory.</u>

*Monell*, 436 U.S. at 690-91 (emphasis added); *see also Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 402-403, 117 S. Ct. 1382, 1388 (1997) (government entity may not be vicariously liable for the constitutional torts of its employees).[2]

------

[2] School boards are like any other local government boards for purposes of § 1983 liability. *Monell*, 436 U.S. at 696; *see also*, *Denno v. School Board for Volusia County*, 218 F.3d 1267, 1276 n.9 (11th Cir. 2000) (finding that school

Accordingly, under *Monell*, a local government entity such as the School Board, does not violate an established constitutional right merely by employing alleged constitutional tortfeasors.  Instead, municipalities *may* be held liable *only* when their official policies or customs cause their employees to violate another person's constitutional rights; municipalities cannot be held vicariously liable for an employee's independent actions. *Monell*, 436 U.S. at 690-691; *see also* Dickson v. Burke County, 303 F.3d 1271, 1276 (11th Cir. 2002) (stating that local governmental body may only be liable under § 1983 if the action was undertaken pursuant to official policy that caused a constitutional tort); *Greech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (finding that a plaintiff must show that the alleged injury resulted from the *execution* of a municipality's policy or custom); *Fullman v. Graddick*, 739 F.2d 13, 563 (11th

---

boards are local government entities under *Monell*); *Bartes v. Sch. Bd. of Alachua Cty.*, No. 04-15459, 2005 WL 2764744, at *4 (11th Cir. Oct. 26, 2005) (citing *Monell* in finding that defendant school board not subject to respondeat superior liability); *Riddick v. School Bd. For the City of Portsmouth*, 238 F.3d 518, 523 n.3 (4th Cir. 2000) ("In *Monell*, the Court recognized that school boards and municipalities are indistinguishable for purposes of § 1983.") (citing *Monell*, 436 U.S. at 696); Frost *v. Hawkins County Bd. Of Educ.*, 851 F.2d 822,827-28 (6th Cir. 1988) ("Under *Monell*, local government entities, such as municipalities and school boards, are liable for civil rights violations if those violations result from the implementation of their official policy or are due to a governmental 'custom.'").

Cir. 1984) (affirming dismissal of claims against city due to plaintiff's failure to plead facts to support municipal liability under *Monell*).

"A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Id.* (citation omitted). The policy requirement is designed to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Grech v. Clayton County*, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (en banc) (quotation omitted).  Moreover, it is insufficient for a school board's policy to be tangentially related to the alleged violation.  The "official policy of custom must be the moving force of the constitutional violation in order to establish liability of a government body under § 1983." *Cuesta v. Sch. Bd. of Miami-Dade County, Fla.*, 285 F.3d 962, 967 (11th Cir. 2002) (citing *Gilmere v. City of Atlanta, Ga., 737 F.2d 894, 901 (11th Cir. 1984)* (internal quotes omitted)); *Fitzgerald v. Barnstable School Committee*, 15 U.S. 246, 257-258 (2009)

(finding a plaintiff must show that the policy or custom caused the constitutional violation in Equal Protection case).

State law determines whether a person has policymaking authority for purposes of § 1983. *E.g.*, *Godby v. Montgomery County Bd. of Educ.*, 996 F. Supp. 1390, 1404 (M.D. Ala. 1998). Under Florida law, a school board is vested with final policymaking authority for the school district. *K.M. ex re. M.M. v. Sch. Bd. of Lee County*, 150 Fed. Appx. 953, 957 (11th Cir. 2005) (per curiam). Thus, in order to state a claim against the School Board under § 1983, Plaintiff must plead and ultimately establish that the decision to deny him his constitutional rights was: (1) made pursuant to a custom, or (2) made pursuant to a preexisting formal School Board policy, or (3) made directly by the School Board, as the policymaker for the School District, or (4) ratified by the School Board before the decision became final. *Id*.

Aside from using boilerplate language alleging that the School Board employed a "longstanding custom, policy and/or practice" of failing to report abuse, the Complaint is completely devoid of factual allegations supporting this grandiose accusation. Moreover, and equally important, the Complaint fails to include crucial factual allegations plausibly suggesting:

- When the School Board purportedly adopted the alleged custom, policy and/or practice that led to an unreasonable seizure (Count I), an unconstitutional use of force (Count II) and a denial of equal protection (Count III);

- How the specific custom, policy, and/or practice allegedly adopted by the School Board amounted to the "moving force" behind the alleged unreasonable seizure, an unconstitutional use of force and denial of equal protection;

- Which School Board members were allegedly involved in adopting the custom, policy and/or practice;

- When the School Board allegedly ratified the alleged custom, policy and/or practice; and

- How the School Board itself was directly involved in creating the alleged custom, policy and/or practice.

Instead, Plaintiff makes bold assertions and injects conclusory statements regarding the alleged custom, policy or practice supposedly deriving from the School Board in the hope that he will be excused from satisfying the pleading burden established in *Monell*. Despite the breadth of the Complaint

and the number of Counts included therein, these essential allegations are nowhere to be found.

Plaintiff's failure to meet the requirements of _Monell_ is all the more poignant when viewed through the lens of _Ashcroft v. Iqbal_, 16 U.S. 662 (2009) and _Bell Atlantic Corp. v. Twombly_, 10 U.S. 544 (2007). To be sure, this Court is very familiar with the new pleading standard that emerged from these cases, so they will not be discussed at length here. Applied to the Complaint at bar, it cannot be gainsaid that Plaintiff has not alleged sufficient facts to plausibly suggest he is entitled to recover against the School Board consistent with _Monell_.

**B.    _Count IV - Plaintiff's Claim that the School Board Conspired with its Employees is Barred by the Intra-Corporate Conspiracy Doctrine_**

Count IV purports to assert a conspiracy claim against the School Board under 42 U.S.C. § 1983 and 42 U.S.C. § 1985. (Doc. 1 at ¶¶ 171-172). In support, Plaintiff alleges the School Board:

- Conspired to interfere with his rights under the Fourth and Fourteenth Amendments (Doc. 1 at ¶ 172);

- Conspired with its own employees and the Okaloosa County Sheriff's Office (OCSO) to deprive him of his civil and constitutional rights

(Doc. 1 at ¶ 173);

- Reached a mutual understanding to cover up violations of his civil rights by engaging in certain overt acts to further the conspiracy (Doc. 1 at ¶ 174);

- Failed to implement, establish or enforce policies and/or practices that allowed a conspiracy to tolerate unconstitutional conduct (Doc. 1 at ¶ 176); and,

- Conspired to allow a multi-year pattern and practice of denying civil rights (Doc. 1 at ¶ 178).

Other than the threadbare allegation that the School Board conspired with the OCSO, all of Plaintiff's allegations contend that the School Board engaged in a conspiracy with its own employees. The intra-corporate conspiracy doctrine bars Plaintiff's conspiracy claim insofar as it attempts to reach conduct between and among the Board members and the Board and its employees.

### 1.   Conspiracy Claims Under 42 U.S.C. § 1983

"To state a claim for conspiracy under § 1983, a plaintiff must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights." *Weiland v. Palm*

*Beach County Sheriff's Office*, 792 F.3d 1313, 1327 (11th Cir. 2015). Further, "to sustain a conspiracy action under § 1983 ... a plaintiff must show an underlying actual denial of its constitutional rights." *GJR Investments, Inc. v. County of Escambia, Florida,* 132 F.3d 1359, 1370 (11th Cir. 1998). The "linchpin for conspiracy is agreement, which presupposes communication." *Melton v. Abston*, 841 F.3d 1207, 1225 (11th Cir. 2016) (*quoting Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992)).

### 2.    Conspiracy Claims Under 42 U.S.C. § 1985(3)

To state a claim for conspiracy pursuant to § 1985(3), Plaintiff must allege, and ultimately prove: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Trawinski v. United Techs.,* 313 F.3d 1295, 1299 (11th Cir. 2002). "The purpose of § 1985 was to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law; as such, a claim under § 1985(3) requires the proof of invidious

discriminatory intent as well as the violation of a serious constitutional right protected not just from official, but also from private, encroachment." *Id.*

### 3. Application of the Intra-Corporate Conspiracy Doctrine

The intra-corporate conspiracy doctrine applies to conspiracy claims brought under §§ 1983 and 1985(3). *Accord Rehberg v. Paulk,* 611 F.3d 828, 854 (11th Cir. 2010) (applying doctrine in § 1983 conspiracy claim against a county employee); *Dickerson v. Alachua County Com'n,* 200 F.3d 761, 767-770 (11th Cir. 2000) (canvassing cases from other Circuits and holding the doctrine applies to Section 1985(3) claims). The principle underlying the doctrine:

> … stems from basic agency principles that 'attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor.'…The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself.

*Dickerson,* 200 F.3d at 767 (citations omitted).

Simply stated, Plaintiff's conspiracy claims are largely predicated on his belief that the School Board and its employees conspired against him in violation of federal civil rights laws. However, because the intra-corporate conspiracy doctrine prevents him from proceeding with a conspiracy claim

based upon such allegations, Count IV must be dismissed with prejudice, or judgment on the pleadings should be granted.

### C.   Counts XI and XII - Plaintiff Failed to Exhaust Administrative Remedies or, in the Alternative, Plaintiff Failed to State a Cause of Action

#### 1.   Plaintiff Failed to Exhaust Administrative Remedies

##### a.   <u>Background of the IDEA</u>

Plaintiff's ADA and Section 504 claims are an improper attempt to circumvent the administrative exhaustion requirements of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"). The IDEA was created to provide federal assistance to all states that provide children with disabilities a free appropriate public education ("FAPE").  *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1280 (11th Cir. 2008).  Once a student is identified as needing special education services, a school board must develop an appropriate individual education plan ("IEP") that complies with the IDEA. *Id*. To protect the rights of students with disabilities, "the IDEA provides procedural safeguards to permit parental involvement in all matters concerning the child's educational program and allows parents to obtain administrative and judicial review of decisions they deem unsatisfactory or inappropriate." *N.B. ex rel. D.G. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1378 (11th Cir. 1996).

As a mandatory condition precedent to obtaining judicial review under the IDEA, an aggrieved party must first utilize the IDEA's administrative framework that includes, among other things, the right to an administrative hearing. *Id*. The appropriate administrative procedure in Florida is to request a due process hearing with a state administrative law judge ("ALJ") before the Florida Division of Administrative Proceedings ("DOAH"). *L.G. ex rel. K.G. v. Sch. Bd. of Palm Beach County*, 21 Fed. App'x. 360, 363 (11th Cir. 2007). *See also* 20 U.S.C. § 1415(f). If a party is dissatisfied with the administrative law judge's decision, they may then file a judicial action to challenge the administrative decision but only after exhausting this administrative framework. *Id*. at 363-64; 20 U.S.C. § 1415(i)(2)(A).

When the gravamen of a lawsuit is the denial of the IDEA's guarantee of FAPE, exhaustion of administrative remedies is required. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 746 (2017). A plaintiff may not escape exhaustion requirements simply by bringing claims under statutes other than the IDEA, including the ADA and Section 504. *Id*. at 754. *See also T.W. v. Franklin County Sch. Bd.*, 4:16-CV-29-RH/CAS, 2016 WL 4536408 at *2 (N.D. Fla. Aug. 30, 2016) ("The exhaustion requirement also applies to claims under the

Florida Educational Equity Act.").[3]   However, "if the remedy sought in a suit brought under a different statute is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." _Fry_, 136 S. Ct. at 747.

In determining whether the gravamen of a complaint is based on the denial of FAPE, the Supreme Court instructed in _Fry_:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

---

[3] The IDEA's administrative framework also applies to claims under Section 504.   _M.T.V. v. DeKalb County Sch. Dist._, 446 F.3d 1153, 1158 (11th Cir. 2006) ("whether claims asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section 504, or the Constitution, they must first be exhausted in state administrative proceedings"); _Babicz by & Through Babicz v. School Bd._, 135 F.3d 1420, 1422 (11th Cir. 1998) (holding that Section 504 and/or ADA claims are subject to Section 1415(f)'s exhaustion requirement and, therefore, claims must be administratively exhausted before relief is available).

*Id*. at 756-757. Importantly, "[t]he inquiry…does not ride on whether a complaint includes (or, alternatively, omits) the precise words 'FAPE' or 'IEP.'" *Id*. at 71.

### b. Counts XI and XII are FAPE-Based Claims Requiring Administrative Exhaustion

"Failure to exhaust administrative remedies… 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'" *A.L. ex rel. P.L.B. v. Jackson Cnty. Sch. Bd.*, No. 5:13-CV-85-RS-GRJ, 2013 WL 5421944 at *1 (N.D. Fla. Sept. 26, 2013) (internal citations omitted). In the instant matter, Plaintiff has not alleged he exhausted administrative remedies; instead, he seeks to avoid administrative exhaustion requirements by attempting to masquerade FAPE-based claims as ADA and Section 504 claims.

Counts XI (ADA) and XII (Section 504) contend that the School Board violated Plaintiff's rights by, among other things, depriving Plaintiff of the benefit of an education. (Doc. 1 at ¶¶ 267, 269, 275). Each of these Counts also incorporates paragraphs 1-139 of the Complaint. (Doc. 1 at ¶¶ 262, 271). Numerous of these paragraphs make specific allegations related to the exceptional student education ("ESE") services provided to Plaintiff, including an IEP, Functional Behavior Assessment ("FBA"), and Behavior Intervention

Plan ("BIP"). (Doc. 1 at ¶¶ 36-42, 105). In fact, Plaintiff specifically alleges that he had a BIP in or about April of 2014 that outlined the required steps to be taken by Co-Defendant Frazier when Plaintiff displayed concerning behavior. (Doc. 1 at ¶ 39). Plaintiff also contends that his IEP and FBA did not permit certain acts, including restraint and seclusion. (Doc. 1 at ¶ 42). Plaintiff alleges he was inappropriately restrained and secluded. (Doc. 1 at ¶¶ 44, 52, 53, 55). Plaintiff further alleges that the School Board had a duty to ensure ESE students received "a safe, quality education, free from excessive physical or verbal abuse, unlawful restraint, and seclusion." (Doc. 1 at ¶ 43). Undoubtedly, these are claims that could not have been brought had the alleged conduct occurred at a public facility other than a school and are claims that an adult at a school could not have brought.

Fairly summarized, the gravamen of Counts XI and XII is an alleged violation of Plaintiff's right to FAPE under the IDEA. Plaintiff's failure to administratively exhaust the issues raised in Counts XI and XII warrants dismissal.

2.    **In the Alternative, Plaintiff Failed to State a Cause of Action under the ADA and Section 504, Because the Eleventh Circuit does not Recognize "Hostile Educational Environment" Claims under the ADA or Section 504**

Plaintiff contends in Counts XI and Count XII that the School Board violated the ADA and Section 504 by subjecting him to a "hostile educational environment." (Doc. 1 at ¶¶ 269, 275). While courts within the Eleventh Circuit have recognized hostile educational environment claims under Title IX of the Education Amendments of 1972 ("Title IX"),[4] the undersigned is unaware of any Eleventh Circuit case that has recognized the existence of these types of claims under the ADA or Section 504.  In fact, other courts have expressly rejected such claims.  *See Toma v. Univ. of Hawaii*, 304 F. Supp. 3d 956, 964 (D. Haw. 2018) (holding, "[b]ased on the lack of controlling authority recognizing such a claim in the Ninth Circuit, the Court declines to recognize a claim for hostile educational environment in this case"); *Yennard v. Herkimer BOCES*, 241 F. Supp. 3d 346, 365 (N.D.N.Y. 2017)("The Court would add only that, as Defendants note, a hostile-learning-environment claim 'has yet to be recognized by the Second Circuit.'").

---

[4] *Garrett v. Univ. of S. Florida Bd. of Trustees*, 8:17-CV-2874-T-23AAS, 2018 WL 1850216, at *4 (M.D. Fla. Apr. 18, 2018).

**D.**    ***Count XIII - Plaintiff's Claim Under F.S. §391.13(5) Fails as a Matter of Law, Because the School Board's Sovereign Immunity has not been Waived***

The School Board is considered a state agency in Florida for purposes of sovereign immunity[5] and, therefore, it is immune from suit for claims arising under Florida law or common law "absent waiver by legislative enactment or constitutional amendment." *Circuit Court of Twelfth Judicial Circuit v. Dep't of Natural Resources*, 339 So. 2d 1113, 1114 (Fla. 1976). In Florida, waivers of sovereign immunity "must be clear and unequivocal" and not based on inference or implication. *Spangler v. Florida State Turnpike Auth.*, 106 So. 2d 421, 424 (Fla. 1958); *see also Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 472 (Fla. 2005). As the Florida Supreme Court held in *Spangler*, statutes that purport to waive sovereign immunity must be strictly construed. *Spangler*, 106 So. 2d at 424. This is "for the obvious reason that the immunity of the sovereign is a part of the public policy of the state. It is enforced as a protection of the public against profligate encroachments on the public treasury." *Id*.

---

[5] *Whetstone v. Alachua County Sch. Bd.*, 1:14CV156-MW/GRJ, 2015 WL 4619619, at *8 (N.D. Fla. July 31, 2015).

Time and time again, Florida appellate courts, when confronted with statutes that do not contain a clear and explicit waiver of sovereign immunity, one that can be discerned readily from the statutory text and not by implication, have found that the statutes do not waive the state's sovereign immunity. *See, e.g.*, *City of Key West v. Florida Keys Community College*, 81 So. 3d 494, 497 (Fla. 3d. DCA 2012) (holding that Chapter 403, Florida Statutes, which relates to stormwater utility fees, does not expressly waive sovereign immunity for stormwater utility fees, because it is clear that the State has not waived sovereign immunity in Chapter 403); *Sun 'N Lake of Sebring Improvement District v. Ayala*, 2018 WL 300891 (Mem), 1 (Fla. 2d DCA 2018) (finding that Florida did not waive its sovereign immunity when it enacted the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201–.23, Fla. Stat., given a lack of clear waiver of sovereign immunity in that statute citing analysis in *Curcio v. Fla. Dep't of the Lottery*, 164 So. 3d 750, 754 (Fla. 1st DCA 2015)).

Plaintiff contends the School Board breached certain duties and rights afforded to him in Section 393.13(3), Florida Statutes.  However, Plaintiff has not alleged, nor can he, that Section 393.13(5), Florida Statutes, contains an express waiver of sovereign immunity or stated right to bring a cause of action against the School Board. The legislature does not clearly waive sovereign

immunity in Section 393.13(5), Florida Statutes, and the legislature did not include terms that can be interpreted, based on their plain language, to indicate that it contemplated the state would be subject to suits arising under the terms of Section 393.13(5), Florida Statutes, or in its own courts. Therefore, Section 393.13(5), Florida Statutes, cannot be read to waive Florida's immunity from suit in its courts, and thus, Count XIII should be dismissed with prejudice.

### 1. Additionally, Plaintiff's Claim Under F.S. §391.13(5) Fails Because the Statute Only Imposes Civil Liability on those who Harm the Victim

Section 393.13(5), Florida Statutes, states, in pertinent part, "[a]ny person who violates or abuses any rights or privileges of persons who are developmentally disabled provided by this act shall be liable for damages as determined by law." By its express terms, only those persons that violate the rights of a developmentally disabled person shall be liable for damages. In *Special Olympics Florida, Inc. v. Showalter*, 6 So. 3d 662, 666 (Fla. 5th DCA 2009), the court explained that, "[i]f at all, the statute only imposes civil liability on the one who harms the victim and perhaps those who are vicariously liable for that person's actions. Here, [the organization] is not the abuser. Further, as previously discussed, [the abuser] was not acting within the scope of

his agency with [the organization]. Thus, [the organization] is not vicariously liable for [the abuser's] conduct."

Here, it is clear from the face of the Complaint that the School Board was not the alleged abuser. Further, the School Board is not vicariously liable [*See §* *(F)*, *infra*] for Co-Defendant Frazier's alleged abuse. *See* <u>*Martin, v. School Board of Miami-Dade County, Florida*</u>, 2010 WL 3882070 (S.D. Fla.) (holding that the School Board was not liable under Section 393.13(5), Florida Statutes, where the purported sexual assault was outside the course and scope of employment). Therefore, Count XIII should be dismissed with prejudice because it fails to state a cause of action under Section 393.13(5), Florida Statutes.

### E.   *Count XIV – Plaintiff's Negligent Training Claim is Barred by Sovereign Immunity and there are no Allegations to Support a Claim of Negligent Hiring and Negligent Retention*

#### 1.   **Sovereign Immunity Bars Plaintiff's Negligent Training Claim**

Plaintiff's negligent training claim is barred by sovereign immunity. *See* Art. X, § 13, Fla. Const. As the Court is no doubt aware, to state a claim for negligence under Florida law, a plaintiff must allege and ultimately prove that the defendant "owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages." *Accord*

*Paterson v. Deeb*, 472 So. 2d 1210, 1214 (1st DCA 1985). Under Florida common law, subdivisions of the State such as the School Board are generally immune from liability in tort. However, Florida has a limited waiver of sovereign immunity allowing municipal governments to be sued in tort "for any act for which a private person under similar circumstances would be held liable." § 768.28(1) Fla. Stat. (2018); *Kaisner v. Kolb*, 543 So. 2d 732, 734 (Fla. 1989); *Seguine v. City of Miami*, 627 So. 2d 14, 17 (1st DCA 1993).

Thus, when the state or its subdivisions are sued for negligence, this Court must first determine *whether a duty of care exists* such that a private person or business would be subject to liability under the circumstances alleged. Where there is no duty owed there can be no recovery as a matter of law, since "[d]uty is a necessary element to a claim for negligence." *Florida Power & Light Co. v. Macias by Macias*, 507 So. 2d 1113, 1115 (Fla. 3d DCA 1987) (citations omitted); *Wallace v. Dean*, 3 So. 3d 1035, 1046 (Fla. 2009) (holding that where a governmental defendant does not owe a duty of care, judgment in the defendant's favor is required).

If the Court finds that a duty of care exists, it must then determine whether the School Board is *nonetheless immune under the sovereign immunity doctrine* based upon whether the nature of the conduct involved is a

discretionary function of government. *See, e.g.*, *Wallace*, 3 So. 3d at 1035. As the Florida Supreme Court explained in *Wallace*, the analysis with respect to "duty" is conceptually distinct from any later inquiry regarding whether the governmental entity remains immune from suit. *Id.* at 1044. The question of whether a duty exists is a matter of law which must be determined by the Court. *Bryant v. Beary*, 766 So. 2d 1157, 1158 (Fla. 5th DCA 2000).

The waiver does not apply if the challenged governmental acts are "discretionary" rather than "operational." *See* § 768.28(1), Fla. Stat. (2018); *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). "[A]n act is 'discretionary' if it involves an 'exercise of executive or legislative power such that, for the court to intervene by way of tort law would inappropriately entangle it in fundamental questions of policy and planning.' Conversely, an 'operational' act is one not necessary to or inherent in policy or planning that merely reflects a secondary decision as to how those policies or plans will be implemented." *Id.* at 1264-65 (*quoting Kaisner v. Kolb*, 543 So. 2d 732, 737 (Fla. 1989)).

Here, Plaintiff's negligent training claim is based solely on his belief that the training provided in the School District was inadequate. (Doc. 1 at ¶ 292(b)-(c)). In *Lewis*, the plaintiff challenged the government's decisions regarding its

26

police training procedures and specifically "how to train its officers and what subject matter to include in the training." _Lewis_, 260 F.3d at 1266.  This is exactly the type of discretionary governmental function which is immune from tort liability. _See Id_.  "To find otherwise would amount to judicial intervention, by way of tort law, into the fundamental decision making of the legislative and executive branches – a practice against which the Florida courts have repeatedly cautioned." _Cook ex rel. Estate of Tessier v. Sheriff of Monroe County_, 402 F.3d 1092, 1118-19 (11th Cir. 2005) ("[a] city's decision regarding _how to train_ its officers and _what subject matter_ to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning."). Because Plaintiff has not alleged operational conduct sufficient to overcome sovereign immunity, his negligent training claim is due to be dismissed. _See Mercado v. City of Orlando_, 407 F.3d 1152, 1162 (11th Cir. 2005) ("For Mercado to state a claim for negligent training, he must show that Orlando was negligent in the implementation or operation of the program. He cannot merely challenge the content of the program.").

Even if the Court were to somehow find operational conduct, Plaintiff has not alleged supporting facts showing that any action of the School Board was the sole proximate cause of his alleged injury. _McPhee v. Dade County_,

362 So. 2d 74, 76 (Fla. 3d DCA 1978).   Accordingly, sovereign immunity applies on this basis as well.

### 2. Insufficiency of Negligent Hiring and Retention Claims[6]

"The principal difference between negligent hiring and negligent retention as bases for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness. Negligent hiring occurs when, prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background." *Garcia v. Duffy*, 492 So. 2d 435, 438–39 (Fla. 2d DCA 1986). Negligent retention is different and "occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." *Id.*

---

[6] To the extent the Court does not dismiss the Complaint with prejudice based on the legal arguments herein, it should still be dismissed because Plaintiff has included three distinct claims into one count and incorporates irrelevant allegations into each. *See Weiland*, 792 F.3d at 1321-1323 (identifying types of shotgun pleadings).

Here, Plaintiff has not alleged sufficient facts that the School Board was aware of Frazier's alleged unfitness at the time he was hired or at any time while he was alleged to have violated Plaintiff's rights. Accordingly, Plaintiff's Complaint fails to state a claim for negligent hiring and negligent retention.

### F.   Count XV – Plaintiff's Catch-All Respondeat Superior Claim is Barred by Sovereign Immunity

Florida's sovereign immunity statute bars claims against governmental entities when it is alleged that an employee's act(s) are committed "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." § 768.28(9)(a), Fla. Stat. (2018). Plaintiff alleges that the School Board is vicariously liability under the Florida common law doctrine of respondeat superior for the <u>negligent</u> acts of Co-Defendant Frazier and Hennion. (Doc. 1 at ¶ 299). At the same time, Plaintiff complains elsewhere that Co-Defendant Frazier and Hennion intentionally targeted disabled students for abuse. (Doc. 1 at ¶¶ 163, 218, 308).

Case law in Florida is clear that a plaintiff may not proceed under a respondeat superior theory of liability when the employee is alleged to have acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Dist. Sch. Bd. of Lake County v. Talmadge*, 381 So. 2d 698, 702 (Fla. 1980). *Stephenson v. Sch.*

_Bd. of Polk County_, 467 So. 2d 1112, 1112 (Fla. 2d DCA 1985) ("The pleadings and the proofs evidence that the acts of the school board's employees were, at best, committed within the scope of employment, but 'in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'…[t]he school board cannot be held liable for such acts."). As such, this claim is due to be dismissed with prejudice, or judgment on the pleadings granted.

### G. Counts I, II, III, IV, XI, XII, XIII, XIV & XV - Plaintiff is Prohibited as a Matter of Law from Recovering Punitive Damages Against the School Board

Plaintiff seeks punitive damages from the School Board in every Count of the Complaint, as follows:

- Count I - 42 U.S.C. §1983 – Unreasonable Seizure (Doc. 1 at p. 46 "Wherefore Clause");

- Count II - 42 U.S.C. §1983 – Excessive Force (Doc. 1 at p. 51 "Wherefore Clause");

- Count III - 42 U.S.C. §1983 – Equal Protection (Doc. 1 at p. 55-56 "Wherefore Clause");

- Count IV - 42 U.S.C. §1983 and 42 U.S.C. §1985 – Conspiracy to Interfere With Civil Rights (Doc. 1 at p. 60 "Wherefore Clause");

- Count XI - Americans With Disabilities Act (Doc. 1 at p. 86 "Wherefore Clause");

- <u>Count XII</u> - Rehabilitation Act of 1973 (Doc. 1 at p. 88 "Wherefore Clause");

- <u>Count XIII</u> - Section 393.13, Florida Statutes (Doc. 1 at p. 90 "Wherefore Clause");

- <u>Count XIV</u> - Negligent Hiring, Training, Retention or Supervision (Doc. 1 at p. 93 "Wherefore Clause"); and

- <u>Count XV</u> - Respondeat Superior (Doc. 1 at p. 95 "Wherefore Clause").

It is black-letter law that Plaintiff is not entitled to recover punitive damages against a governmental entity such as the School Board with respect to any of these claims. See:

► Punitive damages are not permitted in § 1983 actions. *See <u>City of Newport v. Fact Concerts, Inc.</u>*, 453 U.S. 247 (1981) (holding a city is not liable for punitive damages under 42 U.S.C. § 1983); *see also <u>Nelson v. City of Panama City, Florida</u>*, 176 F. Supp. 2d 1288, 1292 (N.D. Fla. 2001) (*citing <u>City of Newport</u>* and noting that punitive damages are not available against government defendants in § 1983 actions), *rev'd in part and vacated in part on other grounds*, 64 Fed. Appx. 742 (11th Cir. 2003); <u>Kubany v. School Bd. of Pinellas Cty.</u>, 839 F. Supp. 1544, 111 (M.D. Fla. 1993) ("On the issue of damages, as

Defendant School Board points out, punitive damages are not available under § 1983 from a governmental entity.") (citations omitted).

► Punitive damages are also not permitted against governmental entities in actions brought under Title II of the ADA or the Rehabilitation Act. _Barnes v. Gorman_, 536 U.S. 181, 189-190, 122 S. Ct. 2097, 2103 (2002) (holding that punitive damages "may not be awarded in suits under § 202 of the ADA and § 504 of the Rehabilitation Act.").

► While Section 393.13, Florida Statutes, does not list punitive damages as an available measure of relief, sovereign immunity bars Plaintiff's claim for punitive damages in any event. § 768.28(5), Fla. Stat. (2018); _Economic Dev. Corp. of Dade Cty., Inc. v. Stierheim_, 782 F.2d 952, 91 (11th Cir. 1985); _Nelson_, 176 F. Supp. 2d at 1292.

► Sovereign immunity likewise bars punitive damages as a basis for recovery in negligence and respondeat superior claims. § 768.28(5), Fla. Stat. (2018); _Nelson_, 176 F. Supp. 2d at 1292.

As such, dismissal of these claims with prejudice, or judgment on the pleadings should be granted insofar as these Counts contain unauthorized punitive damages demands.

**H.    Counts XIII, XIV and XV - Plaintiff Cannot Secure Pre-Judgment Interest as a Matter of Law**

Plaintiff's demand for pre-judgment interest with regard to his state law claims is likewise barred by sovereign immunity. *See* § 768.28(5), Fla. Stat. (2017) (noting that liability against the state and its agencies "shall not include punitive damages or interest for the period before judgment."); *Avallone v. Bd. of Cty. Comm. of Citrus County,* 493 So. 2d 1002, 1004 (Fla. 1986) (finding that government tortfeasors are not liable for punitive damages or pre-judgment interest). Accordingly, Plaintiff's state law claims should be dismissed on this ground as well.

Dated this 31st day of December, 2018.

Respectfully submitted,

/s/ *Terry J. Harmon*
**TERRY J. HARMON**
Florida Bar Number: 0029001
tharmon@sniffenlaw.com
**ROBERT J. SNIFFEN**
Florida Bar Number: 0000795
rsniffen@sniffenlaw.com
**KEVIN KOSTELNIK**
Florida Bar Number: 0118763
kkostelnik@sniffenlaw.com
**JARRETT B. DAVIS**
Florida Bar No. 1010432
jdavis@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Counsel for the School Board*

## WORD COUNT CERTIFICATION

This document complies with word limits set forth in N.D. Fla. Local Rule 7.1(F), and contains 6,936 words, which includes the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 31st day of December, 2018, a true and correct copy of the foregoing was electronically filed in the US District Court, Northern District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Terry J. Harmon*
**TERRY J. HARMON**