## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**N.R., a minor, by J.R. and A.R.,**
**his natural guardians,**

      **Plaintiff,**

**v.**                            **Case No.: 3:18-cv-02208-RV-EMT**

**THE SCHOOL BOARD OF**
**OKALOOSA COUNTY, FLORIDA,**
**MARY BETH JACKSON, STACIE**
**SMITH, ARDEN FARLEY, ALAN**
**LAMBERT, JON WILLIAMS, ROY**
**FRAZIER, JEAN HENNION, and DOES**
**1-30,**

      **Defendants.**
_____

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT,
### ALAN LAMBERT'S MOTION TO DISMISS

Plaintiff, N.R., a minor, by J.R. and A.R., his natural guardians, files this Response in Opposition to Defendant, Alan Lambert's ("Lambert") Motion to Dismiss [D.E. 57], and in support thereof states the following:

### SUMMARY OF ARGUMENT

Defendant Lambert's Motion to Dismiss or, alternatively, for a more definite statement should be denied because Plaintiff's Complaint is not an impermissible shotgun pleading in that it fairly provides Defendant Lambert with notice of the claims against him. Additionally, Plaintiff has sufficiently pled an Equal Protection

claim against Defendant Lambert in Count VII. Also, as it relates to Count VIII, exceptions to the intracorporate conspiracy doctrine render the doctrine inapplicable. Furthermore, Defendant Lambert has not proven that he was acting within the scope of his discretionary authority when the alleged wrongful actions and/or omissions at issue in the Complaint occurred. Additionally, Defendant Lambert's actions and/or omissions as to Plaintiff, as described in Plaintiff's Complaint [D.E. 1], violated clearly established statutory and constitutional rights of which both a reasonable person and Defendant Lambert would have known. Thus, because Defendant Lambert was not acting in his discretionary authority and his conduct violated statutory and constitutional rights, he is ineligible for the benefit of qualified immunity. Finally, Plaintiff's Complaint alleges sufficient facts to support a claim for punitive damages against Defendant Lambert. Defendant Lambert's Motion to Dismiss and alternative request for more definite statement should therefore be denied.

## MEMORANDUM OF LAW AND ANALYSIS

### I. STANDARD OF REVIEW FOR MOTION TO DISMISS

"On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff." *Turner v. WCA Waste Systems, Inc.*, 2012 WL 4512908 at *1 (N. D. Florida, Gainesville Division, 2012) (internal citations omitted). "The Court must

accept as true all of the factual allegations contained in the complaint," and cannot dismiss the complaint unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id*.

## II. <u>PLAINTIFF'S COMPLAINT IS NOT A SHOTGUN PLEADING</u>

Defendant Lambert erroneously alleges Plaintiff's Complaint is an impermissible shotgun pleading. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sherriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Defendant Lambert alleges that the Complaint fails to properly put him on notice of the claims against him. He does, however, spend a large portion of his sixteen (16) page Motion to Dismiss discussing the allegations against him in the Complaint, specifically enumerating most of those allegations in the first three (3) pages of his Motion. Defendant Lambert goes on to describe the claims against him in detail, including the different theories of liability. The Complaint, as a matter of common sense, must have provided Defendant Lambert with notice of the claims against him, and his Motion to Dismiss or alternatively, for a more definite statement should therefore be denied.

### III. <u>PLAINTIFF HAS SUCCESSFULLY STATED AN EQUAL PROTECTION CLAIM AGAINST DEFENDANT LAMBERT IN COUNT VII</u>

Plaintiff has sufficiently alleged a causal connection between Defendant Lambert's actions/omissions and violations of Plaintiff's Equal Protection rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. It should be undisputed that Plaintiff was a member of an identifiable class and was allegedly intentionally treated differently than other similarly situated persons. As a threshold matter, "determining whether two groups of individuals are similarly situated is generally a question of fact for the jury." *Williams v. Fulton County School District*, 181 F.Supp.3d 1089, 1137 (N.D. Ga. 2016). (internal citations omitted). However, a number of courts have found that a school district that treats its disabled students differently from other students by disciplining them or dealing with reports of abuse against them differently may run afoul of the equal protection clause. E.g., *Vicky M. v. Northeastern Educational Intermediate Unit 19*, 486 F.Supp.2d 437, 457 (M.D.Pa.2007) ("A disability, such as autism, is not a quasi-suspect classification calling for a more exacting standard of judicial review than is normally accorded economic and social legislation. Nevertheless ...[these students plead a claim that teacher] repeatedly discriminated against the Minor–Plaintiff and other autistic students in her class by inflicting physical and emotional abuse" on them) (internal quotation marks omitted); *H.M. v. Board of Education of the Kings Local School*

*Dist.*, 117 F.Supp.3d 992, 1003 (S.D.Oh.2015) (denying dismissal, district court found it reasonable to infer that abusive "treatment was solely due to Plaintiff-children's multiple handicaps without any rational relationship to a legitimate governmental purpose and that non-disabled students were not treated in the same manner"); *Vicky M. v. Ne. Educ. Intermediate Unit 19*, 486 F.Supp.2d 437, 457 (M.D.Pa.2007) on reconsideration, No. CIV.A. 3:06–CV–01898, 2007 WL 2844428 (M.D.Pa. Sept. 26, 2007) ("Plaintiffs have alleged that Defendant Wzorek repeatedly discriminated against the Minor–Plaintiff and other autistic students in her class by inflicting physical and emotional abuse upon them, but did not so discriminate against her other special education students").

In *Williams*, a school abuse case factually similar to the case at bar, Plaintiff brought § 1983 supervisory liability claims (including equal protection claims) against multiple individuals, including an abusive teacher (Pickens) and the school Principal (Boyd). *Id.* at 1129. The individual defendants argued (similar to the argument of Defendant Lambert) in their motions to dismiss plaintiffs equal protection claim that plaintiffs failed to allege that a "similarly situated" comparator group of students received more favorable treatment (essentially claiming that plaintiffs had not pled facts indicating that he and other non-verbal disabled students were treated differently at all). Id. The *Williams* court denied defendants' motions to dismiss on the basis that "[p]laintiffs have pled – albeit generally – that non-disabled

students and disabled students who were verbal were not subject to the same abusive treatment as non-verbal disabled students. *Id.*

In the present case, Plaintiff has pled facts sufficient to show that he was treated differently or received less favorable treatment than other similarly situated students at Silver Sands. [D.E. 1 at ¶¶ 62-66, 218]. Additionally, the totality of the facts giving rise to Plaintiff's claim in Count VII, including but not limited to the specific facts alleged in paragraphs 89-90 of Plaintiff's Complaint, reasonably infer that Defendant Lambert and other named Defendants acted with the intent to discriminate against Plaintiff and other non-verbal disabled ESE students within the OCSD. Plaintiff has successfully stated § 1983 supervisory liability claims based on a causal connection theory against Defendant Lambert in Count VII, and his Motion to Dismiss should therefore be denied.

## IV. PLAINTIFF HAS ADEQAUTELY ALLEGED §§ 1983, 1985 CONSPIRACY CLAIMS AGAINST DEFENDANT LAMBERT

To establish a conspiracy claim under § 1983, a plaintiff must allege three elements: "(1) a violation of federal rights; (2) an agreement among the Defendants to violate such a right; and (3) an [underlying] actionable wrong." *Gibbons v. McBride*, 124 F.Supp.3d 1342, 1379 (S.D.Ga.2015). To establish a conspiracy claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;" and

6

(3) an act in furtherance of the conspiracy; (4) "whereby" a person is either "injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). "The linchpin for conspiracy is agreement, which presupposes communication". *Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.1992). There must also be a causal connection between the conspiracy and the underlying denial of the constitutional rights. *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir.2008); *see also Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir.1981) (causation is "an implicit requirement" of all civil rights actions, and a "section 1985 cause of action requires the plaintiff to show 'that the acts done in furtherance of the conspiracy caused his injury").

"To withstand a motion to dismiss brought pursuant to Rule 12(b)(6), Fed. R. Civ. P., a plaintiff must simply plead general facts from which a conspiracy can be inferred, and the existence of the conspiracy may be shown by circumstantial evidence." *Larson v. Sch. Bd. of Pinellas County, Fla.*, 820 F. Supp. 596, 600 (M.D. Fla. 1993). To allege the existence of an agreement on the part of the defendants, a plaintiff need not point to a "smoking gun;" instead, "nothing more than an 'understanding' and 'willful participation' ... is necessary to show the kind of joint action that will subject ... parties to § 1983 liability." *Bendiburg v. Dempsey*, 909 F.2d 463, 469 (11th Cir.1990). Importantly, "an "agreement" may be inferred 'from

the relationship of the parties, their overt acts and concert of action, and the totality of their conduct.'" *Am. Fed'n of Labor & Cong. of Indus. Organizations v. City of Miami, FL,* 637 F.3d 1178, 1192 (11th Cir.2011); *Gray v. Great Valley School Dist.*, 102 F.Supp.3d 671, 684 (E.D.Pa.2015).

Covering up student abuse at a school can form the basis for a civil rights conspiracy claim. *See Jordan v. Randolph County Schools*, 4:08-CV-131CDL, 2009 WL 1410082, at *2 (M.D. Ga. May 19, 2009). In *Jordan*, a mother informed the principal of a high school, superintendent, and local school board chair that three boys had engaged in acts of sexual harassment against other students, including trying to look up her daughter's skirt. 2009 WL 1410082 at *2–4. Those boys then raped the daughter. *Id.* School officials failed to report the rape to the mother, who learned of the incident from her daughter the day after the rape occurred. *Id.* The mother asserted multiple causes of action including civil rights conspiracy claims against the district, principal, board chair, and superintendent. *Id.* The court declined to dismiss the civil rights conspiracy claims because the school's "cover[ ] up incidents of sexual misconduct" by the three students may have led to the daughter's rape. *Id. at *7.*

Similarly, in *Williams*, the court declined to dismiss civil rights conspiracy claims against Pickens, Boyd, an Assistant Principal, a Human Resources ("HR") Administrator, several Superintendents, several Social Workers, the Secretary to the

8

HR Department, and a multitude of other individuals. 181 F.Supp.3d at 1153-1159. The *Williams* court stated "[H]ere, the underlying harm is the abuse that Alex [Plaintiff] suffered, which Plaintiffs have successfully alleged may have violated his constitutional rights. According to the Complaint, the individual defendants conspired to cover up that continuing abuse… The abuse was allegedly brought to the attention of [school district] officials numerous times, and each time they ignored it or, allegedly, actively suppressed reports of it." *Id*. at 1149-1150.

In this case, Plaintiff has sufficiently alleged facts to infer that Defendant Lambert and other named Defendants reached an agreement to violate Plaintiff's constitutional rights based on the relationship of said defendants, their acts/omissions and concert of action, and the totality of their conduct. In support thereof, the relationship between Defendant Lambert and other defendants as OCSD employees (and their united interests in preserving their careers) is obvious. In further support thereof, Plaintiff alleges that Defendant Lambert and others knew of Frazier's abuse of Plaintiff while it was happening, but failed to intervene or properly report said conduct [D.E. 1 at ¶¶ 66, 88-89, 104]. Additionally, Defendant Lambert retaliated against employees for reporting child abuse and on at least one occasion chastised an employee for reporting the abuse of nonverbal disabled ESE students at Silver Sands, including Plaintiff, because he "only had one year left until retirement," and didn't want to deal with the consequences of child abuse reports at

his school [D.E. 1 at ¶ 90, 102]. Even worse, Defendant Lambert and others not only agreed to conceal their knowledge of Frazier's abuse allowing the abuse to continue, but also outright lied about rectifying it [D.E. 1 at ¶¶ 66, 88-91, 102, 123]. Defendant Lambert's cover up of Frazier's abuse is sufficient under *Jordan* and *Williams* to infer his agreement to violate Plaintiff's constitutional rights. Plaintiff has similarly adequately alleged the other elements of conspiracy, including that Defendant Lambert and others deprived non-verbal, disabled ESE students, including Plaintiff, equal protection of the laws, as described more fully in Section III, *supra*. The totality of Plaintiff's allegations adequately support Plaintiff's §§ 1983, 1985 conspiracy claims against Defendant Lambert and his Motion to Dismiss should therefore be denied.

### A.   THE INTRACORPORATE CONSPIRACY DOCTRINE IS NOT APPLICABLE TO THIS CASE AND DOES NOT BAR PLAINTIFF'S CONSPIRACY CLAIMS AGAINST DEFENDANT LAMBERT

The intracorporate conspiracy doctrine holds "that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir.2000); *accord Denney v. City of Albany,* 247 F.3d 1172, 1190–91 (11th Cir.2001) (stating "the only two conspirators identified ...

are both City employees; no outsiders are alleged to be involved" and concluding intracorporate conspiracy doctrine barred plaintiffs' § 1985(3) conspiracy claims for deprivation of their equal protection rights).

Unlike *Denney,* Plaintiff's Complaint adequately alleges a conspiracy between multiple actors from two separate legal entities (OCSO and OCSB/OCSD), thereby negating the applicability of the intracorporate conspiracy doctrine. Specifically, Plaintiff's allegations include but are not limited to: knowledge on the part of OCSO and OCSB/OCSD employees of widespread abuse of non-verbal disabled ESE students within the OCSD, including Plaintiff; the collective failure of OCSO and OCSB/OCSD employees to stop, intervene in, or report said conduct; the intentional, unlawful concealment and district-wide cover up of said abuse by OCSO and OCSB/OCSD employees, including an OCSO deputy instructing a similarly situated, nonverbal disabled student-victim's parents not to pursue criminal prosecution of the abusive teacher, Frazier. [D.E. 1 at ¶ 65, 86-88, 128]. In addition to Plaintiff's specific reference to OCSO in ¶ 233 of the Complaint, Plaintiff's "Statement of the Ultimate Facts" sufficiently alleges and infers conspiratorial involvement between "outsiders," such as OCSO employees, and various OCSB/ocsd administrators and employees, including Defendant Lambert. *See Larson v. Sch. Bd. of Pinellas County, Fla.*, 820 F. Supp. 596, 600 (M.D. Fla. 1993) ("[T]o withstand a motion to dismiss brought pursuant to Rule 12(b)(6), Fed. R. Civ.

P., a plaintiff must simply plead general facts from which a conspiracy can be inferred, and the existence of the conspiracy may be shown by circumstantial evidence"). Because Plaintiff has adequately alleged a conspiracy between multiple actors from separate legal entities, the intracorporate conspiracy doctrine does not apply and Defendant Lambert's Motion to Dismiss should therefore be denied.

## B.   EXCEPTIONS TO THE INTRACORPORATE CONSPIRACY DOCTRINE PRECLUDE THE DOCTRINE'S APPLICABILITY TO THIS CASE

The Eleventh Circuit has enunciated three exceptions to the intracorporate conspiracy doctrine." *See Gibbons v. McBride*, 124 F.Supp.3d 1342, 1381 (S.D.Ga.2015). The doctrine does not bar "(1) convictions involving criminal charges of conspiracy," (2) where the employee has an "independent personal stake" in the unconstitutional acts, and (3) where the employees "engage in a series of discriminatory acts as opposed to a single action over a significant period of time in the employment setting." *See Grider v. City of Auburn*, 618 F.3d 1240, 1262 (11th Cir.2010).

District courts within the eleventh circuit, and outside of it, have found that the "independent personal stake" exception applies to the attempted cover up of abuse in a school setting. *See Jordan v. Randolph Cty. Sch.*, No. 4:08–CV–131–CDL, 2009 WL 1410082, at *7 (M.D.Ga. May 19, 2009) (declining to dismiss a civil rights claim alleging that a student's rape resulted from the alleged cover up of the

school's failure to supervise three students who repeatedly sexually harassed and abused other students); *see also Doe 20 v. Bd. of Educ. of Cmty. Unit Sch. Dist. No. 5*, 680 F.Supp.2d 957, 981 (C.D.Ill.2010) (declining to apply doctrine at motion to dismiss stage, where plaintiff stated a claim alleging that four school administrators, including two principals, an assistant principal, and an assistant superintendent, knew that a first grade teacher was abusing female students and covered it up to save their own careers); *see also Williams*, 181 F. Supp. 3d at 1148 (finding that dismissal as to any defendant based on the application of the intracorporate conspiracy doctrine would be inappropriate when the complaint has pled factual material supporting the plausible inference that school officials may have covered up reports of abuse in order *to save their own careers*). Emphasis added.

The independent personal stake exception and the exception implicating employees who engage in a series of discriminatory acts over a significant period of time render the intracorporate conspiracy doctrine inapplicable to this case. As was the case in *Williams*, Plaintiff's Complaint contains a raft of factual material that suggests that Defendant Lambert and other OCSB/OCSD employees knew that non-verbal, disabled ESE students, including Plaintiff, were being abused by Frazier during the 2014-2015 and 2015-2016 school years and ignored or concealed it [D.E. 1 at ¶¶ 44-66, 88-91, 104, 123]. *Id.* Additionally, Plaintiff's Complaint includes allegations that Defendant Lambert discouraged employees from reporting child

13

abuse and actually retaliated against employees who did report such abuse [D.E. 1 at ¶¶ 90, 102]. Finally, Plaintiff specifically alleges that Defendant Lambert and others (including OCSB/OCSD employees named as defendants in Count VIII), acted based on interest of self-preservation of their careers when confronted with the knowledge that Plaintiff was being abused at school on their watch [D.E. 1 at ¶¶ 88, 174]. Consistent with the well-articulated findings in *Jordan[1], Doe[2],* and *Williams[3],* Defendant Lambert's Motion to Dismiss should be denied.

## V. **DEFENDANT LAMBERT IS NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE HE WAS NOT ACTING IN THE SCOPE OF HIS DISCRETIONARY AUTHORITY**

Defendant Lambert has committed the fatal error of presuming an entitlement to qualified immunity, rather than proving one. "In order to receive qualified immunity, *the public [government] official* "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002), emphasis added. *See also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) ("[w]hile a number of our cases omit this step of the analysis, binding Supreme Court and Eleventh Circuit precedents require us to consider expressly this critical threshold matter… [I]t is the burden of the government official to make this

---

[1] 2009 WL 1410082, at *7
[2] 680 F.Supp.2d at 981.
[3] 181 F. Supp. 3d 1089 at 1148.

showing.") "If the defendant was not acting within his discretionary authority, he is ineligible for the benefit of qualified immunity." *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) (internal citations omitted).

"The determination of whether an action is discretionary or ministerial (thus disqualifying a defendant from the benefit of qualified immunity) depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis." *Greenway v. Northside Hosp., Inc.*, 317 Ga.App. 371, 730 S.E.2d 742, 749 (2012) (internal citation and punctuation omitted) emphasis added; *Vann v. Finley*, 313 Ga.App. 153, 721 S.E.2d 156 (2011). "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Grammens v. Dollar*, 287 Ga. 618, 697 S.E.2d 775, 777 (2010). "A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Id.*

Defendant Lambert's rush in shifting the burden to Plaintiff to prove an adequately alleged constitutional or statutory violation by him in order to overcome his qualified immunity, is premature and misguided. While it is true that Defendant Lambert was at all times material, a government [public] official, it is also true that he has not, and cannot, support his claim that he was acting in his discretionary

authority when the wrongful acts occurred. Thus, Defendant Lambert is not entitled to the burden shifting framework described in section VI, *infra*. *See Collier v. Buckner*, 303 F. Supp. 3d 1232, 1273 (M.D. Ala. 2018) (criticizing Defendant's reliance on "generic arguments" to prove discretionary authority and denying Defendant's motion to dismiss Plaintiff's § 1983 claims based on qualified immunity defense because Defendants failed to meet their burden to demonstrate that they were "acting within the scope of [their] discretionary authority when the allegedly wrongful acts occurred").

Defendant Lambert's arguments are further weakened by the unequivocal language contained in "Florida's Mandatory Reporter Statute," § 39.201, *et seq.* Florida Statutes (2014 – present), which at all times material hereto stated in pertinent part:

> "(1)(a) Any person who knows, or has reasonable cause to suspect, that a child is abused… or neglected by a[n] other person responsible for the child's welfare, as defined in this chapter… *shall* report such knowledge or suspicion to the department in the manner prescribed in subsection (2)."
>
> (2)(a) "Each report of known or suspected child abuse… neglect by a[n] other person responsible for the child's welfare as defined in this chapter… *shall be made immediately to the department's central abuse hotline.*"

Emphasis Added.

In *Roper v. Grennway*, the court stated "[P]rocedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty." 294 Ga. 112, 751 S.E.2d 351, 353 (2013). As applied to Defendant Lambert, Fla. Stat. §§ 39.201(1)(a)-(2)(a) required him to immediately contact the central abuse hotline when he had reasonable cause to suspect child abuse (which he is specifically alleged to have had no later than the fall semester of the 2015-2016 school year. *See* [D.E. at 1 ¶ 98]. This is precisely the sort of clear instruction, requiring the execution of a simple duty, which makes Defendant Lambert's actions/omissions ministerial, not discretionary. Defendant Lambert has not, and cannot, prove that he is entitled to qualified immunity and his Motion to Dismiss should therefore be denied.

## VI. DEFENDANT LAMBERT IS NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE HIS CONDUCT VIOLATED CLEARLY ESTABLISHED STATUTORY AND CONSTITUTIONAL RIGHTS

If, and only if, a defendant first establishes that they were acting within their discretionary authority, then the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *See Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir.1991) (quoting *Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988)). In *Saucier*, the Supreme Court set forth a two-part test for evaluating the appropriateness of a claim of qualified immunity. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156,

150 L.Ed.2d 272. As a "threshold question," a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a [statutory or] constitutional right?" *Id.* "If a [statutory or] constitutional right would have been violated under the *plaintiff's* version of the facts, the court must then determine "whether the right was clearly established." *Id.* Emphasis added. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* "Qualified immunity offers complete protection for government officials sued in their individual capacities *so long as* their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Ferraro*, 284 F.3d at 1194. Emphasis added.

Even if Defendant Lambert was acting in his discretionary authority, which he was not as described in Section V, *supra*, Defendant Lambert's qualified immunity argument is misplaced because Plaintiff adequately alleges that his actions/omissions violated statutory and constitutional rights. In *Williams*, Plaintiff alleged a "multi-year reign of terror by Pickens (teacher) against her disabled students, and a totally impotent and improper response by Principal Boyd and others." 181 F.Supp.3d at 1129. In denying Principal Boyd's motion to dismiss on qualified immunity grounds the court stated, "[I]t has been clearly established for decades that the violations Plaintiffs complain of—excessively severe corporal

punishment, discrimination against disabled students without a rational basis, and deprivation of a student's right to his state-created property interest in his education without due process—are unconstitutional." *Id.* And it has also been long-established that a supervisor may bear responsibility for [his] subordinate's unconstitutional acts if [he] acts with deliberate indifference in response." *Id.*

In the instant case, Plaintiff alleges a comparable "reign of terror" by Frazier, as well as woefully insufficient responses to Frazier's conduct by Defendant Lambert and others. Specifically, Plaintiff's Complaint alleges egregious constitutional violations of Plaintiff's right to be free from unreasonable seizures, right to be free from excessive use of force, and right to equal protection, all of which Defendant Lambert was aware of while he was the Principal at Silver Sands. [D.E. 1 at ¶¶ 44-66, 88-89]. Plaintiff also alleges that Defendant Lambert failed to comply with his mandatory reporting duties under Fla. Stat. § 39.201, and acted indifferently to said constitutional and statutory violations by allowing Frazier to remain in the classroom and fostering an abusive environment, including discouraging teachers from and/or retaliating against teachers for, reporting child abuse [D.E. 1 at ¶¶ 66, 88-91, 102, 104, 123].

"A constitutional right is "clearly established" if, at the time of the defendant's actions, the law gave fair warning [to] a reasonable officer in the defendant's position that those acts violated constitutional rights." *Jones v. Fransen*, 857 F.3d 843, 851-

52 (11th Cir. 2017). The right to be free from "excessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment," is a clearly established precedent in the Eleventh Circuit. *Neal ex rel. Neal v. Fulton Cnty. Bd. Of Educ.,* 229 F.3d 1069, 1075 (11th Cir. 2000). That is, since *Neal*, the Eleventh Circuit has held as a matter of law that, where an exercise of corporal punishment is so brutal, demeaning and harmful as literally to shock the conscience of the court, a student's substantive due process rights are implicated. *See id.* The *Neal* court emphasized, "[T]hat statement of law applies with such "obvious clarity" to O'Neill's alleged conduct—striking a profoundly mentally and physically handicapped child on the head in a place where she was particularly vulnerable due to her previous surgery *for no legitimate reason*—that O'Neill had a "fair and clear warning" that her conduct was unlawful." *Hatfield*, 534 Fed. Appx. at 847–48 (dismissing defendant's qualified immunity defense on the basis that the constitutional right [she] violated was clearly established). The same obvious clarity applies to Defendant Lambert's actions/omissions as it relates to his knowledge of Frazier's conduct.

Additionally, chapter 39 of the Florida Statutes specifically includes "an employee of any school" in the definition of "other person responsible for a child's welfare," as that term is used in Fla. Stat. §§ 39.201(1)(a)-(2)(a), *supra*. Furthermore, not only was Defendant Lambert mandated by statute to call the abuse hotline, he

was also required to provide his name to the hotline staff due to his position as a "school official/personnel". *See* Fla. Stat. § 39.201(1)(d)(4). In addition to being a clear violation of Florida law, Defendant Lambert's failure to report supports Plaintiff's theory that he was acting in the interest of preserving his career (and his retirement), as discussed more fully herein. It should be undisputed that the law gave fair warning to both a reasonable person and Defendant Lambert that his failure to report suspected abuse of Plaintiff on numerous occasions throughout a multi-year period was a statutory violation and perpetuated the constitutional violations against Plaintiff. Defendant Lambert's Motion to Dismiss should therefore be denied.

## VII. DEFENDANT LAMBERT IS NOT ENTITLED TO QUALIFIED IMMUNITY IN COUNT VIII AS A MATTER OF LAW

In the Eleventh Circuit, public officials do not have qualified immunity in § 1985(3) actions for conspiracy to deprive another of equal protection. *Burrell v. Bd. of Trustees of Ga. Mil. College*, 970 F.2d 785, 793-794 (11th Cir. 1992). Section 1985(3)'s requirement that plaintiffs show a racial or class-based animus obviates the need for an immunity safeguard. *Id*. This requirement affords public officials an additional protection against section 1985(3) actions that is not present in section 1983 cases, so immunity is unnecessary. *Id*. "Class-based, invidiously discriminatory animus has no place in public policy and any actions by public officials based on such animus deserve to be chilled with the full force of federal law." *Id* at 794.

Even if Defendant Lambert could satisfy his qualified immunity burden, which he cannot as described herein, he is not entitled to qualified immunity on Plaintiff's § 1985(3) claim against him, as a matter of law. Defendant Lambert's Motion to Dismiss should therefore be denied in that regard.

## VIII. PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO SUPPORT AN AWARD OF PUNITIVE DAMAGES IN COUNTS V, VI, VII, AND VIII AGAINST DEFENDANT LAMBERT

Under 42 U.S.C. § 1983, a plaintiff may be awarded punitive damages when a defendant's conduct is found to have been "motivated by evil motive or intent, or when it involves a reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983). Courts do not require a fact intensive investigation into the merits, when deciding whether a prayer for punitive damages is properly included in a complaint. *See Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1340 (11th Cir. 2001). Because the issue of whether punitive damages are appropriate is intensely factual, courts have routinely found that "it is not appropriate at the motion to dismiss stage to sort out the type of damages that can be awarded." *Krauser v. Biohorizons. Inc.*, No. 10-80454-CIV, 2010 WL 3468481, at *5 n.9 (S.D. Fla. Sept. 1, 2010); *see, e.g., Lewellyn v. Sarasota Cnty. Sch. Bd.*, No. 8:07-cv-1712-T-33TGW, 2009 WL 1515737, at *7 (M.D. Fla. June 1, 2009) (declining to strike request for punitive damages at the motion to dismiss stage); *see also Miranda v. Wells Fargo Bank, N.A.*, 1:11-CV-

20885-KMM, 2011 WL 13223667, at *2 (S.D. Fla. Sept. 29, 2011) ("[T]hough Defendant may strongly dispute Plaintiff's ability to justify an award of punitive damages, the issue is intensely factual, and not appropriate for determination at this time. Consequently, the [c]ourt will not grant [d]efendant's motion to strike").

The totality of Plaintiff's allegations fairly give rise to Plaintiff's § 1983 claims for punitive damages against Defendant Lambert. In fact, the actions/omissions of Defendant Lambert, detailed in Plaintiff's Complaint and described herein, are precisely the sort of reckless, callous indifferent conduct to the federally protected rights of others that warrant punitive damages. Even so, the appropriateness of damages is a fact issue to be decided by a jury. At this stage, Plaintiff's prayer for punitive damages against Defendant Lambert is well-supported and Defendant Lambert's Motion to Dismiss should be denied.

## CONCLUSION

Plaintiff respectfully requests the Court deny Defendant Lambert's Motion to Dismiss or, alternatively, for a more definite statement for the reasons more fully set forth herein.

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(f), I certify that this Response in Opposition and the incorporated Memorandum of Law contains 5,265 words.

Dated this 9th day of January, 2019.

Respectfully Submitted,

By: */s/ Ryan P. Molaghan*
Ryan P. Molaghan, FBN 119780
Ryan B. Hobbs, FBN 044179
John M. Leace, FBN 172626
Talley Kaleko, FBN 487155
**BROOKS LEBOEUF BENNETT**
**FOSTER & GWARTNEY, P.A.**
909 East Park Avenue
Tallahassee, Florida 32301
850-222-2000 / 850-222-9757
RyanM@tallahasseeattorneys.com
Rhobbs@tallahasseeattorneys.com
John@tallahasseeattorneys.com
Talley@tallahasseeattorneys.com
Jeanetta@tallahasseeattorneys.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been sent to all counsel of record through electronic service utilizing the Court's CM/ECF system this 9th day of January, 2019.

*/s/ Ryan P. Molaghan*
Ryan P. Molaghan