## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**N.R., a minor, by J.R. and A.R.,**
**his natural guardians,**

     **Plaintiff,**

**v.**                         **Case No.: 3:18-cv-02208-RV-EMT**

**THE SCHOOL BOARD OF**
**OKALOOSA COUNTY, FLORIDA,**
**MARY BETH JACKSON, STACIE**
**SMITH, ARDEN FARLEY, ALAN**
**LAMBERT, JON WILLIAMS, ROY**
**FRAZIER, JEAN HENNION, and DOES**
**1-30,**

     **Defendants.**

_____

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT, THE SCHOOL BOARD OF OKALOOSA COUNTY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

     Plaintiff, N.R., a minor, by J.R. and A.R., his natural guardians, files this

Response in Opposition to Defendant, the School Board of Okaloosa County's ("the

School Board") Motion to Dismiss Plaintiff's Complaint [D.E. 52], and in support

thereof states the following:

## SUMMARY OF ARGUMENT

     Plaintiff's Complaint sets forth nine counts against the School Board.

Specifically, Plaintiff has brought three claims pursuant to a violation of 42 U.S.C.

§1983 (Counts I, II and III); a claim for conspiracy to interfere with Plaintiff's civil rights (Count IV); a claims for discrimination under the ADA (Count XI); a claim for discrimination under Section 504 (Count XII); a claim pursuant to §393.13, Florida Statutes (Count XIII); a claim for negligent hiring, training and supervision (Count XIV); and a claim for negligence based upon the School Board's vicarious liability (Count XV) [D.E. 1]. The School Board has moved to dismiss all of these claims on numerous of bases [D.E. 52]. Plaintiff has dismissed without prejudice Count XIII. In addition, Plaintiff agrees that its claim for punitive damages against the School Board should be struck and the claim for pre-judgment interest on Count XIV should be struck. Plaintiff contends that all other claims stated in his Complaint have been adequately plead and as such the School Board's Motion to Dismiss should be denied in those respects.

## MEMORANDUM OF LAW AND ANALYSIS

### I.  STANDARD OF REVIEW FOR MOTION TO DISMISS

"On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff." *Turner v. WCA Waste Systems, Inc.*, 2012 WL 4512908 at *1 (N. D. Florida, Gainesville Division, 2012) (internal citations omitted). "The Court must accept as true all of the factual allegations contained in the complaint," and cannot

dismiss the complaint unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id*.

## II.   PLAINTIFF'S 1983 CLAIMS AGAINST THE SCHOOL BOARD OF OKALOOSA COUNTY STATE A CLAIM UNDER MONELL

Under §1983, governmental entities, such as the School Board, may only be sued for constitutional deprivations visited pursuant to a governmental policy or custom. *Quinn v. Monroe County,* 330 F.3d 1320, 1325 (11th Cir.2003); *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Likewise, Plaintiff does not contend nor allege that the School Board's liability under Section 1983 is based upon the doctrine of respondeat superior. *Monell*, 436 U.S. at 694. Rather, Plaintiffs seeking to hold a school board liable for constitutional violations, have two different methods by which to establish a school board's policy or custom: "identify either (1) an officially promulgated [school board] policy or (2) an unofficial custom or practice of the [school board] shown through the repeated acts of a final policy maker for the [school board]." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir.2003)[1]; *see also Fernandez v. Sch. Bd. of Miami-Dade Cty*.,

---

[1] While Florida law identifies the School Board as the policymaker for the School District, *see* Florida Statutes § 1001.41, Plaintiff need not identify who precisely was the final policymaker in the Complaint, because that inquiry is "fact sensitive" and requires development of the record. *Hoefling v. City of Miami*, 811 F.3d 1271, 1280 (11th Cir.2016) ("We therefore believe that identifying and proving that a final policymaker acted on behalf of a municipality is 'an evidentiary standard, and not a pleading requirement.' ")

201 F. Supp. 3d 1353, 1365–66 (S.D. Fla. 2016); *Williams v. Fulton Cty. Sch. Dist*.,
181 F. Supp. 3d 1089, 1121 (N.D. Ga. 2016).

In moving to dismiss Plaintiff's 1983 claims, the School Board suggests that
Plaintiff has failed to identify the specific policy which amounted to the
constitutional violations and when such policy was adopted or passed. However,
because school boards do not typically adopt an official policy of permitting
constitutional violations against the students under their custody and care, plaintiffs
in cases, like the case at bar, proceed under the second method – an unofficial custom
or practice. *See Fernandez*, 201 F. Supp. 3d at 1365.  In its motion to dismiss,
however, the School Board conveniently leaves out any real discussion of this
second method of establishing liability.  Plaintiff, however, is only proceeding via
the custom route in the instant case and does not allege or assert that the School
Board has adopted an official policy of allowing and promoting abuse of nonverbal,
disabled students.

"To prove Section 1983 liability based on custom, a plaintiff must establish a
wide-spread practice that, although not authorized by written law or express
municipal policy, is 'so permanent and well settled as to constitute a custom or usage
with the force of law.'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th
Cir.1991) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915,

99 L.Ed.2d 107 (1988)) (citation and internal quotation marks omitted). To establish

the existence of such a practice or custom:

> it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality. Normally random acts or isolated incidents are insufficient to establish a custom or policy.

*Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir.1986).  "In other words,

a longstanding and widespread practice is deemed authorized by the policymaking

officials because they must have known about it but failed to stop it." *Brown v. City*

*of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir.1991). Thus, a school board's

"failure to correct the constitutionally offensive actions of its [employees] may rise

to the level of a 'custom or policy' if the [the school board] tacitly authorizes ... or

displays deliberate indifference toward" the unconstitutional conduct. *Brooks v.*

*Scheib*, 813 F.2d 1191, 1193 (11th Cir.1987).

Here Plaintiff seeks to hold the School Board liable for exactly that - their

longstanding custom and practice of covering up and tacitly condoning the

widespread and rampant abuse and discrimination of non-verbal, disabled ESE

students.  In fact, the Complaint goes into great detail of the on-going and continued

abuses of non-verbal, disabled ESE students at not just one school in Okaloosa

County but two schools over multiple years.  [D.E. 1 at ¶¶ 44-66; 68-87.]  The

Complaint also sets forth that the School Board had knowledge of these ongoing

abuses and failed to report or intervene and in fact approved and ratified the

continued employment of the teachers who were perpetrating the abuse. [D.E. at 1
¶66, 87, 97-102, 120-122.]  Specifically, the Complaint alleges at paragraph 88 that
the ongoing abuse, as more specifically set forth in numerous paragraphs, was
known by the School Board and was unlawfully concealed by the School Board in
an effort "to perpetuate a district-wide cover up of constitutional violations against
said students."

In addition the Complaint alleges the following:

- In April 2016, prior to FRAZIER's first day of suspension, an aide in
  FRAZIER's classroom spoke to JACKSON and SMITH on the phone
  and questioned why nothing was being done about FRAZIER and why
  he was being left in the same classroom with the same non-verbal,
  disabled ESE students that he had been abusing. However, OCSB,
  JACKSON, SMITH, and other OCSD administrators, including
  WILLIAMS, disregarded the aide's inquiry and allowed FRAZIER to
  remain in the same classroom through the end of the 2015-2016 school
  year (the last day of school for students was not until June 2, 2016),
  during which time the constitutional violations against non-verbal,
  disabled ESE students, including N.R., continued as previously
  described herein..  [D.E. 1 ¶ 100].

- On at least one occasion during the 2015-2016 school year, OCSD administration intentionally made a false report of child abuse to DCF to conceal actual abuse within the OCSD and protect FRAZIER. [D.E. 1 ¶ 106].

- OCSB failed to intervene or take any actions that would prevent the ongoing abuse and constitutional violations by STILLIONS of non-verbal, disabled ESE students and, in fact, perpetuated said abuse and constitutional violations by placing STILLIONS into another classroom at a different school, where her prior abuse of non-verbal, disabled ESE students was concealed from aides, staff and other teachers by OCSB, with knowledge thereof. [D.E. 1 ¶ 121];

- HENNION was continuously employed by OCSB and was allowed to continue working with non-verbal, disabled ESE students despite previous findings by OCSB that she unlawfully restrained a child in the classroom by duct-tapping the student to a desk. [D.E. 1 ¶ 122];

- From in or about February 2016 through in or about April 2017, OCSB, failed to communicate, correspond, or in any way inform the parents of the non-verbal, disabled ESE students FRAZIER and Stillions had abused of OCSD's investigations and findings into FRAZIER and Stillions, including confirmed allegations that non-verbal, disabled

ESE students had been physically and verbally abused, unlawfully restrained and/or secluded by FRAZIER and Stillions on a regular basis since 2014. [D.E. 1 ¶ 123];

- OCSB agreed to suppress the Stillions Report in an attempt to conceal the confirmed allegations therein from ever being known, as part of a longstanding custom, policy and/or practice within OCSD of concealing abuse of non-verbal, disabled ESE students, including N.P. [D.E. 1 at ¶ 133];

In the case of *Williams v. Fulton Cty. Sch. Dist.*, the court considered a virtually identical scenario in which there had been ongoing abuse of disabled students within the school district for five years and where the governing entity had failed to intervene, covered-up and condoned the abuses. 181 F. Supp. 3d at 1121. In *Williams*, like the instant case, the offending teachers and school employees had remained in their positions despite numerous complaints regarding the ongoing abuse. *See id.* As was explained by the court in *Williams*, the plaintiff's case was premised upon a "custom of inaction" in responding to complaints of abuse by employees. *Id.* In considering the dictates of *Monell*, as well as long-standing Eleventh Circuit precedent on municipal liability, the court held that to state a claim against a governing school entity for its "custom of inaction, a plaintiff must plead:

(1) the existence of a persistent pattern of abuse by school employees that
(2) was known about by the school district (3) who then tacitly approved

8

or deliberately ignored the abuse, such that their inaction can be said to be a custom of deliberate indifference to abuse and (4) this custom of deliberate indifference was a "moving force" behind the violation of the constitutional rights.

*Williams*, 181 F. Supp. 3d at 1121. *See also Doe v. Faerber*, 446 F. Supp. 2d 1311 (M.D. Fla. 2006)(denying a motion to dismiss where student alleged that school board had a practice and custom of avoiding and ignoring complaints of sexual abuse of students, and failed to train personnel in prevention or investigation of sexual abuse); *J.V. ex rel. Ortiz v. Seminole County School Bd*., No. 04–cv–1889, 2005 WL 1243756 at *3 (M.D.Fla. May 25, 2005) (denying dismissal when school board had knowledge of a single teacher's repeated acts of abuse and still tried to transfer her; because the allegations "establish tacit authorization" by the board).

Plaintiff's Complaint sufficiently pleads a persistent pattern of abuse by school employees (both Stillions and Frazier); that said abuses were known by the School Board; that the School Board deliberately ignored and concealed the abuse as well as created an environment where employees were instructed not to report or were afraid to report; and that this custom was a moving force behind the abuses inflicted upon non-verbal, disabled students including N.R., as the abuse was allowed to continue, was covered up, and the teachers remained in the classroom. Based upon the foregoing, Plaintiff's Complaint adequately pleads section 1983 claims against the School Board under *Monell* and its progeny. Thus, the School

Board's motion to dismiss Plaintiff's section 1983 claims (Counts I, II and III) should be denied.

## III.   THE INTRA-CORPORATE CONSPIRACY DOCTRINE DOES NOT BAR PLAINTIFF'S CLAIM FOR CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS.

To establish a conspiracy claim under § 1983, a plaintiff must allege three elements: "(1) a violation of [his] federal rights; (2) an agreement among the Defendants to violate such a right; and (3) an [underlying] actionable wrong." *Gibbons v. McBride*, 124 F.Supp.3d 1342, 1379 (S.D.Ga.2015); *see also Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.1992) ("The linchpin for conspiracy is agreement, which presupposes communication"). There must also be a causal connection between the conspiracy and the underlying denial of the constitutional rights.  *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir.2008); *see also Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir.1981) (causation is "an implicit requirement" of all civil rights actions, and a "[s]ection 1985 cause of action requires the plaintiff to show 'that the acts done in furtherance of the conspiracy caused his injury").  To allege the existence of an agreement on the part of the defendants, a plaintiff need not point to a "smoking gun;" instead, "nothing more than an 'understanding' and 'willful participation' ... is necessary to show the kind of joint action that will subject ... parties to § 1983 liability." *Bendiburg v. Dempsey*, 909 F.2d 463, 469 (11th Cir.1990).  Moreover, "an "agreement" may be

inferred 'from the relationship of the parties, their overt acts and concert of action, and the totality of their conduct.'" *Am. Fed'n of Labor & Cong. of Indus. Organizations v. City of Miami, FL*, 637 F.3d 1178, 1192 (11th Cir.2011); *Gray v. Great Valley School Dist.*, 102 F.Supp.3d 671, 684 (E.D.Pa.2015).

Covering up student abuse at a school can form the basis for a civil rights conspiracy claim. *See Jordan v. Randolph County Schools*, 4:08-CV-131CDL, 2009 WL 1410082, at *2 (M.D. Ga. May 19, 2009). In *Jordan*, a mother informed the principal of a high school, superintendent, and local school board chair that three boys had engaged in acts of sexual harassment against other students, including trying to look up her daughter's skirt. 2009 WL 1410082 at *2–4. Those boys then raped the daughter. *Id.* School officials failed to report the rape to the mother, who learned of the incident from her daughter the day after the rape occurred. *Id*. The mother asserted multiple causes of action including civil rights conspiracy claims against the district, principal, board chair, and superintendent. *Id*. The court declined to dismiss the civil rights conspiracy claims because the school's "cover[ ] up incidents of sexual misconduct" by the three students may have led to the daughter's rape. *Id*. at *7.

Similarly, the *Williams* court declined to dismiss civil rights conspiracy claims against Pickens, Principal Boyd, an Assistant Principal, a Human Resources ("HR") Administrator, several Superintendents, several Social Workers, the Secretary to the

11

HR Department, and a multitude of other individuals. 181 F.Supp.3d at 1153-1159. The *Williams* court stated "[H]ere, the underlying harm is the abuse that Alex [Plaintiff] suffered, which Plaintiffs have successfully alleged may have violated his constitutional rights. According to the Complaint, the individual defendants conspired to cover up that continuing abuse… The abuse was allegedly brought to the attention of [school district] officials numerous times, and each time they ignored it or, allegedly, actively suppressed reports of it." *Id*. at 1149-1150.

Additionally, Defendant School Board's analysis of the intracorporate conspiracy doctrine is misapplied to this case due to the independent personal state exception. The doctrine does not bar conspiracy claims when the employee has an independent personal state in the unconstitutional acts, and where the employees "engage in a series of discriminatory acts as opposed to a single action over a significant period of time in the employment setting." *Grider v. City of Auburn*, 618 F.3d 1240, 1262 (11th Cir. 2010). At least one other district court in the Eleventh Circuit, the *Jordan* court mentioned above, found that the independent personal stake exception applies to the attempted cover up of abuse in a school setting. *Jordan*, 4:08-CV-131CDL, 2009 WL 1410082, at *7 (M.D. Ga. May 19, 2009) (holding that the allegations in the complaint suggested that Defendants acted based on their interest of self-preservation when confronted with reports of a sexual assault

at school on their watch was sufficient to survive a motion to dismiss on a conspiracy claim).

In this case, Plaintiff has sufficiently shown that Defendant School Board and other named Defendants reached an agreement to violate Plaintiff's constitutional rights. In support thereof, Plaintiff alleges that Defendant School Board and others knew of Frazier's abuse of Plaintiff, but failed to intervene or properly report said conduct. [D.E. 1 at ¶¶ 65-66, 83-93, 98-104, 121-123, 133, 174-179].  Even worse, Defendant School Board and others concealed their knowledge of Frazier's abuse, thus allowing the violations of Plaintiff's rights to continue. [D.E. 1 at ¶¶ 65-66, 83-93, 98-104, 121-123, 133, 174-179].   These acts were in the furtherance of a conspiracy and in the interest of self-preservation sufficient to trigger the independent personal stake exception to the intracorporate conspiracy doctrine.

At this stage, Plaintiff has alleged sufficient facts to support §§ 1983, 1985 conspiracy claims against Defendant School Board and its Motion to Dismiss should therefore be denied.

## IV.   PLAINTIFF'S COUNTS XI and XII SHOULD NOT BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

In its motion to dismiss, the School Board argues that Plaintiff cannot proceed on his ADA (Count XI) and Section 504 (Count XII) claims because he has failed to exhaust the administrative remedies provided for under Individual with Disabilities Act ("IDEA"). Without dispute the IDEA requires exhaustion of

administrative remedies. The necessity of undergoing an administrative hearing before proceeding to state or federal court arises out of the fact the only remedy available under the IDEA is injunctive relief for the wrongful denial of a free appropriate public education ("FAPE"). *See Durbrow v. Cobb Cty. Sch. Dist*., 887 F.3d 1182, 1190 (11th Cir. 2018)(citing *Fry v. Napoleon Cmty. Schs*., 137 S.Ct. 743, 750, 197 L.Ed.2d 46 (2017)). While neither of these claims are brought pursuant to the IDEA, Defendant suggests that these claims are in essence claims against the School Board for the denial of the IDEA's guarantee of a FAPE. Plaintiff's claims, however, are not improper attempts to circumvent the administrative exhaustion requirements of the IDEA.  Where "a § 504 or ADA claim does not seek relief for the denial of a FAPE, then the claim is not subject to the exhaustion requirement even if in some way it implicates an intellectually disabled child's schooling. Therefore, if and only if a claim alleges the denial of a FAPE, then the IDEA requires exhaustion of administrative remedies for that claim." *Id*.

Thus, in determining "whether a claim alleges the denial of a FAPE, we look to the gravamen or essence of the claim."  *Id*. (*citing Fry*, 137 S.Ct. at 750). The essence of Plaintiff's claims in the case at bar are <u>not</u> the N.R. was denied a free appropriate public education but that he was discriminated against by the school because of his disability, which discrimination resulted in ongoing and significant physical and mental abuse.  The essence of these claims is most easily appreciated

14

when the Court looks to the remedy that Plaintiff is seeking.  Plaintiff is not seeking for the school to provide him some type of better education program or to redo his IEP or to provide him another type of classroom or learning accommodation because of his disability. Rather Plaintiff is seeking monetary damages from the School Board to compensate him for his physical and mental damages due to the persistent and ongoing physical and mental abuse that he suffered at the hands of the School District.  [D.E. 1 at ¶270 & Wherefore Clause, ¶276 & Wherefore Clause.]

Typically, the focus of a claim seeking a FAPE is based upon some type of educational opportunity or program that has been denied to the student which should have been given in order to afford the child a FAPE.  *See, e.g., Durbrow*, 887 F.3d 1182 (holding that an intellectually disabled high school student was required by IDEA to administratively exhaust his claims of disability based discrimination under the Rehabilitation Act and ADA, since the gravamen of the claims was that the school district deprived him of a free appropriate public education where his claims focused precisely on the adequacy of the educational program the school district afforded to him and that his course of study was not appropriately tailored to his disability); *Sch. Bd. of Broward Cty., Fla. v. C.B.*, 315 F. Supp. 3d 1312, 1327 (S.D. Fla. 2018)(holding that student's Section 504 and ADA claims based upon allegations that excluding the child's parent from the IEP process and the development of the IEP caused substantive harm to the student were essentially

claims for denial of a FAPE and thus exhaustion of administrative remedies was required). This is simply not what this case is about.

Moreover, the exhaustion of administrative remedies is not required under the IDEA where resort to administrative remedies would be (1) futile or (2) inadequate. *See Durbrow*, 887 F.3d at 1191; *Alboniga v. Sch. Bd. of Broward Cty. Fla*., 87 F.Supp.3d 1319, 1328–29 (S.D. Fla. 2015) ("Where a plaintiff's claims are not based on or potentially remedied by the IDEA, the IDEA's administrative exhaustion requirements do not apply.") As recently explained by the Supreme Court the remedy must be within the hearing officer's authority in ordering the school to provide the student with access to FAPE:

> For that reason, § 1415(l )'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education. If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(l ) merely by bringing her suit under a statute other than the IDEA—as when, for example, the plaintiffs in Smith claimed that a school's failure to provide a FAPE also violated the Rehabilitation Act. Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises. But if, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required. After all, the plaintiff could not get any relief from those procedures: A hearing officer, as just explained, would have to send her away empty-handed. And that is true even when the suit arises directly from a school's treatment of a child with a disability—and so could be said to relate in some way to her education. A school's conduct toward such a child—say, some refusal to make an accommodation—might injure her in ways unrelated to a FAPE, which are addressed in statutes other than the IDEA. A complaint seeking redress for those other harms, independent of any FAPE denial, is not subject to § 1415(l )'s exhaustion rule because, once

again, the only "relief" the IDEA makes "available" is relief for the denial of a FAPE.

*Fry*, 137 S. Ct. at 754–55.

Here the exhaustion of administrative remedies is both futile and inadequate, as the Plaintiff's claims for damages suffered from the discriminatory abuse at the hands of the School Board cannot be remedied by providing him a free appropriate public education. *See J.V. ex rel. Ortiz v. Seminole Cty. Sch. Bd*., 2005 WL 1243756, at *2 (M.D. Fla. May 25, 2005) (holding that plaintiff was not required to exhaust his administrative remedies under the IDEA where the basis of his claim was that the School Board sanctioned the use of excessive force against him in violation of his due process rights). Thus, the School Board's motion to dismiss Counts XI and XII should be denied.

## V.  PLAINTIFF'S CLAIMS FOR NEGLIGENT TRAINING, SUPERVISION AND HIRING ARE NOT BARRED BY SOVEREIGN IMMUNITY AND HAVE BEEN SUFFICEINTLY PLEAD.

In its Motion, Defendant School Board contends that Plaintiff's claim for negligent training fails because (1) the School Board does not owe a duty to Plaintiff, and (2) even if it did owe Plaintiff a duty, the School Board is immune from Plaintiff's negligent training count based on the sovereign immunity doctrine. The School Board's attempts to avoid liability for negligent training in this regard relies on a misapplication of the law. In addition, the School Board contends that Plaintiff's claim for negligent hiring and supervision has not been adequately plead.

To begin, the School Board owes a duty of care to the students under its custody and care. *See Wyke v. Polk County School Bd*., 129 F.3d 560, 571 (11th Cir.1997)("Florida schools have a duty to supervise students placed within their care.")(citing *Rupp v. Bryant*, 417 So.2d 658, 666 (Fla.1982)). In addition, Florida schools have a duty arising from a special relationship with minor students. *See Gross v. Family Serv. Agency, Inc*., 716 So.2d 337, 339 n. 4 (Fla. 4th DCA 1998), *aff'd sub nom. Nova Southeastern Univ., Inc. v. Gross*, 758 So.2d 86 (Fla. 2000). Where a school breaches its supervisory duty, it is liable for reasonably foreseeable injuries caused by the failure to use ordinary care. *See Wyke,* 129 F.3d at 571; *Roberson v. Duval County Sch. Bd.,* 618 So.2d 360, 362 (Fla. 1st DCA 1993). Thus, Plaintiff's complaint adequately pleads a claim for negligent hiring and supervision, as the Complaint adequately sets out facts that the School Board had or should have had notice of Frazier's unfitness to serve as a teacher and failed to take any actions which would have prevented Frazier from abusing and harming N.R. *See Slonin v. City of West Palm Beach, Fla*., 896 So. 2d 882, 883 (Fla. 4th DCA 2005) ("[T]here is no sovereign immunity barrier to making a claim against a governmental agency for negligent retention or supervision.").

In addition, the School Board claims that the claim for negligent training is barred by sovereign immunity because the failure to train claim is based upon operational governmental actions rather than discretionary. In making this argument,

the School Boards asserts that Plaintiff takes issue with <u>how</u> to train employees and as such sovereign immunity bars the claim.  The test for whether an action is discretionary or operational is a fact-intensive analysis.  *See, e.g., Schoen v. Dean*, No. 5:10-CV-652-OC-37TBS, 2011 WL 13295821, at *4 (M.D. Fla. Aug. 17, 2011). Thus, the issue of whether or not the actions of a governmental entity are operational or discretionary is more appropriate to be made at the summary judgment stage.  *See Bussey-Morice v. Kennedy*, No. 611CV970ORL36GJK, 2012 WL 12899017, at *2 (M.D. Fla. Dec. 12, 2012)(denying dismissal of the negligent training claim, noting that the majority of cases cited by Defendant were decided at the motion for summary judgment stage and on dismissal cannot look beyond the four corners of the complaint).

In addition, while a failure to train claim may be considered to involve discretionary actions that is not always the case.  The Eleventh Circuit has held that a plaintiff states a claim for negligent training where that plaintiff "show[s] [the defendant] was negligent in the implementation or operation of the training program" because "[t]he determination of the content of a training program is a discretionary function for which [the defendant] is afforded sovereign immunity." *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005); *see also Johnson v. Cannon*, 947 F. Supp. 1567, 1574 (M.D. Fla. 1996) (denying defendant's motion to dismiss negligent training claim, and finding the sheriff's failure to provide the

deputy with proper training in handling traffic stops, dealing with the public, interacting with female members of the public, reporting to his supervisors, and sensitivity training constituted an operational function of the sheriff's office).

In the Complaint, Plaintiff has plead facts which show that the School Board here was negligent in the implementation of a training program rather than the content of any training program or decision on how to administer a program. For example, the Complaint alleges Smith (the superintendent of human resources) acknowledged a failure within the School District to enforce the mandatory requirement to report child abuse. [D.E. 1 ¶ 115.] This allegations falls squarely within the operational component of training, i.e. the training on mandatory reporting was not properly implemented not that the training content itself was deficient. Based on the foregoing, the School Board's motion to dismiss Count XIV should be denied.

## VI. PLAINTIFF MAY PLEAD IN THE ALTERNATIVE CLAIMS FOR NEGLIGENCE AND INTENTIONAL, MALICIOUS CONDUCT AND THE SCHOOL BOARD IS LIABLE FOR UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR FOR THE NEGLIGENCE OF ITS EMPLOYEES.

The law is well-established that "[a] party may plead and litigate inconsistent remedies." *Alvarez v. Puleo*, 561 So. 2d 437, 437 (Fla. 2d DCA 1990) (*citing Cordell v. World Ins. Co.*, 358 So. 2d 223, 224 (Fla. 1st DCA 1978); *Johnson v. Department of Health & Rehab. Serv.*, 695 So.2d 927 (Fla. 2d DCA 1997) (a party may assert

mutually exclusive claims in the same pleading); *see also* Fed.R.Civ.P. 8(d)(2)-(d)(3). ("Relief in the alternative or of several different types may be demanded."). Thus, a plaintiff is permitted to state causes of action in the alternative, even where the alternative allegations are completely inconsistent with one another. Likewise, intentional harms and negligent harms can be plead in the alternative and survive a Motion to Dismiss on the basis of sovereign immunity. *See, e.g.,Duran v. City of Satellite Beach*, No. 6:05-CV-906-PCF-KRS, 2005 WL 2129300, at *1 (M.D. Fla. Sept. 2, 2005)(holding that plaintiffs stated a claim that the conduct of the police officers, who were the agents of Defendants, amounted to assault, battery, false imprisonment, negligence, and a violation of Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983 and that claims were properly plead in the alternative).

Pursuant to section 768.28(9)(a), the Florida Legislature has waived sovereign immunity for negligence claims.  The Plaintiff's Complaint alleges a claim against Frazier for both intentional conduct as well as negligent conduct.  The School Board is vicariously liable for the negligent conduct of Frazier.  In addition, "Florida Statute §768.28(9)(a) does not immunize governmental entities from liability for intentional torts committed in the course and scope of employment where the conduct or act forming the basis of the intentional tort does not involve bad faith or malicious purpose, and was not committed in a manner exhibiting a willful disregard of human rights, safety, or property." *Darnell*, No. 615CV999ORL37TBS, 2016 WL

309050, at *3 (citing *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1121 (Fla. 4th DCA 1987)).

Plaintiff does not assert or suggest that the School Board is vicariously liable for any conduct of Frazier that amounts to an intentional tort conducted in bad faith or with malicious intent. However, the questions of whether Frazier's conduct rises to that level will be one for the jury. Thus, Plaintiff's claim for respondeat superior against the School Board should not dismissed for failure to state a claim.

## CONCLUSION

Plaintiff respectfully requests the Court deny Defendant School Board's Motion to Dismiss for the reasons more fully set forth herein.

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(f), I certify that this Response in Opposition and the incorporated Memorandum of law complies contains 5,220 words.

Dated this 14th day of January, 2019.

Respectfully Submitted,

By: */s/ Ryan B. Hobbs*
Ryan P. Molaghan, FBN 119780
Ryan B. Hobbs, FBN 044179
John M. Leace, FBN 172626
Talley Kaleko, FBN 487155
**BROOKS LEBOEUF BENNETT
FOSTER & GWARTNEY, P.A.**
909 East Park Avenue
Tallahassee, Florida 32301
850-222-2000 / 850-222-9757

RyanM@tallahasseeattorneys.com
Rhobbs@tallahasseeattorneys.com
John@tallahasseeattorneys.com
Talley@tallahasseeattorneys.com
Jeanetta@tallahasseeattorneys.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been sent to all counsel of record through electronic service utilizing the Court's CM/ECF system this 14th day of January, 2019.

*/s/ Ryan B. Hobbs*
Ryan B. Hobbs