## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**N.R., a minor, by, J.R. and A.R.,**
**his natural guardians,**

      **Plaintiff,**

**v.**                         **Case No.: 3:18-cv-02208-RV-EMT**

**THE SCHOOL BOARD OF**
**OKALOOSA COUNTY, FLORIDA,**
**MARY BETH JACKSON, STACIE**
**SMITH, ARDEN FARLEY, ALAN**
**LAMBERT, JON WILLIAMS, ROY**
**FRAZIER, JEAN HENNION, and DOES**
**1-30,**

      **Defendants.**
_____

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT, MARY BETH JACKSON'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff, N.R., a minor, by J.R. and A.R., his natural guardians, files this Response in Opposition to Defendant, Mary Beth Jackson's ("Jackson") Motion to Dismiss Plaintiff's Complaint [D.E. 53], and in support thereof states the following:

## SUMMARY OF ARGUMENT

Defendant Jackson's motion to dismiss should be denied because the independent personal stake exception to the intracorporate conspiracy doctrine renders the doctrine inapplicable to Plaintiff's §§ 1983, 1985 conspiracy claims.

Dismissal is likewise inappropriate because Plaintiff has successfully pled a causal connection between the actions and/or omissions of Defendant Jackson and the constitutional violations against Plaintiff, giving way to Defendant Jackson's § 1983 supervisory liability.

Defendant Jackson is not entitled to qualified immunity from suit because she has not proven that she was acting within the scope of her discretionary authority when the alleged wrongful actions and/or omissions at issue in the Complaint occurred. Even if Defendant Jackson was acting within her discretionary authority, her actions and/or omissions violated clearly established statutory and constitutional rights of which both a reasonable person and Defendant Jackson would have known. Therefore, because Defendant Jackson was not acting in her discretionary authority, and her conduct violated statutory and constitutional rights, she is ineligible for the benefit of qualified immunity. Additionally, Defendant Jackson is not entitled to qualified immunity in Count VIII, as a matter of law.

Plaintiff's Complaint is not an impermissible shotgun pleading because it gives Defendant Jackson adequate notice of the claims against her and the grounds upon which each claim rests. Additionally, Plaintiff sufficiently alleges facts supporting his claims for punitive damages against Defendant Jackson. Moreover, the issue of what types of damages are appropriate is an intensely factual one that should be decided at a later stage. Finally, Defendant Jackson's motion for judgment

on the pleadings is procedurally premature because the pleadings have not yet closed. Defendant Jackson's motion to dismiss and alternative request for judgment on the pleadings should therefore be denied.

## MEMORANDUM OF LAW AND ANALYSIS

### I. STANDARD OF REVIEW FOR MOTION TO DISMISS AND JUDGMENT ON THE PLEADINGS

 "On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff." *Turner v. WCA Waste Systems, Inc.*, 2012 WL 4512908 at *1 (N. D. Florida, Gainesville Division, 2012) (internal citations omitted). "The Court must accept as true all of the factual allegations contained in the complaint," and cannot dismiss the complaint unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.*

Federal Rule of Civil Procedure 12(c) provides that: "*After the pleadings are closed*—but early enough not to delay trial—a party may move for judgment on the pleadings." Emphasis added. The pleadings are closed only when a complaint and answer have been filed. *See Lillian B. ex rel. Brown v. Gwinnett County Sch. Dist.*, 631 Fed. Appx. 851, 853 (11th Cir. 2015)(unpublished) *citing* Fed. R. Civ. P. 7(a). Thus, Fed. R. Civ. P. 12(c) provides "a means of disposing of cases when ... a judgment on the merits can be achieved by focusing on the content of the *competing* pleadings...." *Id.* (internal citations omitted). When only a single pleading has been

filed, "competing pleadings" do not exist, so a motion for judgment on the pleadings is not appropriate. *Id.* (internal citations omitted) (compiling case law demonstrating that judgment on the pleadings is proper after the defendant has answered). A district court should deny a Rule 12(c) motion as procedurally premature if at the time the party moves for judgment on the pleadings, the pleadings are not yet closed. *Id* (vacating district court's order granting defendant's Rule 12(c) motion having concluded that the lower court erred, as a procedural matter, in granting it).

## II. THE INTRACORPORATE CONSPIRACY DOCTRINE IS NOT APPLICABLE TO THIS CASE AND DOES NOT BAR PLAINTIFF'S CONSPIRACY CLAIMS AGAINST DEFENDANT JACKSON

The intracorporate conspiracy doctrine holds "that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir.2000); *accord Denney v. City of Albany,* 247 F.3d 1172, 1190–91 (11th Cir.2001) (stating "the only two conspirators identified ... are both City employees; no outsiders are alleged to be involved" and concluding intracorporate conspiracy doctrine barred    plaintiffs'    §    1985(3) conspiracy claims for deprivation of their equal protection rights).

Unlike *Denney,* Plaintiff's Complaint adequately alleges a conspiracy between multiple actors from two separate legal entities (OCSO and OCSB), thereby negating the applicability of the intracorporate conspiracy doctrine. Specifically, Plaintiff's allegations include but are not limited to: knowledge on the part of OCSO and OCSB employees of widespread abuse of non-verbal disabled ESE students within the OCSD, including Plaintiff; the collective failure of OCSO and OCSB employees to stop, intervene in, or report said conduct; the intentional, unlawful concealment and district-wide cover up of said abuse by OCSO and OCSB employees, including an OCSO deputy instructing Plaintiff's parents not to pursue criminal prosecution of the abusive teacher. [D.E. 1 at ¶ 65, 86-88, 128]. In addition to Plaintiff's specific reference to OCSO in ¶ 233 of the Complaint, Plaintiff's "Statement of the Ultimate Facts" sufficiently alleges and infers conspiratorial involvement between "outsiders," including OCSO employees and various OCSB administrators and employees, including Defendant Jackson. *See Larson v. Sch. Bd. of Pinellas County, Fla.*, 820 F. Supp. 596, 600 (M.D. Fla. 1993) ("[T]o withstand a motion to dismiss brought pursuant to Rule 12(b)(6), Fed. R. Civ. P., a plaintiff must simply plead general facts from which a conspiracy can be inferred, and the existence of the conspiracy may be shown by circumstantial evidence"). Because Plaintiff has adequately alleged a conspiracy between multiple actors from separate legal entities, the intracorporate conspiracy doctrine does not apply. Defendant

Jackson's motion to dismiss or alternatively motion for judgment on the pleadings should therefore be denied.

A.  **THE INDEPENDENT PERSONAL STAKE EXCEPTION TO THE INTRACORPORATE CONSPIRACY DOCTRINE PRECLUDES THE DOCTRINE'S APPLICABILITY TO THIS CASE**

The Eleventh Circuit has enunciated three exceptions to the intracorporate conspiracy doctrine." *See Gibbons v. McBride*, 124 F.Supp.3d 1342, 1381 (S.D.Ga.2015). The doctrine does not bar "(1) convictions involving criminal charges of conspiracy," (2) where the employee has an "independent personal stake" in the unconstitutional acts, and (3) where the employees "engage in a series of discriminatory acts as opposed to a single action over a significant period of time in the employment setting." *See Grider v. City of Auburn*, 618 F.3d 1240, 1262 (11th Cir.2010). Emphasis added.

District courts within the Eleventh Circuit, and outside of it, have found that the "independent personal stake" exception applies to the attempted cover up of abuse in a school setting. *See Jordan v. Randolph Cty. Sch.*, No. 4:08–CV–131–CDL, 2009 WL 1410082, at *7 (M.D.Ga. May 19, 2009) (declining to dismiss a civil rights claim alleging that a student's rape resulted from the alleged cover up of the school's failure to supervise three students who repeatedly sexually harassed and abused other students); *see also Doe 20 v. Bd. of Educ. of Cmty. Unit Sch. Dist. No. 5*, 680 F.Supp.2d 957, 981 (C.D.Ill.2010) (declining to apply doctrine at motion to

dismiss stage, where plaintiff stated a claim alleging that four school administrators, including two principals, an assistant principal, and an assistant superintendent, knew that a first grade teacher was abusing female students and covered it up to save their own careers); *see also Williams v. Fulton County Sch. Dist.*, 181 F. Supp. 3d 1089, 1148 (N.D. Ga. 2016) (finding that dismissal as to any defendant based on the application of the intracorporate conspiracy doctrine would be inappropriate when the complaint has pled factual material supporting the plausible inference that school officials may have covered up reports of abuse in order to save their own careers).

Even if Plaintiff's conspiracy claims only involved agents of one legal entity (OCSB), which it does not as discussed in section II *supra*, the independent personal stake exception to the intracorporate conspiracy doctrine renders the doctrine inapplicable. As was the case in *Williams*, Plaintiff's Complaint contains a raft of factual material that suggests that Defendant Jackson and other OCSD employees knew that non-verbal disabled ESE students, including Plaintiff, were being abused by teachers within the OCSD for years and ignored or concealed that abuse. [D.E. 1 at ¶ 43-66, 87-88, 92-101, 106-110, 115-118]. Additionally, Plaintiff's Complaint makes specific allegations that Defendant Jackson knew of and/or assisted in, the withholding of evidence (the Stillions Report), from another abused child's parents, in an attempt to conceal the detailed abuse of non-verbal, disabled ESE students, including Plaintiff, within the OCSD [D.E. 1 at ¶ 132-133]. A set of facts exists

wherein Defendant Jackson and others (including OCSD employees named as defendants in Count VIII), acted based on interest of self-preservation when confronted with the knowledge that Plaintiff and other non-verbal disabled ESE students were being abused at schools within their district on their watch. Consistent with the well-articulated findings in *Jordan*[1], *Doe*[2], and *Williams*[3], Defendant Jackson's motion to dismiss or alternatively motion for judgment on the pleadings should be denied.

### III. PLAINTIFF HAS SUCCESSFULLY STATED § 1983 SUPERVISORY LIABILITY CLAIMS AGAINST DEFENDANT JACKSON IN COUNTS V, VI, VII AND VIII

"Supervisory officials can be held liable under § 1983 actions for constitutional violations on two grounds: "(1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation." *Gray v. Bostic,* 458 F.3d 1295, 1308 (11th Cir. 2006). A causal connection can be established in one of two ways: "(1) when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so, or (2) when a supervisor's improper custom or policy results in deliberate indifference to constitutional rights." *Doe v. School Bd. of Broward Cty. Fla.,* 604

---

[1] 2009 WL 1410082, at *7
[2] 680 F.Supp.2d at 981.
[3] 181 F. Supp. 3d 1089 at 1148.

F.3d 1248, 1266 (11th Cir.2010) (quotation marks omitted); *D.H. ex rel. Dawson v. Clayton Cty. Sch. Dist.*, 904 F.Supp.2d 1301, 1311 (N.D.Ga.2012). A history of abuse ... must be obvious, flagrant, rampant… to put a supervisor on notice that it must be corrected. *See Williams*, 181 F.Supp.3d at 1128. A defendant is "not deliberately indifferent simply because the measures [she] takes are ultimately ineffective in stopping a teacher from harassing" or abusing students. *Sauls v. Pierce Cty. Sch. Dist.*, 399 F.3d 1279, 1285 (11th Cir.2005). However, a [supervisor] who fails to appropriately respond to reports of abuse of students may be said to act with deliberate indifference. *See Baynard v. Lawson*, 112 F.Supp.2d 524, 530 (E.D.Va.2000); *see also Doe v. Bd. of Educ. of Consol. Sch. Dist. 230 Cook Cty., Ill.*, 18 F.Supp.2d 954, 958 (N.D.Ill.1998) (denying summary judgment in a school abuse case for principal/assistant superintendent, band director, and a handful of other defendants because there was sufficient evidence that suggested that some defendants may have "turned a blind eye" to teacher's abuses).

In this case, Plaintiff's Complaint alleges sufficient facts to infer a causal connection[4] (not merely vicarious liability) between Defendant Jackson's actions/omissions and the alleged constitutional violations. At the outset, Plaintiff has sufficiently alleged (and it should be undisputed) that Defendant Jackson, the

---

[4] As it relates to Counts V, VI and VII, Plaintiff advances his § 1983 supervisory liability claims against Defendant Jackson on a causal connection theory, not a personal participation theory.

OCSD superintendent, was acting in a *supervisory role* when the wrongful acts occurred. [D.E. 1 at ¶¶ 16-17]. Furthermore, the issue of who is a "supervisor" is a fact sensitive inquiry that requires development of the record and is therefore an inappropriate issue to be resolved at the motion to dismiss stage. In establishing Defendant Jackson's causal connection, Plaintiff advances both theories, (1) a history of widespread abuse and (2) deliberate indifference.

To show a history of widespread abuse Plaintiff's factual allegations and logical inferences include, but are not limited to, the following: Defendant Jackson was aware that non-verbal disabled ESE students within OCSD, including Plaintiff, were being abused over the course of several years by OCSD teachers, as specifically detailed in ¶¶ 44-63 and 67-84 of Plaintiff's Complaint, *while it was happening* and failed to intervene, thus resulting in ongoing abuses to said students [D.E. 1 at ¶ 65-66, 86-87,  93-96, 100-101, 107]; Defendant Jackson was aware of the Stillions and Frazier investigations (in which OCSD employees corroborated the abuses already known by Jackson and confirmed that Stillions and Frazier had abused non-verbal disabled ESE students including Plaintiff) [D.E. 1 at ¶¶ 92-93, 96-97, 109-110]; and that Defendant Jackson failed to report Stillions' and Frazier's abuse of non-verbal disabled ESE students while said students were being abused, failed to timely and/or adequately discipline Stillions or Frazier or remove them from the classroom while they were abusing children, and actually reached an agreement with OCSB and other

OCSD employees to conceal the abuses to Plaintiff and other non-verbal disabled ESE students [D.E. 1 at ¶¶ 66, 87-88, 92-93, 100, 116, 132-133]. These allegations, if true, are sufficient to prove Defendant Jackson's causal connection based on a history of widespread abuse theory and a deliberate indifference theory. *See Williams*, 181 F.Supp.3d at 1128 (allegations of multiple reports, by multiple individuals, of Pickens' abuse, as well as allegations that Boyd "not only took virtually *no* action to stop Pickens, but actually shielded Pickens from any consequences for her actions," were "*more than enough*" to allege a "history of widespread abuse" that a supervisor failed to correct"). Emphasis added.

In her motion to dismiss, Defendant Jackson argues that Plaintiff has failed to allege a history of abuse that was widespread, obvious, rampant, and of a continued duration. However, ¶¶ 44-63, 66, and 88 of Plaintiff's Complaint allege sufficient facts to contradict Defendant Jackson's argument and, at this stage, said facts must be deemed as true. *Turner v. WCA Waste Systems, Inc.*, 2012 WL 4512908 at *1 (N. D. Florida, Gainesville Division, 2012) ([T]he Court must accept as true all of the factual allegations contained in the complaint," and cannot dismiss the complaint unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); *see Doe v. School Board of Broward County, Fla.*, 604 F.3d 1248, 1266 (11th Cir.2010) (There is no bright line identifying when misconduct transforms from a couple of "isolated instances" into

a pattern of abuse… [O]ne or two incidents of abuse is generally insufficient to indicate a pattern); *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 728–29 (3rd Cir.1989) (But on a motion to dismiss, allegations of anything more than that are generally sufficient, even if the acts were committed by one employee).

Plaintiff also adequately alleges the theory that Defendant Jackson employed a custom and/or policy of deliberate indifference. A custom is a "widespread practice that, 'although not authorized by written law or express municipal policy, is so permanent and well settled as to [have] ... [the] force of law." *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1308 (11th Cir.2001). A [supervisor] who knows or should know about a pattern of abuse must also tacitly approve of the custom or be "deliberately indifferent" towards it. *See Griffin*, 261 F.3d at 1308. Deliberate indifference may be shown by a lack of appropriate action in the face of a pattern of similar constitutional violations, because a lack of action suggests tacit authorization or ratification.

As discussed more fully above, Plaintiff alleges that Defendant Jackson: knew of Frazier's pattern of abusing Plaintiff, as described in detail in ¶¶ 44-63 of Plaintiff's Complaint [D.E. 1 at ¶¶ 65-66, 88]; failed to properly report Frazier's conduct [D.E. 1 at ¶¶ 66, 88, 93-96]; and actually conspired to conceal Frazier's conduct [D.E. 1 at ¶¶ 97, 100]. As was the case in *Williams*, these facts, if true, sufficiently allege that Defendant Jackson knew Frazier was harming non-verbal

disabled ESE students during the 2014-2015 and 2015-2016 school years and did nothing about it (i.e. tacit authorization of such conduct) – or worse, took actions that may have condoned or encouraged it (i.e. conduct tantamount to wanton indifference). *See* 181 F.Supp.3d at 1128-1129.

As a whole, Plaintiff has successfully stated § 1983 supervisory liability claims based on a causal connection theory against Defendant Jackson in Counts V, VI, VII and VIII, and her motion to dismiss or alternatively motion for judgment on the pleadings should therefore be denied.

## IV. DEFENDANT JACKSON IS NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE SHE WAS NOT ACTING IN THE SCOPE OF HER DISCRETIONARY AUTHORITY

"In order to receive qualified immunity, *the public [government] official* "must first prove that [she] was acting within the scope of [her] discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002), emphasis added. *See also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) ("While a number of our cases omit this step of the analysis, binding Supreme Court and Eleventh Circuit precedents require us to consider expressly this critical threshold matter… [I]t is the burden of the government official to make this showing.") "If the defendant was not acting within [her] discretionary authority, [she] is ineligible for the benefit of qualified

immunity." *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) (internal citations omitted).

"The determination of whether an action is discretionary or ministerial (thus disqualifying a defendant from the benefit of qualified immunity) depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis." *Greenway v. Northside Hosp., Inc.*, 317 Ga.App. 371, 730 S.E.2d 742, 749 (2012) (internal citation and punctuation omitted) emphasis added; *Vann v. Finley*, 313 Ga.App. 153, 721 S.E.2d 156 (2011). "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Grammens v. Dollar*, 287 Ga. 618, 697 S.E.2d 775, 777 (2010). "A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Id*.

The mere allegation that Defendant Jackson was acting within the course and scope of her employment does not conclusively establish that she was acting within her discretionary authority when the wrongful acts occurred. Unsurprisingly, Defendant Jackson has not, and cannot, provide any authority in support of this generic proposition. Defendant Jackson's rush in shifting the burden to Plaintiff to prove an adequately alleged constitutional or statutory violation by her in order to

overcome her qualified immunity, is premature and misguided. While it is true that Defendant Jackson is, and at all times material was, a government [public] official, it is also true that she has not, and cannot, support her claim that she was acting in her discretionary authority when the wrongful acts occurred. Thus, Defendant Jackson is not entitled to the burden shifting framework described in Section V, *infra*. *See Collier v. Buckner*, 303 F. Supp. 3d 1232, 1273 (M.D. Ala. 2018) (criticizing Defendant's reliance on "generic arguments" to prove discretionary authority and denying Defendant's motion to dismiss Plaintiff's § 1983 claims based on qualified immunity defense because Defendants failed to meet their burden to demonstrate that they were "acting within the scope of [their] discretionary authority when the allegedly wrongful acts occurred").

Defendant Jackson's arguments are further weakened by the unequivocal language contained in "Florida's Mandatory Reporter Statute," § 39.201, *et seq.* Florida Statutes (2014 – present), which at all times material hereto stated in pertinent part:

> "(1)(a) Any person who knows, or has reasonable cause to suspect, that a child is abused… or neglected by a[n] other person responsible for the child's welfare, as defined in this chapter… *shall* report such knowledge or suspicion *to the department* in the manner prescribed in subsection (2)."

(2)(a) "Each report of known or suspected child abuse…
neglect by a[n] other person responsible for the child's
welfare as defined in this chapter… *shall be made
immediately to the department's central abuse hotline."*

Emphasis Added.

In *Roper v. Greenway*, the court stated "[P]rocedures or instructions adequate to
cause an act to become merely ministerial must be so clear, definite and certain as
merely to require the execution of a relatively simple, specific duty." 294 Ga. 112,
751 S.E.2d 351, 353 (2013). As applied to Defendant Jackson, Fla. Stat. §§
39.201(1)(a)-(2)(a) required her to immediately contact the central abuse hotline
when she had reasonable cause to suspect child abuse (and clearly knew that the
abuse hadn't yet been reported). This is precisely the sort of clear instruction,
requiring the execution of a simple duty, which makes Defendant Jackson's
actions/omissions ministerial, not discretionary. Defendant Jackson has not, and
cannot, prove that she is entitled to qualified immunity and her motion to dismiss
should therefore be denied.

## V. DEFENDANT JACKSON IS NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE HER CONDUCT VIOLATED CLEARLY ESTABLISHED STATUTORY AND CONSTITUTIONAL RIGHTS

If, and only if, a defendant first establishes that they were acting within their
discretionary authority, then the burden shifts to the plaintiff to show that qualified
immunity is not appropriate. *See Courson v. McMillian,* 939 F.2d 1479, 1487 (11th

Cir.1991) (quoting *Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988)). In *Saucier,* the Supreme Court set forth a two-part test for evaluating the appropriateness of a claim of qualified immunity. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272. As a "threshold question," a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a [statutory or] constitutional right?" *Id.* Emphasis added. "If a [statutory or] constitutional right would have been violated under the *plaintiff's* version of the facts, the court must then determine "whether the right was clearly established." *Id.* Emphasis added. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* "Qualified immunity offers complete protection for government officials sued in their individual capacities *so long as* their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Ferraro*, 284 F.3d at 1194. Emphasis added.

Even if Defendant Jackson was acting in her discretionary authority, which she was not as detailed herein, Defendant Jackson's qualified immunity defense is inappropriate because her actions/omissions violated statutory and constitutional rights. In *Williams*, a school abuse case factually similar to the case at bar, Plaintiff brought § 1983 supervisory liability claims against multiple individuals, including teachers and the school principal, Boyd. 181 F.Supp.3d 1089, 1129. In the *Williams*

Complaint, Plaintiff alleged a "multi-year reign of terror by Pickens (teacher) against her disabled students, and a totally impotent and improper response by Principal Boyd and others." *Id*. Emphasis added. In denying Principal Boyd's motion to dismiss on qualified immunity grounds the court stated, "[I]t has been clearly established for decades that the violations Plaintiffs complain of—excessively severe corporal punishment, discrimination against disabled students without a rational basis, and deprivation of a student's right to his state-created property interest in his education without due process—are unconstitutional." *Id.*

In the instant case, Plaintiff alleges a comparable "reign of terror" by Frazier, as well as woefully insufficient responses to Frazier's conduct by Defendant Jackson, and others. Specifically, Plaintiff's Complaint alleges egregious constitutional violations of Plaintiff's right to be free from unreasonable seizures, right to be free from excessive use of force, and right to equal protection. [D.E. 1 at ¶¶ 44-63]. Plaintiff also alleges that Defendant Jackson failed to comply with her mandatory reporting duties under Fla. Stat. § 39.201, and acted indifferently to said constitutional and statutory violations, allowing the abuses to Plaintiff to continue. [D.E. 1 at ¶¶ 66, 88, 97, 100, 180-243].

"A constitutional right is "clearly established" if, at the time of the defendant's actions, the law gave fair warning [to] a reasonable officer in the defendant's position that those acts violated constitutional rights." *Jones v. Fransen*,

857 F.3d 843, 851-52 (11th Cir. 2017). The right to be free from "excessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment," is a clearly established precedent in the Eleventh Circuit. *Neal ex rel. Neal v. Fulton Cnty. Bd. Of Educ.,* 229 F.3d 1069, 1075 (11th Cir. 2000). That is, since *Neal*, the Eleventh Circuit has held as a matter of law that, where an exercise of corporal punishment is so brutal, demeaning and harmful as literally to shock the conscience of the court, a student's substantive due process rights are implicated. *See id.* The *Neal* emphasized, "[T]hat statement of law applies with such "obvious clarity" to O'Neill's alleged conduct—striking a profoundly mentally and physically handicapped child on the head in a place where she was particularly vulnerable due to her previous surgery *for no legitimate reason*—that O'Neill had a "fair and clear warning" that her conduct was unlawful." *Hatfield*, 534 Fed. Appx. at 847–48 (dismissing defendant's qualified immunity defense on the basis that the constitutional right [she] violated was clearly established). The same obvious clarity applies to Defendant Jackson's actions/omissions, and her knowledge of Frazier's conduct, as described in paragraphs 44-63 of the Complaint.

Additionally, chapter 39 of the Florida Statutes specifically includes "an employee of any school" in the definition of "other person responsible for a child's welfare," as that term is used in Fla. Stat. §§ 39.201(1)(a)-(2)(a), *supra*. Furthermore, not only was Defendant Jackson mandated by statute to call the abuse hotline, she

was also required to provide her name to the hotline staff due to her position as a "school official". *See* Fla. Stat. § 39.201(1)(d)(4). In addition to being a clear violation of Florida law, Defendant Jackson's failure to report supports Plaintiff's theory that she was acting in the interest of self-preservation, as discussed in section II, *supra.* It should be undisputed that the law gave fair warning to both a reasonable person and Defendant Jackson that her failure to report suspected abuse of Plaintiff, on numerous occasions throughout a multi-year period, was a statutory violation and perpetuated the constitutional violations against Plaintiff. Defendant Jackson's motion to dismiss should therefore be denied.

## VI. <u>DEFENDANT JACKSON IS NOT ENTITLED TO QUALIFIED IMMUNITY IN COUNT VIII</u>

In the Eleventh Circuit, public officials do not have qualified immunity in § 1985(3) actions for conspiracy to deprive another of equal protection. *Burrell v. Bd. of Trustees of Ga. Mil. College*, 970 F.2d 785, 793-794 (11th Cir. 1992). Section 1985(3)'s requirement that plaintiffs show a racial or class-based animus obviates the need for an immunity safeguard. *Id*. This requirement affords public officials an additional protection against section 1985(3) actions that is not present in section 1983 cases, so immunity is unnecessary. *Id*. "Class-based, invidiously discriminatory animus has no place in public policy and any actions by public officials based on such animus deserve to be chilled with the full force of federal law." *Id* at 794.

Even if Defendant Jackson could satisfy her qualified immunity burden, which she cannot as described herein, she is not entitled to qualified immunity on Plaintiff's § 1985(3) claim against her (Count VIII). Defendant Jackson's motion to dismiss should therefore be denied.

## VII. __PLAINTIFF'S COMPLAINT IS NOT A SHOTGUN PLEADING__

Defendant Jackson erroneously alleges Plaintiff's Complaint is an impermissible shotgun pleading. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sherriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Defendant Jackson alleges that the Complaint fails to properly put her on notice of the claims against her. She does, however, spend a large portion of her twenty-five (25) page motion to dismiss discussing the claims and allegations against her in the Complaint, including detailed discussion regarding the different types of theories of liability. Plaintiff's Complaint, in the way of common sense, must have provided Defendant Jackson with "fair notice" of the claims against her, and her motion to dismiss should therefore be denied.

## VIII. __PLAINTIFF ALLEGES SUFFICIENT FACTS TO SUPPORT A PRAYER FOR PUNITIVE DAMAGES__

Under 42 U.S.C. § 1983, a plaintiff may be awarded punitive damages when a defendant's conduct is found to have been "motivated by evil motive or intent, or

when it involves a reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983). Courts do not require a fact intensive investigation into the merits, when deciding whether a prayer for punitive damages is properly included in a complaint. *See Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1340 (11th Cir. 2001). In fact, because the issue of whether punitive damages are appropriate is intensely factual, courts have routinely found that "it is not appropriate at the motion to dismiss stage to sort out the type of damages that can be awarded." *Krauser v. Biohorizons. Inc.*, No. 10-80454-CIV, 2010 WL 3468481, at *5 n.9 (S.D. Fla. Sept. 1, 2010); *see, e.g., Lewellyn v. Sarasota Cnty. Sch. Bd.*, No. 8:07-cv-1712-T-33TGW, 2009 WL 1515737, at *7 (M.D. Fla. June 1, 2009) (declining to strike request for punitive damages at the motion to dismiss stage); *see also Miranda v. Wells Fargo Bank, N.A.*, 1:11-CV-20885-KMM, 2011 WL 13223667, at *2 (S.D. Fla. Sept. 29, 2011) ("[T]hough Defendant may strongly dispute Plaintiff's ability to justify an award of punitive damages, the issue is intensely factual, and not appropriate for determination at this time. Consequently, the Court will not grant Defendant's motion to strike").

The totality of facts alleged in Plaintiff's Complaint fairly give rise to Plaintiff's § 1983 claims for punitive damages against Defendant Jackson. In fact, the actions/omissions of Defendant Jackson detailed in Plaintiff's Complaint and

described herein, are precisely the sort of reckless, callous indifferent conduct to the federally protected rights of others that warrant punitive damages. However, that is a fact issue to be decided by a jury. At this stage, Plaintiff's prayer for punitive damages against Defendant Jackson is well-supported, especially given her position as an elected official empowered to do the right thing, when her deplorable actions/omissions are alleged to have occurred. Defendant Jackson's motion to dismiss should therefore be denied.

## CONCLUSION

Plaintiff respectfully requests the Court deny Defendant Jackson's Motion to Dismiss for the reasons more fully set forth herein.

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(f), I certify that this Response in Opposition and the incorporated Memorandum of law complies contains 5,222 words.

Dated this 14th day of January, 2019.

Respectfully Submitted,

By: */s/ John M. Leace*
Ryan P. Molaghan, FBN 119780
Ryan B. Hobbs, FBN 044179
John M. Leace, FBN 172626
Talley Kaleko, FBN 487155
**BROOKS LEBOEUF BENNETT**
      **FOSTER & GWARTNEY, P.A.**
909 East Park Avenue
Tallahassee, Florida 32301
850-222-2000 / 850-222-9757

RyanM@tallahasseeattorneys.com
Rhobbs@tallahasseeattorneys.com
John@tallahasseeattorneys.com
Talley@tallahasseeattorneys.com
Jeanetta@tallahasseeattorneys.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been sent to all counsel of record through electronic service utilizing the Court's CM/ECF system this 14th day of January, 2019.

*/s/ John M. Leace*
John M. Leace